IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DIAG HUMAN S.E.,<br>Langstrasse 33, 4940 Vaduz, Principality<br>of Liechenstein, | : | Civil Action No. 1:13-cv-0355 (ABJ) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| THE CZECH REPUBLIC-MINISTRY<br>OF HEALTH,<br>Palackeno namesti, 4, Prague 2, 128, 01,<br>Czech Republic, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COMPLAINT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... i

I.   PRELIMINARY STATEMENT ............................................................................ 1

II.  STATEMENT OF FACTS .................................................................................... 1

    A.   The Parties ...................................................................................................... 2

    B.   The Arbitration Agreement and Award ....................................................... 2

    C.   The Parties Request Review of the Award .................................................. 4

    D.   Diag Human Seeks to Enforce the Award Before It Becomes Final ...................... 7

III. ARGUMENT ........................................................................................................ 8

    A.   Diag Human's Complaint Should be Dismissed Because It is
         Barred by the Applicable Statute of Limitations ...................................... 9

    B.   Alternatively, Diag Human's Complaint Fails to State a Claim
         upon Which Relief May Be Granted Under the New York Convention .............. 11

        1.   Alternatively, the Court Should Refuse to Enforce the
            Arbitration Award Because It Is Not Final under the Parties' Agreement ....... 13

            a.   The Arbitration Award Has Not Yet Become Binding
                on the Parties ................................................................................ 13

            b.   Alternatively, Both The Czech Republic and Diag Human Have
                Sought to Set Aside the Award Before a Competent Authority ................. 19

                (i)   The general objectives of arbitration (the expeditious resolution
                      of disputes and the avoidance of protractedand expensive litigation) ....... 20

                (ii)   The status of the foreign proceedings and the estimated time
                      for those proceedings to be resolved ........................................... 21

                (iii)   Whether the award sought to be enforced will receive greater
                      scrutiny in the foreign proceedings under a less deferential
                      standard of review ....................................................................... 22

                (iv)   Characteristics of the foreign proceedings, including
                      (i) whether they were brought to enforce an award (which would tend
                      to weigh in favor of a stay) or to set the award aside (which would
                      tend to weigh in favor of enforcement); (ii) whether they were initiated

before the underlying enforcement proceeding so as to raise concerns of international comity; (iii) whether they were initiated by the party now seeking to enforce the award; and (iv) whether they were initiated under circumstances indicating an intent to hinder or delay resolution of the dispute...........................................................................22

    (v)  A balance of possible hardships to each of the parties ............................23

    (vi) Any other relevant circumstances............................................................24

2.  Diag Human's Request to Enforce the Award Is Contrary to the Arbitration Agreement ....................................................................................... 25

3.  Enforcing the Award Would Be Contrary to the Clear Public Policy in Favor of Arbitration........................................................................ 26

4.  The Award Did Not Arise Out of a Commercial Legal Relationship............... 28

C.  The SPEECH Act of 2010 Prohibits Recognition or Enforcement of the Award ....................................................................................................... 31

D.  The Court Should Dismiss the Complaint Based on the Doctrine of *Forum Non Conveniens* ..................................................................... 33

1.  The Czech Republic Is an Adequate Alternative Forum ................................... 33

2.  The Private and Public Interests Support Dismissal ......................................... 35

IV.  CONCLUSION........................................................................................................ 38

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662, 678 129 S. Ct. 1937, 1949 (2009)..............................................1, 17

*Banco de Seguros del Estado v. Mutual Marine Office, Inc.,*
    344 F.3d 255, 264 (2d Cir. 2003)......................................................................28

*BPA Int'l, Inc. v. Kingdom of Sweden,*
    281 F. Supp. 2d 73, 85 (D.D.C. 2003)..............................................................38

*Bryks v. Canadian Broadcasting Corporation,*
    906 F. Supp. 204 (S.D. N.Y. 1995) ............................................................32, 33

*\*Commissions Import Export S.A. v. Republic of Congo,*
    2013 WL 76270 (D.D.C. 2013) ........................................................................10

*CP Construction Pioneers Baugesellschaft Anstalt v. Republic of Ghana,*
    578 F. Supp. 2d 50 (D.D.C. 2008) ....................................................................21

*\*DRC, Inc. v. Republic of Honduras,*
    774 F. Supp. 2d 66 (D.D.C. 2011) ....................................................................21

*\*EDF International S.A. v. YPF S.A.,*
    676 F.Supp.2d 317 (D.Del. 2009)......................................................................11

*\*Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.,*
    403 F.3d 85 (2d Cir. 2005)..........................................................................26, 27

*Europcar Italia, S.p.A. v. Maiellano Tours, Inc.,*
    156 F.3d 310, 317-18 (2d Cir. 1998) ................................................................21

*\*Flatow v. Islamic Republic of Iran,*
    76 F.Supp.2d 28, 29 (D.D.C. 1999) ....................................................................9

*Gulf Oil Corp. v. Gilbert,*
    330 U.S. 501, 508 (1947)..................................................................................38

*Howsam v. Dean Witter Reynolds, Inc.,*
    537 U.S. 79 (2002)....................................................................................16, 27

*In re Consolidated Rail Corp.,*
    867 F.Supp. 25, 30 (D.D.C. 1994) ....................................................................10

*Jack's Canoes & Kayaks, LLC v. National Park Service,*
2013 WL 1245859, *13 (D.D.C. 2013) ................................................................... 9

*Jaranilla v. Megasea Maritime Ltd.,*
171 F. Supp. 2d 644, 646-47 (E.D. La. 2001)......................................................... 31

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,*
364 F.3d 274, 305-06 (5th Cir. 2004) .................................................................... 28

*Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah,* 184 F. Supp. 2d 277 (S.D.N.Y.
2001) ....................................................................................................................... 32

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
473 U.S. 614, 613 (1985)........................................................................................ 29

\*Monegasque de Reassurances S.A.M. (Monde Re) v. NAK Naftogaz of Ukraine,*
311 F.3d 488 (2d Cir. 2002).......................................................................... 37, 39, 40

*Piper Aircraft Co. v. Reyno,*
454 U.S. 235, 249 (1981)........................................................................................ 35

*Republic of Argentina v. BG Group PLC,*
764 F. Supp. 2d 21, 31 (D.D.C. 2011) ................................................................... 28

*Scherk v. Alberto-Culver Co.,*
417 U.S. 506, 520 n.15 (1974)................................................................................ 19

\*Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co. v. Navimpex Centrala Navala,*
989 F.2d 572 (2d Cir. 1993).................................................................................... 10

*Smith-Haynie v. District of Columbia,*
155 F.3d 575 (D.C. Cir. 1998) ................................................................................. 9

*Southland Corp. v. Keating,*
465 U.S. 1, 10 (1984).............................................................................................. 29

*Spier v. Calzaturificio Tecnica S.p.A.,*
663 F. Supp. 871 (S.D.N.Y. 1987) ......................................................................... 21

*Telcordia Technologies, Inc. v. Telkom SA, Ltd.,*
95 Fed. Appx. 361, 363 (D.C. Cir. 2004) ............................................................... 20

\*TermoRio S.A. E.S.P. v. Electranta S.P.,*
487 F.3d 928, 934 (D.C. Cir. 2007).......................................................... 12, 13, 14, 19, 28

\*Termorio S.A. E.S.P. v. Electrificadora Del Atlantico S.A. E.S.P.,*
421 F. Supp. 2d 87, 104 (D.D.C. 2006) ............................................................ 39, 40

ii

*TMR Energy Ltd. v. State Property Fund of Ukraine,*
 411 F.3d 296, 304-05 (D.C. Cir. 2005).......................................................... 16, 27, 36

*Volt Information Sciences, Inc. v. Board of Trustees,*
 489 U.S. 468, 479 (1989)........................................................................... 20, 22, 29

**Statutes**

28 U.S.C. § 4102(a) ....................................................................................................... 34

9 U.S.C. § 1................................................................................................................... 32

9 U.S.C. § 202............................................................................................................... 30

9 U.S.C. §201................................................................................................................ 12

9 U.S.C. §207.................................................................................................................. 9

28 U.S.C. § 4101-4105 .................................................................................................. 33

28 U.S.C. § 1602-1611 .................................................................................................. 32

**Other Authorities**

Act No. 216/1994 Coll. of Laws on Arbitral Proceedings and Enforcement
of Arbitral Awards, § 15(1) .................................................................... 3, 4, 6, 16, 20

Convention on the Recognition and Enforcement of Foreign
Arbitral Awards of 1958 ............................................. 9, 12, 13, 14, 20, 26, 28, 29, 30

## I.      **PRELIMINARY STATEMENT**

Defendant, The Czech Republic – Ministry of Health ("the Czech Republic"), respectfully submits this Memorandum of Law in support of its Motion to Dismiss the Complaint of Plaintiff, Diag Human S.E. ("Diag Human"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and pursuant to the doctrine of *forum non conveniens*.   The Czech Republic respectfully requests that the Court dismiss Diag Human's Complaint for the reasons that are set forth herein.

## II.     **STATEMENT OF FACTS**

Because the Czech Republic seeks relief pursuant to Rule 12, the Czech Republic accepts the facts alleged by Diag Human in its Complaint as true for purposes of this Motion to Dismiss. However, the Czech Republic does not, and the Court need not, accept Diag Human's legal conclusions as true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 129 S. Ct. 1937, 1949 (2009) ("A pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.'").  In addition, it is important to note that Diag Human conveniently omits a substantial number of background facts from the Complaint that are crucial to the Court's determination of the issues herein.  The Czech Republic therefore provides this additional background information via the Affidavit of Petr Horacek, which is attached as Exhibit A to its Motion to Dismiss and cited extensively herein; and which also refers to the other Exhibits attached to the Motion to Dismiss.[1]

---

[1] The Affidavit of Petr Horacek, attached as Exhibit A to the Motion to Dismiss, will be cited as "Horacek Aff."

## A. **The Parties**

According to the Complaint, Plaintiff, Diag Human, is a corporation organized under the law of the Principality of Liechtenstein. (Complaint, ¶ 6.) Diag Human was engaged in a trading business based on using blood plasma to create blood plasma derivative products. (Complaint, ¶ 6.) The Czech Republic is a foreign state, and the Ministry of Health of the Czech Republic is an agency of the state of the Czech Republic. (Complaint, ¶ 7.)

Diag Human claims that it sustained damages as a result of its blood plasma trading business being effectively destroyed by certain acts of the Czech Republic in 1991 and 1992. (Complaint, ¶ 9.) Specifically, Diag Human claims that acts of the Czech Republic disrupted cooperation between Diag Human and a third party, NovoNordisk, which caused Diag Human's business to fail. (Complaint, ¶ 9.) In particular, Diag Human contends in the underlying arbitration that its damages resulted from a letter dated March 9, 1992, signed by Dr. Martin Bojar, CSc, the Czech Minister of Health at the time, and sent to K. Eldrup-Jorgensen, a Vice President at A/S NovoNordisk Kobenhaven, in conjunction with a public bidding procedure conducted in the Czech Republic for selection of a company for cooperation in fractionation of Czech blood plasma. (Horacek Aff., ¶ 4.) Diag Human claims that the Bojar letter defamed its good business name and caused A/S NovoNordisk Kobenhaven to discontinue cooperation with Diag Human. (Horacek Aff., ¶ 5.)

## B. **The Arbitration Agreement and Award**

To decide Diag Human's underlying claims against the Czech Republic, Diag Human and the Czech Republic entered into a written arbitration agreement dated September 18, 1996 ("Arbitration Agreement"). (Complaint, ¶ 10, Ex. B.) In the Arbitration Agreement, the parties agreed to undertake an ad hoc arbitration pursuant to Czech Republic Act No. 214/1994 Coll. of

Laws on Arbitral Proceedings and Enforcement of Arbitral Awards.  (Complaint, ¶ 10; Horacek Aff., ¶ 6.)  Because the Arbitration Agreement provided that the arbitration would be conducted pursuant to Act No. 216/1994, all procedural issues arising in the arbitration would be decided in accordance with Act No. 216/1994, or, if not specifically addressed by Act No. 216/1994, then in accordance with the Civil Procedure Code of the Czech Republic.  (Horacek Aff., ¶ 8.)

Diag Human commenced the underlying ad hoc arbitration proceeding ("Arbitration Proceeding") on October 21, 1996.  (Horacek Aff., ¶ 10.)  Three arbitrators sitting in Prague, Czech Republic, conducted the Arbitration Proceeding.  (Complaint, ¶ 11; Horacek Aff., ¶ 10.) The arbitration panel subsequently issued an Interim Arbitration Award on March 19, 1997, which was followed by an Interim Arbitration Review issued on May 27, 1998.  (Complaint, ¶¶ 13-14; Horacek Aff., ¶ 10.)  Thereafter, a Partial Arbitration Award was issued on June 25, 2002, which was followed by a Partial Arbitration Review issued on December 16, 2002.  (Horacek Aff., ¶ 10.)

On August 4, 2008, the arbitrators issued their most recent decision, titled "Final Award" ("Arbitration Award"), in which they awarded certain monetary damages to Diag Human. (Complaint, ¶ 19; Horacek Aff., ¶ 11.)  The Arbitration Award was denominated "final" only as a means of distinguishing it from the preceding "interim" and "partial" awards, but was not an indication that it was enforceable and binding at that time.  (Horacek Aff., ¶ 11.)  The Arbitration Award was delivered to the parties on August 13, 2008.  (Complaint, ¶ 19; Horacek Aff., ¶ 12.)

C. **The Parties Request Review of the Award**

As part of the Arbitration Agreement, Diag Human and the Czech Republic agreed to a review procedure for arbitration awards. (Complaint, ¶ 12.) Section 27 of Act No. 216/1994 indicates that parties to an arbitration agreement can agree that an arbitration award can be reviewed by a separate panel of arbitrators at the request of either or both of the parties to the arbitration proceedings. (Horacek Aff., ¶ 13.) Diag Human and the Czech Republic agreed to use this review mechanism in Article V of the Arbitration Agreement, which provides:

> The parties have also agreed that the arbitral reward will be submitted to a review by other arbitrators whom the parties appoint in the same manner if an application for review has been submitted by the other party within 30 days from the date of which the applicant party received the arbitral award.

(Complaint, ¶ 12, Ex. 2; Horacek Aff., ¶ 14.) Pursuant to this review mechanism, the interim and partial awards issued earlier in the Arbitration Proceeding were in fact reviewed by panels of review arbitrators. (Complaint, ¶ 14; Horacek Aff., ¶ 7.)

Following receipt of the most recent Arbitration Award, Diag Human and the Czech Republic both requested review of the Arbitration Award pursuant to Article V of the Arbitration Agreement. (Complaint, ¶ 22; Horacek Aff., ¶¶ 15-18.) Pursuant to the agreed-upon procedure, each of the parties appointed their designated arbitrator for purposes of the review proceedings. (Horacek Aff., ¶¶ 17-18.)

The two selected review arbitrators could not reach agreement on a third review arbitrator within the specified time, so the Czech Republic commenced court proceedings pursuant to Article II of the Arbitration Agreement to have a Czech court appoint the third review arbitrator. (Horacek Aff., ¶ 19.) In a decision issued on November 27, 2008, the District Court for Prague 6 appointed Petr Kuzel to serve as the third review arbitrator, but Diag Human appealed that decision to the Municipal Court in Prague. (Horacek Aff., ¶ 20.)

By a decision dated April 29, 2009, the Municipal Court in Prague affirmed the District Court for Prague 6, which resulted in the embodiment of a full three (3) member final arbitration review panel at that time. (Horacek Aff., ¶ 21.) However, Diag Human again appealed the decision appointing Petr Kuzel as the third review arbitrator to the Supreme Court of the Czech Republic. (Horacek Aff., ¶ 23.) Subsequently, by a decision dated October 14, 2010, the Supreme Court reversed the lower court decisions on the basis that the District Court for Prague 6 lacked jurisdiction, and remanded the case to the Municipal Court in Prague for further proceedings. (Horacek Aff., ¶ 23.)

The judicial proceedings regarding the appointment of Petr Kuzel as the third review panel arbitrator were pending before the Municipal Court in Prague at Case Ref. No. 22 Cm 10/2011 and the High Court in Prague under Case Ref. No. 3 Cmo 64/2012. (Horacek Aff., ¶ 24.) Diag Human participated vigorously in these judicial appointment proceedings for the past several years. (*Id.*) Recently, the judicial process in regard to the appointment of Petr Kuzel has finally concluded. In this regard, the Municipal Court in Prague (as a Court of First Instance) appointed Petr Kuzel to the arbitration review panel, and this decision was affirmed by the High Court in Prague (as a Court of Appeal) on October 22, 2012. (Horacek Aff., ¶ 24.)

While the Petr Kuzel appointment was being reviewed by the Supreme Court of the Czech Republic upon Diag Human's appeal, Diag Human, through its attorneys AK Jan Kalvoda, delivered a withdrawal of its Application for Review of the Arbitration Award on March 29, 2010 to the Czech Republic. (Complaint, ¶ 22; Horacek Aff., ¶ 25.) It is important to note, however, that Diag Human's unilateral withdrawal of its Application for Review does not automatically stop its own review proceedings. In this regard, withdrawal of an Application for Review is governed by Sections 96, 167 and 207 of the Czech Civil Procedure Code, to be

applied to the Arbitration Proceeding pursuant to § 30 of Act No. 216/1994, which require that

the arbitration review panel issue a written ruling on discontinuation of the review proceedings to

the extent allowed by the withdrawal.  (Horacek Aff., ¶ 26.)  No written ruling from any

arbitration review panel in regard to the attempted withdrawal by Diag Human has been issued

yet. (Horacek Aff., ¶ 26.)

On March 30, 2010, one day after delivering its withdrawal of its Application for

Review, Diag Human, through its attorneys AK Jan Kalvoda, delivered to the Czech Republic

the resignation of Diag Human's appointed review panel arbitrator, Damiano Della Ca.

(Horacek Aff., ¶ 25.)  Pursuant to Act No. 216/1994, the Czech Republic then sought to have a

court appoint a replacement for Mr. Della Ca, after the parties did not agree on a substitute

review arbitrator to take his place. (Horacek Aff., ¶ 27.)  The court proceedings, requesting the

appointment of Jiri Schwarz in place of Mr. Della Ca, were pending in the Municipal Court in

Prague at Case Ref. No. 28 CM 223/2010.  (Horacek Aff., ¶ 28.)  Recently, the judicial process

in regard to the appointment of Mr. Schwarz has finally concluded.  In this regard, the Municipal

Court in Prague (as a Court of First Instance) appointed Jiri Schwarz to the arbitration panel, and

this decision was affirmed by the High Court in Prague (as a Court of Appeal) on March 27,

2013. (Horacek Aff., ¶ 28.)  However, while Diag Human has continued its efforts to thwart the

creation of the arbitration review panel by lodging further requests for appellate review with the

Czech Supreme Court concerning the decisions of the lower courts, these procedural steps taken

by Diag Human do not have a suspensory effect on the appointment decisions.  Therefore, the

three-member arbitration review panel is now complete, and the arbitration review proceedings

in the Czech Republic as to the Arbitration Award can now be resumed.  The parties to the

Arbitration Proceeding are awaiting the issuance by the review arbitrators of an official record of their resumed procedural activity.  (Horacek Aff., ¶ 29.)

### D. <u>Diag Human Seeks to Enforce the Award Before It Becomes Final</u>

Diag Human filed the Complaint to enforce the Arbitration Award in this Court, characterizing it as "final" and "binding," but without disclosing at the time of filing the status of proceedings in the Czech courts to appoint two arbitrators to form the review arbitration panel pursuant to the parties' Arbitration Agreement.  Not only was Diag Human aware of these court proceedings, but it actively and vigorously participated in them for the past five years. (Complaint, ¶¶ 19-24; Horacek Aff., ¶¶ 24, 27-30.)  Moreover, since the Court of Appeal has recently affirmed the appointment of the final review arbitrators, the arbitration review panel is now complete, and the arbitration proceedings in the Czech Republic can now be resumed. (Horacek Aff., ¶ 29.)

Moreover, in 2011 and 2012, while the proceedings for the appointment of the arbitration review panel were pending in the Czech courts, Diag Human applied to the courts of Austria, France, England, Luxembourg, the United States and Switzerland for orders to enforce the Arbitration Award.  (Horacek Aff., ¶ 31.)  The proceedings before the foreign courts (with the exception of the U.S.) were *ex parte*, and Diag Human did not disclose to those courts that both parties requested review of the Arbitration Award or that there were on-going proceedings in the Czech courts to appoint review arbitrators.   The Czech Republic, therefore, appealed or applied to have set aside each of these ex parte enforcement orders obtained by Diag Human.  (Horacek Aff., ¶ 31).

Diag Human attempted to claim in the proceedings before the foreign courts that the Czech Republic's Application for Review of the Arbitration Award was not effective because it

was allegedly not signed by the proper persons. (Horacek Aff., ¶ 32.) However, the Czech Republic disputed Diag Human's unilateral determination that the Czech Republic's Application for Review is not effective, and the issue has not yet been determined under Czech laws by the arbitration review panel in the Czech Republic, the required jurisdiction in which to decide the issue. (Horacek Aff., ¶¶ 32-34.) The Czech Republic's position has been vindicated by the courts of three different countries so far, including the highest court of another signatory country to the New York Convention, and it is therefore no longer a question of the Czech Republic "trying to argue" the point.

### III.   ARGUMENT

The Court should dismiss Diag Human's Complaint because, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Complaint is barred by the applicable statute of limitations and Diag Human fails to state a claim pursuant to the New York Convention. Additionally, the Court should refuse to enforce the Arbitration Award and dismiss the Complaint pursuant to Rule 12(b)(6) based on the SPEECH Act of 2010, which prohibits recognition or enforcement of the Arbitration Award under the circumstances of this litigation. Finally, the Court should dismiss the Complaint based on the doctrine of *forum non conveniens* because Diag Human's claim and this matter have absolutely no connection to the United States or the District of Columbia.

## A. Diag Human's Complaint Should be Dismissed Because It is Barred by the Applicable Statute of Limitations[2]

Diag Human asserts a single claim against the Czech Republic to enforce the Arbitration Award pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of 1958, 9 U.S.C. § 201 *et seq.* (the "New York Convention"). (Compl. ¶¶ 24-29.) The New York Convention contains a statute of limitations for actions to confirm a foreign arbitration award.  In this regard, Section 207 of the New York Convention provides as follows: "*Within three years after an arbitral award falling under the Convention is made*, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration." 9 U.S.C. § 207 (emphasis added).  The D.C. Circuit, as well as other jurisdictions, has interpreted and applied Section 207 as a <u>mandatory</u> statute of limitations for bringing an action to confirm an arbitral award.  For example, in *Flatow v. Islamic Republic of Iran*, 76 F.Supp.2d 28, 29 (D.D.C. 1999), this Court held that the New York Convention "requires parties to confirm arbitration awards within three years of their issuance."  In so holding, this Court recognized that courts addressing claims under the New York Convention have construed Section 207 to be a statute of limitations.  *Id.* (citing *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co. v. Navimpex Centrala Navala*, 989 F.2d 572 (2d Cir. 1993); *In re Consolidated Rail Corp.*, 867 F.Supp. 25, 30 (D.D.C. 1994)).  Accordingly, in *Flatow*, this Court held that the statute of limitations for confirming a foreign arbitral award had expired because the arbitral award was actually issued twelve years earlier.

*Id.*

---

[2] "A defendant may raise the affirmative defense of statute of limitations in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) when the facts that give rise to the defense are evident from the face of the complaint. *Jack's Canoes & Kayaks, LLC v. National Park Service*, 2013 WL 1245859, *13 (D.D.C. 2013). *See also, Smith-Haynie v. District of Columbia*, 155 F.3d 575 (D.C. Cir. 1998) ("[W]e now explicitly hold that an affirmative defense may be raised by pre-answer motion under Rule 12(b) when the facts that give rise to the defense are clear from the face of the complaint.").

Much more recently, in *Commissions Import Export S.A. v. Republic of Congo*, 2013 WL 76270 (D.D.C. 2013), this Court again confirmed that Section 207 establishes a three-year statute of limitations. The Court explained that "[a]t the same time Congress chose to implement the New York Convention it also chose to limit its applicability by imposing a three-year statute of limitations on confirmation actions." *Id.* at *7. The plaintiff in *Republic of Congo* filed its complaint nearly a decade after the arbitration award was entered in 2000. *Id.* at *2. This Court dismissed the complaint with prejudice holding that the plaintiff could not circumvent the statute of limitations set forth in Section 207. *Id.* at *9.

Similarly, other jurisdictions have interpreted Section 207 as a mandatory statute of limitations and have also clarified that the statute runs from the date that the award is ***decided by the arbitrators***. For example, in *Seetransport*, the defendant argued that the plaintiff's claim for confirmation of an arbitral award was barred by the three-year statute of limitations. 989 F.2d at 580. While neither party disputed whether Section 207 imposed a mandatory statute of limitations, the parties disputed the meaning of the word "made" in Section 207. *Id.* at 581. The defendant argued that, as used in Section 207 and other sections of the Convention, "an application to the court for an order of confirmation must be filed within three years after the award was 'made,' that is, originally decided by the arbitrators." *Id.* Since the award was made in November 1984, and the plaintiff did not file an action to confirm until March 1988, it is time-barred. *Id.* The plaintiff, on the other hand, argued that the term "made" really means "became final." *Id.* The plaintiff asserted that the award did not become "final" until the appeal was dismissed in March 1986. *Id.* The Second Circuit concluded that if it were to accept the plaintiff's argument that the statute of limitations only begins to run when an award becomes final, it would essentially be rewriting Section 207, and such a revision would make the section

superfluous. *Id.* Accordingly, the Second Circuit held that the plaintiff's cause of action seeking enforcement of the arbitral award was time-barred. *See also, EDF International S.A. v. YPF S.A.*, 676 F.Supp.2d 317 (D.Del. 2009) (affirming the Second Circuit's decision in *Seetransport* and finding that a party would be barred from enforcing an arbitration award if an appeals process takes longer than three years).

Based on the clear and unequivocal decisions referenced above, including those of this Court, Diag Human's action to confirm the Arbitration Award is clearly time-barred on the face of the Complaint. This action involves a foreign arbitral award that was entered by an arbitration panel in the Czech Republic. (Compl. ¶ 1.) The Complaint avers that Diag Human seeks to enforce the arbitral award pursuant to the New York Convention. (*Id.*) The arbitral award was rendered on August 4, 2008. (*Id.* ¶¶ 1, 8, 19.) Pursuant to the express language of Section 207 and the applicable law interpreting that section, Diag Human was required to file its Complaint to confirm the Arbitration Award within three years of the date the award was entered—on or before August 4, 2011. Diag Human, however, did not file this Complaint until March 19, 2013. Accordingly, its Complaint is barred by the clearly-defined three-year statute of limitations, and the Czech Republic respectfully requests that this Honorable Court dismiss the Complaint with prejudice.

## B. Alternatively, Diag Human's Complaint Fails to State a Claim upon Which Relief May Be Granted Under the New York Convention

Should this Court determine for some reason that the Complaint is not barred by the applicable three-year statute of limitations, then the Czech Republic argues that, in the alternative, the Complaint nevertheless fails to state a claim upon which relief may be granted, and the Court should dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Diag Human asserts a single claim against the Czech Republic to enforce the Arbitration Award pursuant to the New York Convention. (Complaint, ¶¶ 25-30.) The New York Convention, acceded to by the United States in 1970, permits parties to confirm and enforce foreign arbitration awards in the United States. *See* 9 U.S.C. §§201 *et seq.*

However, the New York Convention expressly sets forth circumstances under which recognition and enforcement of an arbitration award is not appropriate and may be refused by a court. *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 934 (D.C. Cir. 2007). The specific grounds upon which a court may refuse to recognize and enforce an arbitration award are set forth in Articles V and VI of the New York Convention. *See* New York Convention, art. V & VI, 21 U.S.T. 2517, *reprinted at* 9 U.S.C. § 201.

In this case, enforcement of the Arbitration Award should be refused under the New York Convention for at least the following reasons:

(1) **The Arbitration Award is not final.** (New York Convention, Art. V(1)(e) & Art. VI.)

(2) **Diag Human is not acting in accordance with the parties' agreement.** (New York Convention, Art. V(1)(d).)

(3) **Enforcing the Arbitration Award would contravene clear public policy in favor of arbitration.** (New York Convention, Art. V(2)(b).)

(4) **The Arbitration Award did not arise out of a commercial legal relationship.** (New York Convention, Art. I.)

A motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is the appropriate vehicle to assert the enumerated defenses to enforcement under the New York Convention. *See TermoRio S.A. E.S.P.*, 487 F.3d 928 (affirming grant of motion to dismiss complaint seeking to enforce arbitration award under New York Convention).

1. **Alternatively, the Court Should Refuse to Enforce the Arbitration Award Because It Is Not Final under the Parties' Agreement**

    a. **The Arbitration Award Has Not Yet Become Binding on the Parties**

Although the Czech Republic contends that Diag Human's request to enforce the Arbitration Award in the United States is barred by the applicable statute of limitations, in the alternative, the Czech Republic additionally contends that Diag Human may not seek to enforce the Arbitration Award because it is not final under the explicit terms of the parties' Arbitration Agreement, as evidenced by ongoing proceedings in the Czech Republic and other jurisdictions. The Court should, therefore, refuse to enforce the Arbitration Award because it has not yet become binding on the parties.

Article V(1)(e) of the New York Convention provides that a court may refuse to recognize and enforce an arbitration award where a party furnishes proof that "[t]he award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made. New York Convention, art. V(1)(e).

The U.S. Court of Appeals for the District of Columbia has noted that a "principal precept" of the New York Convention is that "an arbitration award does not exist to be enforced in other Contracting States if it has been lawfully 'set aside' by a competent authority in the State in which the award was made." *TermoRio S.A. E.S.P.*, 487 F.3d at 936. The same logic applies to the parallel requirement of Article V(1)(e) that an arbitration award "become binding" before it may be enforced. In other words, where an arbitration award "has not yet become binding on the parties," there is no arbitration award that may be enforced in another country under the New York Convention.

In this case, there is no award that may be enforced because the Arbitration Award has not yet become binding on the parties based on the explicit terms of the Arbitration Agreement. Diag Human and the Czech Republic agreed in the Arbitration Agreement that any arbitration award issued would be subject to review by a second panel of arbitrators. Specifically, Section V of the Arbitration Agreement provides that "the arbitral reward [sic] will be submitted to a review by other arbitrators whom the parties appoint in the same manner if an application for review has been submitted by the other party within 30 days from the date on which the applicant party received the arbitral award." (Complaint, Ex. B, Doc. 1 at p. 14.)  The parties further agreed that it is only if "the review application of the other party has not been submitted within the deadline" that the arbitration award "will enter into effect" and the parties will "undertake to implement it." (Complaint, Ex. B, Doc. 1 at p. 14.)

The clear import of this agreement is that, if either party sought to have the arbitration award reviewed by the second panel of arbitrators, the arbitration award would not enter into effect, and the parties would not seek to implement it.  This fact is confirmed in the Arbitration Award itself, which provides that the Arbitration Award will be judicially enforceable, "subject to the possibility of implementation of the arbitration clause contained in the [Arbitration Agreement], such that the award will be reviewed by arbitration under § 27 of the law." (Complaint, Ex. A, Doc. 1 at p. 21.)  Perhaps the most telling fact is that Diag Human has never commenced an enforcement proceeding in the Czech Republic, which would be the most logical place to do so if in fact Diag Human actually believed that the Arbitration Award was final and binding.

As set forth in Section II.C. of the Statement of Facts, both parties requested review of the Arbitration Award and each named an arbitrator on their behalf to form the review panel.

Those review proceedings included several judicial proceedings to name the second and third arbitrators to review the Arbitration Award pursuant to the Arbitration Agreement. The relevant Czech courts in the appointment proceedings have conducted hearings and issued rulings over the past five years. Recently, the judicial process for the appointment of the remaining two review arbitrators has finally concluded. The Czech Court of First Instance appointed Petr Kuzel and Jiri Schwarz, and these decisions were affirmed by the Czech Court of Appeal. (Horacek Aff., ¶¶ 24, 28.) Since the arbitration review panel is now complete, the arbitration review proceedings in the Czech Republic can now be resumed.

Although it participated vigorously in the Czech judicial proceedings to appoint the review arbitrators, Diag Human claims to this Court that it has effectively withdrawn from the review proceedings by unilaterally withdrawing its Application for Review of the Arbitration Award. (Complaint ¶ 22.) Diag Human also contends that the Czech Republic's request for review of the Arbitration Award is not effective based on an alleged technical Czech procedural defect. (*Id.*) However, these contentions of Diag Human are just that—contentions, completely unsupported by applicable Czech law.

The effectiveness of Diag Human's purported withdrawal of its request for review, and the validity of the Czech Republic's request for review, have never been determined by the arbitration review panel in the Czech Republic, which is the authority empowered to decide these issues under the Arbitration Agreement. "Gateway questions" such as timeliness of the initiation of arbitration, or in this case, the validity of a request for review and the purported withdrawal of another, are presumptively for the arbitrators, not a court, to decide. *See TMR Energy Ltd. v. State Property Fund of Ukraine*, 411 F.3d 296, 304-05 (D.C. Cir. 2005) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002)). Moreover, under relevant Czech law, which the

parties agreed would govern, arbitrators have the power to examine their own jurisdiction. *See* Act No. 216/1994 Coll. of Laws on Arbitral Proceedings and Enforcement of Arbitral Awards, § 15(1). However, the arbitration review panel has not been permitted to decide the issues Diag Human now claims because, until recently, Diag Human had effectively thwarted the creation of the arbitration review panel. As of the March 27, 2013 judgment of the High Court in Prague, which took effect on May 14, 2013, the arbitration review panel is now complete, and the arbitration proceedings in the Czech Republic can be resumed. (Horacek Aff., ¶ 28.) Therefore, these threshold questions can now and must be decided by the appropriate authority.

In the Complaint, Diag Human conveniently fails to mention any of these on-going proceedings—both arbitral and judicial—in the Czech Republic, and in which Diag Human is and has been actively participating. Instead, Diag Human claims disingenuously that the Arbitration Award "is no longer is [sic] subject to any review proceedings." (Complaint, ¶ 22.) This assertion is wholly inaccurate, and, as a bald legal conclusion, does not need to be accepted by the Court. *See Ashcroft v. Iqbal*, 566 U.S. 662, 129 S. Ct. 1937, 1949 (2009).

Diag Human is essentially seeking to have its cake and eat it too. On the one hand, it is actively participating in the judicial proceedings in the Czech Republic concerned with the appointment of the second and third review arbitrators. On the other hand, Diag Human represents to this Court that the Arbitration Award is not subject to any review proceedings, despite the fact that both the Czech Republic and Diag Human filed Applications for Review. These positions are patently inconsistent. The Court should not credit the position that Diag Human takes in this forum, which appears to be crafted solely to allow Diag Human to attempt to enforce the Arbitration Award in the United States, when it clearly cannot do so in the Czech Republic.

The fact that the Arbitration Award is not yet final can also be established from the decisions of courts in other jurisdictions, where Diag Human has sought to enforce the Arbitration Award *ex parte*. For example, on April 18, 2011, Diag Human presented an ex parte application for enforcement of the Arbitration Award to an Austrian Court, claiming that the Arbitration Award was final but without disclosing the Applications for Review of the Arbitration Award filed by both parties or the on-going judicial proceedings in the Czech Republic regarding the appointment of the arbitration review arbitrators.   The enforcement decision of the Austrian court was appealed by the Czech Republic.   (Horacek Aff., ¶¶ 31, 46(b).)   On October 29, 2012, the Court of Appeal in Vienna, Austria rendered a decision dismissing the execution of the Arbitration Award in Austria, finding that the Arbitration Award had not become final or enforceable under the New York Convention.   The Court of Appeal determined that the Arbitration Award was not binding because of the Czech Republic's application for review of the Arbitration Award.   In addition, the Austrian Court of Appeal ordered Diag Human to pay the Czech Republic's costs incurred in the enforcement proceedings in Austria.   Subsequently, on April 16, 2013, the Austrian Supreme Court affirmed the decision of the Court of Appeal, thereby rendering a final determination that the Arbitration Award is not enforceable under the New York Convention. (Horacek Aff., ¶ 46(b).)

Likewise, on November 20, 2012, the Court of Appeal of the French Republic in Paris, France rendered a decision dismissing the execution of the Arbitration Award in France and declaring the Arbitration Award unenforceable.   In reaching its decision, the French Court of Appeal found that the clear intent of the Arbitration Agreement was to deprive the parties of a final award if a request for review was lodged within the agreed upon deadline.   Currently pending before the French Supreme Court is Diag Human's appeal of the November 20, 2012

decision, which is without suspensory effect and is not likely to be heard before 2015. (Horacek Aff., ¶ 46(a).)   Additionally, on June 24, 2013, the Tribunal of First Instance in Geneva, Switzerland rendered a decision setting aside a freezing order obtained ex parte by Diag Human and declared the Arbitration Award unenforceable in Switzerland.  Diag Human did not file an appeal from this decision. (Horacek Aff., ¶ 46(c).)

Enforcing the Arbitration Award in this scenario would be contrary to the very principles that the New York Convention is designed to promote.  In this regard, the New York Convention is intended to encourage consistent recognition and enforcement of arbitration agreements in the international arena. *See, e.g., TermoRio S.A. E.S.P.*, 487 F.3d at 933-34 ("The Convention's purpose was to 'encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries.'") (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974)).   Diag Human now actively seeks to undermine the parties' Arbitration Agreement by attempting to enforce the Arbitration Award in the United States, and against the terms of the Arbitration Agreement, under the auspices of the New York Convention.  Diag Human should not be permitted to manipulate the New York Convention to undermine its very purpose.

Accordingly, the Court should dismiss Diag Human's Complaint because the Arbitration Award has not yet become binding, as the agreed-upon review proceedings continue in the Czech Republic.

### b.   Alternatively, Both The Czech Republic and Diag Human Have Sought to Set Aside the Award Before a Competent Authority

Even if the Court concludes (1) that the statute of limitations does not bar the Complaint or (2) that the Arbitration Award is final and binding on the parties, the Court should still dismiss the Complaint because both parties have applied to set aside the Arbitration Award before a competent authority, by seeking to have the Arbitration Award reviewed by an arbitration review panel in the Czech Republic.   Article VI of the New York Convention provides that "[i]f an application for the setting aside or suspension of the award has been made to a competent authority referred to in article V(1)(e), the authority before which the award is sought to be relied upon may, if it considers it proper, adjourn the decision on the enforcement of the award."   New York Convention, art. VI.   In adjourning the decision on the enforcement of an award, a district court may dismiss or stay a matter.   *See Telcordia Technologies, Inc. v. Telkom SA, Ltd.*, 95 Fed. Appx. 361, 363 (D.C. Cir. 2004) ("[W]e construe 'adjourn' to mean stay or dismiss without prejudice....")

In this case, both parties made an application to set aside or suspend the Arbitration Award to a competent authority.   The parties agreed in the Arbitration Agreement that the competent authority to review the Arbitration Award would be an arbitration review panel appointed through an agreed-upon procedure.   Recognizing and deferring to the competent authority designated by the parties is entirely consistent with the Federal Arbitration Act, which implements the New York Convention and is intended to ensure that "private agreements to arbitrate are enforced according to their terms."   *Volt Information Sciences, Inc. v. Board of Trustees*, 489 U.S. 468, 479 (1989).   In addition, arbitral review panels are recognized under Czech law.   *See* Act No. 216/1994 Coll. of Laws on Arbitral Proceedings and Enforcement of Arbitral Awards, § 27.

Numerous courts have concluded that it would be improper for a court in the United States to enforce an arbitration award where, like here, proceedings continue in the primary jurisdiction—or the country in which or under whose procedural law an arbitration award is rendered. *See, e.g., DRC, Inc. v. Republic of Honduras*, 774 F. Supp. 2d 66 (D.D.C. 2011) (granting a motion to stay enforcement of arbitration award pending outcome of proceedings in primary jurisdiction); *CPConstruction Pioneers Baugesellschaft Anstalt v. Republic of Ghana*, 578 F. Supp. 2d 50 (D.D.C. 2008) (same); *Spier v. Calzaturificio Tecnica S.p.A.*, 663 F. Supp. 871 (S.D.N.Y. 1987) (same). As these courts have uniformly recognized, enforcing the award in the United States could result in inconsistent results if the arbitration award is ultimately overturned, reversed or modified by a competent authority of the primary jurisdiction. *See, e.g., DRC, Inc.*, 774 F. Supp. 2d at 76 ("[I]t is better to permit the validity of this [Honduran] arbitral award to be first tested under [Honduran] law by [Honduran] courts. That is preferable to an American court seeking to apply the law of the foreign country where the award was made, and entering an order enforcing an award later condemned by the courts of that foreign country.") (*See also*, Horacek Aff., ¶ 44.)

In considering whether to adjourn enforcement of an award, courts generally weigh various factors. *See DRC, Inc.*, 774 F. Supp. 2d at 74 (citing *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 317-18 (2d Cir. 1998)). The following is a list of those factors set forth in *DRC, Inc.* and an analysis of why each factor supports adjournment in this case:

      **(i)**    **The general objectives of arbitration (the expeditious resolution of disputes and the avoidance of protractedand expensive litigation)**

This factor supports adjourning enforcement of the Award. Adjourning enforcement pending completion of set-aside proceedings is consistent with the objectives of arbitration.

*CPConstruction Pioneers*, 578 F. Supp. 2d at 54.   Moreover, as stated above, one of the objectives of arbitration in the United States is to ensure that "private agreements to arbitrate are enforced according to their terms." *Volt Information Sciences, Inc.*, 489 U.S. at 479.   Deferring to the ongoing review proceedings in the Czech Republic—including the judicial proceedings to appoint the review arbitrators—will ensure that the objective of enforcing the Arbitration Agreement according to its terms is met.

To the extent that there are any delays in resolving this dispute, such delays rest entirely with Diag Human, which has actively tried to undermine the review process by unilaterally declaring that the Czech Republic's request for review is defective and that its withdrawal of its request for review was self-executing.   Over the past five years, Diag Human has appealed rulings made in proceedings instituted by the Czech Republic to have arbitrators appointed to complete the review panel contemplated by the Arbitration Agreement.   Given that Diag Human itself has caused the delays in the review process, Diag Human should not be heard to rely on this as a basis to enforce the Arbitration Award in the United States.

     **(ii)**    **The status of the foreign proceedings and the**
                **<u>estimated time for those proceedings to be resolved</u>**

Where delay in the foreign proceedings is caused by the party seeking enforcement, this factor clearly supports adjournment. *DRC, Inc.*, 774 F. Supp. 2d at 75.   As set forth above, any delays in review of the Arbitration Award are attributable solely to Diag Human.   The Czech Republic has diligently sought review of the Arbitration Award in accordance with the provisions of the Arbitration Agreement, and when Diag Human short circuited the formation of the arbitral review panel, the Czech Republic promptly and appropriately sought judicial relief to appoint the needed arbitrators.   Now that the arbitration review panel is once again complete and

the review proceedings can continue in the Czech Republic, Diag Human should not be able to seek enforcement of the Arbitration Award in the United States.

> **(iii)  Whether the award sought to be enforced will receive greater scrutiny in the foreign proceedings under a less deferential standard of review**

This factor supports adjourning enforcement as well.  The parties explicitly agreed to a review process using the procedures and standards upon which the Arbitration Award was first issued.  (Complaint, Ex. 2, Doc. 1 at p. 14.)  This indicates that the parties agreed to a de novo review of the Arbitration Award by a second panel of arbitrators.  This clearly is a less deferential standard of review than would otherwise be applied in these enforcement proceedings under the circumscribed review procedures of the New York Convention.

> **(iv)  Characteristics of the foreign proceedings, including (i) whether they were brought to enforce an award (which would tend to weigh in favor of a stay) or to set the award aside (which would tend to weigh in favor of enforcement); (ii) whether they were initiated before the underlying enforcement proceeding so as to raise concerns of international comity; (iii) whether they were initiated by the party now seeking to enforce the award; and (iv) whether they were initiated under circumstances indicating an intent to hinder or delay resolution of the dispute**

The fourth factor also supports adjournment.  The review proceedings that continue in the Czech Republic were initiated well before Diag Human came to this Court seeking enforcement of the Arbitration Award.  In fact, both Diag Human and the Czech Republic requested review of the Arbitration Award within 30 days of receiving the Arbitration Award in August 2008, as the parties explicitly agreed they had the right to do.

There is no conceivable way that the review proceedings were initiated under circumstances indicating an intent to hinder or delay resolution of the dispute.  To the contrary,

the review proceedings indicate an intent on the part of the Czech Republic to proceed according to the Arbitration Agreement.   It is Diag Human's efforts to frustrate the arbitral review proceedings in the Czech Republic that have hindered resolution of the dispute.

### (v)   A balance of possible hardships to each of the parties

This factor also supports adjourning enforcement.  As an initial matter, the amount that Diag Human seeks is substantial—approximately $650 million, according to Diag Human's Civil Cover Sheet.  If the Arbitration Award is enforced in this forum, but is subsequently set aside or amended in the review proceedings in the Czech Republic, it may be difficult or impossible to reverse or recover any funds or property that Diag Human recovers prematurely.  While Diag Human may contend that it will suffer hardship if it is forced to wait to receive the Arbitration Award, the fact remains that Diag Human agreed to the review procedure being implemented in the Czech Republic, and any delays in that procedure are the result of Diag Human's overt attempts to undermine the process.

Moreover, in the event of enforcement, the Czech Republic faces hardship because Diag Human has pursued Czech cultural property located in Austria in its attempt to prematurely enforce the Arbitration Award.  Following ex parte execution proceedings in Austria, Diag Human sought to levy on Czech artwork that was on display at the Belvedere museum.  While it is unknown what Czech assets Diag Human would pursue in this forum, based on its course of conduct to date, there is a substantial risk of hardship to the Czech Republic should its cultural or other property pass to Diag Human.

**(vi)**   **Any other relevant circumstances**

The fact that Diag Human has been less than forthcoming with this Court regarding the on-going arbitration review proceedings in the Czech Republic also supports adjournment.  In addition, as set forth in the Affidavit of Petr Horacek, the Arbitration Award is not yet final or binding under the parties' Arbitration Agreement and Czech law, and the courts of the Czech Republic should have the opportunity to make any such determinations in the first instance.

It is also important to note that Diag Human has recognized and conceded that the Arbitration Award is not yet final and binding under Czech law.  In this regard, and as explained in the Affidavit of Petr Horacek, Czech civil procedure requires that an execution title, a decision certified with the clause of legal force (effectiveness) and enforceability, be submitted to a court or execution office before enforcement can occur.  (Horacek Aff., ¶ 36.)  Diag Human does not have an execution title with respect to the Arbitration Award and cannot obtain one because the arbitration review has not yet concluded.   Indeed, Diag Human tacitly admitted that this procedure is required under Czech law, and that the Arbitration Award is not yet final and binding, when it requested in the withdrawal of its Application for Review that the Czech arbitration review panel deliver a resolution on the discontinuance of the review proceedings, and that the arbitration review panel affix a clause of legal force to the Arbitration Award, and file the arbitration file with the Czech district court of jurisdiction.  (Horacek Aff., ¶ 34.)

In sum, consideration of the factors used in determining whether to adjourn enforcement leads to the inescapable conclusion that the Court should adjourn the enforcement of the Arbitration Award in this forum because Diag Human has not acted according to the Arbitration Agreement.  Allowing Diag Human to secure enforcement at this stage would fly directly in the face of the New York Convention and the policies that its signatories sought to advance.

## 2. Diag Human's Request to Enforce the Award
## Is Contrary to the Arbitration Agreement

Alternatively, the Court should refuse to enforce the Arbitration Award and should dismiss Diag Human's Complaint because the relief that Diag Human seeks is inconsistent with the Arbitration Agreement. The New York Convention permits a court to refuse to recognize and enforce an arbitral award where "arbitral procedure was not in accordance with the agreement of the parties." New York Convention, art. V(1)(d); *see also Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85 (2d Cir. 2005) (affirming refusal to enforce award based on Article V(1)(d) where third arbitrator was not selected in accordance with the parties' agreement). Such is the case here.

The relief sought by Diag Human in this Court is not in accordance with the Arbitration Agreement. It is undisputed that the parties agreed that the Arbitration Award would be subject to review by a second panel of arbitrators. (Complaint, ¶ 21.) It is also undisputed that after receiving the Arbitration Award, both parties submitted requests for review of the Arbitration Award and named arbitrators to form the arbitral review panel. (Complaint, ¶ 22.) Diag Human has thereafter prevented the agreed-upon review from proceeding by unilaterally withdrawing its request for review and declaring that the Czech Republic's request for review is not effective, without any right under Czech law or the parties' Arbitration Agreement to do so. (Horacek Aff., ¶¶ 34-36.)

Diag Human's contentions regarding its purported withdrawal of its request for review, and the effectiveness of the Czech Republic's request for review, are issues that should be decided by the arbitration review panel pursuant to the Arbitration Agreement. *See TMR Energy Ltd.*, 411 F.3d at 304-05 (D.C. Cir. 2005) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537

U.S. 79 (2002)) (recognizing that gateway questions of arbitrability are presumptively for the arbitrator, not the court, to decide).  However, the arbitration review panel has not had the opportunity to review the contentions because it has only recently been fully constituted again, after it lost two of its members in 2010.  For Diag Human to present these to-be-determined legal arguments as "facts" represents an "ingenious but disingenuous" attempt to construct finality before the fact.  (Horacek Aff., ¶¶ 32-39).  *See Encyclopaedia Universalis S.A.*, 403 F.3d at 91. As the Second Circuit did in *Encyclopaedia Universalis S.A.*, this Court should reject Diag Human's attempt to manipulate the outcome.

The Arbitration Award, which Diag Human represents to the Court is final, is clearly not final under the Arbitration Agreement, which Diag Human obviously knows and understands. To enforce the Arbitration Award as a final arbitral award under the New York Convention would be contrary to the Arbitration Agreement, and courts should not overlook agreed-upon arbitral procedures simply for the sake of enforcement.  *See Encyclopaedia Universalis S.A.*, 403 F.3d at 91.

Accordingly, the Court should refuse to recognize and enforce the Arbitration Award under Article V(1)(d) of the New York Convention, and the Court should dismiss Diag Human's Complaint.


### 3.  Enforcing the Award Would Be Contrary to the Clear Public Policy in Favor of Arbitration

The Court should also refuse to recognize and enforce the Arbitration Award because to do so would go against the clear public policy, both in the United States and internationally, in favor of arbitration.  Under the New York Convention, "[r]ecognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition

and enforcement is sought finds that: ... (b) The recognition or enforcement of the award would be contrary to the public policy of that country." New York Convention, art. V(2)(b).

The "public policy" basis for non-enforcement applies where "enforcement would violate the forum state's most basic notions of morality and justice." *TermoRio S.A. E.S.P.*, 487 F.3d at 938 (quoting *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 305-06 (5th Cir. 2004)). The public policy must be "well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Republic of Argentina v. BG Group PLC*, 764 F. Supp. 2d 21, 31 (D.D.C. 2011) (quoting *Banco de Seguros del Estado v. Mutual Marine Office, Inc.*, 344 F.3d 255, 264 (2d Cir. 2003)).

The public policy in favor of arbitration is a well-defined and dominant policy in the United States and internationally. The pronouncements of public policy in favor of arbitration and enforcing parties' agreements to arbitrate are emphatic and myriad. *See, e.g., Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984) ("In enacting § 2 of the [Federal Arbitration Act], Congress declared a national policy favoring arbitration...."); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 613 (1985) (noting that, since the United States' accession to the New York Convention and implementation via the Federal Arbitration Act, the federal policy in favor of arbitration "applies with special force in the field of international commerce"); *Volt Information Sciences, Inc.*, 489 U.S. at 479 (recognizing that the Federal Arbitration Act's "primary purpose" is "ensuring that private agreements to arbitrate are enforced according to their terms").

The policy in favor of arbitration is expressly incorporated in and was a driving force behind the New York Convention. Article II of the New York Convention provides that "[e]ach

Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any difference which have arisen or which may arise between them in respect of a defined legal relationship."  New York Convention, art. II(1).

Enforcing the Arbitration Award in this case would be patently contrary to this strong public policy in favor of arbitration because it would be incongruent with the Arbitration Agreement between the parties.  As set forth above, the parties explicitly agreed to an arbitration review procedure that could be initiated by either party following issuance of the Arbitration Award.  Moreover, both parties initiated the review procedure after issuance of the Arbitration Award.  Diag Human now seeks to enforce the Arbitration Award prior to completion of the agreed-upon review procedure, which is inconsistent with the parties' Arbitration Agreement. Allowing Diag Human to flout the parties' Arbitration Agreement is in clear conflict with the well-defined policy of enforcing private agreements to arbitrate.  (*See* Horacek Aff., ¶ 44.)

Accordingly, the Czech Republic respectfully requests that the Court refuse to recognize or enforce the Arbitration Award pursuant to Article V(2)(b) of the New York Convention, and the Court dismiss Diag Human's Complaint.

### 4.   The Award Did Not Arise Out of a Commercial Legal Relationship

While the United States is a signatory to the New York Convention, the United States has expressly limited the Convention's application to disputes arising out of commercial legal relationships.  In this regard, Article I(3) of the New York Convention provides that any state "may also declare that it will apply the Convention only to differences arising out of legal relationships, whether contractual or not, ***which are considered as commercial*** under the national law of the State making such declaration."  New York Convention, art. I(3) (emphasis added).  When signing the New York Convention, the United States adopted it with the specific

limitation that it would only apply to differences arising out of legal relationships that are commercial in nature under the laws of the United States. This commercial limitation was expressly incorporated in the United States' codification of the New York Convention at 9 U.S.C. § 202.

Here, Diag Human instituted the arbitration proceeding because of a letter that the Minister of Health for the Czech Republic sent to another company, A/S NovoNordisk Kobenhaven, in regard to a public bidding tender for blood plasma products.  Diag Human claimed that the letter contained certain statements questioning the credibility and ethics of Diag Human, thus causing A/S NovoNordisk to discontinue business relationships with Diag Human. (Horacek Aff., ¶¶ 4-5.)  Under general principles of American jurisprudence, this claim was in the nature of a tortious defamation, libel or disparagement claim.  It is to be noted, moreover, that the Czech Republic was not engaged in commercial competition with Diag Human at the time.  Rather, the Czech Republic was simply in the position of evaluating and selecting the most suitable bidder from among several entities participating in the blood plasma supply tender procedure. (Horacek Aff., ¶¶ 4-5.)

It is certainly and candidly acknowledged that the original arbitration panel that heard this dispute in the Czech Republic analyzed the issues in part under certain unfair economic competition principles contained in the Commercial Code of the Czech Republic.  However, the fact that certain provisions of the Czech Commercial Code were relied upon by the arbitrators does not answer the question of whether this Court should enforce the award.  As indicated above, when determining whether a legal relationship is commercial under Article I of the New York Convention, the question is to be analyzed under the law of the United States, not the law of the Czech Republic.

Extensive research has failed to locate federal court decisions that specifically define or discuss the parameters of what is or is not to be considered a "commercial" legal relationship. However, at least one court has indicated, based on the legislative history relating to the adoption of the New York Convention, that "commercial" is to be construed based on the definition of "commerce" provided in § 1 of the Federal Arbitration Act. *See Jaranilla v. Megasea Maritime Ltd.*, 171 F. Supp. 2d 644, 646-47 (E.D. La. 2001). Section 1 of the Federal Arbitration Act in turn defines "commerce" as:

> commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation, but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.

9 U.S.C. § 1. In the Complaint, Diag Human does not allege any commercial legal relationship or commerce between it and the Czech Republic, consistent with the definition above, as the basis for the claims that ultimately were submitted to arbitration.

Additionally, analogous guidance is provided in *Bryks v. Canadian Broadcasting Corporation*, 906 F. Supp. 204 (S.D. N.Y. 1995). In that case, the district court analyzed a defamation claim against a unit of the Canadian government under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602-1611, and whether libel, slander and defamation claims could be asserted under the guise of "commercial activity" claims. *Bryks*, 906 F. Supp. at 207-10. The court in *Bryks* concluded that the plaintiff asserting libel, slander or defamation could not sue a foreign state under the "commercial activity" exception to the Foreign Sovereign Immunities Act. *Id.*; *see also Leutwyler v. Office of Her Majesty Queen Rania Al-Abdullah*, 184 F. Supp. 2d 277 (S.D.N.Y. 2001) (rejecting argument that tort claims for defamation and tortious interference

with business relations and prospective business advantage met "commercial activity" exception under Foreign Sovereign Immunities Act).

By analogy, therefore, the same analysis is relevant here. The claims of Diag Human against the Czech Republic sound in libel, defamation and disparagement. These are traditional tort-based claims in the United States, notwithstanding the manner in which they were treated in the Czech arbitration. Similar to *Bryks*, they should not be considered "commercial" in the context of Article I's prohibition against enforcing awards that are not commercial in nature. As a result, this Court should refuse to enforce the Arbitration Award because it is not based on a legal relationship that can be considered commercial in nature under the law of the United States.

### C. The SPEECH Act of 2010 Prohibits Recognition or Enforcement of the Award

On October 10, 2010, the SPEECH Act, also known as the Recognition of Foreign Defamation Judgments Act, 28 U.S.C. § 4101-4105, became effective. This legislation prohibits the recognition or enforcement of foreign judgments for defamation unless the plaintiff who seeks to enforce the judgment can establish certain strict requirements regarding the protection of freedom of speech and press. The Act provides, in relevant part, as follows:

(1) In general—Notwithstanding any other provision of Federal or State law, a domestic court *shall not recognize or enforce a foreign judgment for defamation unless* the domestic court determines that (A) *the defamation law applied in the foreign court's adjudication provided at least as much protection for freedom of speech and press in that case as would be provided by the first amendment to the Constitution of the United States* and by the constitution and law of the State in which the domestic court is located; *or* (B) even if the defamation law applied in the foreign court's adjudication did not provide as much protection for freedom of speech and press as the first amendment to the Constitution of the United States and the constitution and law of the State, *the party opposing recognition or enforcement of that foreign judgment would have been found liable for defamation by a domestic court applying the first amendment to the Constitution of the United States* and the constitution and law of the State in which the domestic court is located.

(2) ***Burden of establishing application of defamation laws—The party seeking recognition or enforcement of the foreign judgment shall bear the burden of making the showings required under subparagraph (A) or (B).***

28 U.S.C. § 4102(a) (emphasis added).

As indicated above, Diag Human's claims against the Czech Republic in the underlying arbitration proceeding sounded in libel, defamation and disparagement. However, the Complaint filed by Diag Human in this Court does not make the requisite showings pursuant to the SPEECH Act. There are no averments regarding the defamation law in the Czech Republic or that Czech law provides as much protection for freedom of speech as the United States Constitution. Nor is there anything else pled in the Complaint that remotely meets the required burden under § 4102 of the SPEECH Act to show that the speech protections of the United States have been met.

Given its recent adoption, there are only two reported decisions that cite to the SPEECH Act and neither decision offers much in the way of interpretation. Moreover, while the definition of "foreign court" contained in the Act does not expressly include an arbitration award, it is respectfully urged that there should be no difference between attempting to enforce a judgment and attempting to enforce an arbitration award, as the result sought is exactly the same, i.e,. the entry of a judgment in a United States Court based upon a judgment or arbitration award rendered in a foreign jurisdiction.

Therefore, because the Arbitration Award is based on Diag Human's claim sounding in defamation or disparagement, Diag Human's Complaint here should be dismissed, as Diag Human has not met its burden under the SPEECH Act to establish the protections afforded to speech and press in the Czech Republic.

### D. The Court Should Dismiss the Complaint Based on the Doctrine of *Forum Non Conveniens*

Alternatively, the Court should decline to exercise jurisdiction over these proceedings on the basis of the doctrine of *forum non conveniens*. The extensive arbitral and judicial proceedings that have taken place in the Czech Republic relating to the parties' underlying dispute demonstrate that the Czech Republic is an adequate—and far more appropriate—forum for the litigation of the claim asserted by Diag Human in this action. Furthermore, the balance of private and public interests favors dismissal.

The doctrine of *forum non conveniens* permits a court to dismiss a case that it could otherwise hear where trial in that forum would impose a heavy burden on the defendant or the court and where the plaintiff cannot offer any basis to support his choice of forum. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249 (1981). A court considering whether to dismiss a case based on the doctrine of *forum non conveniens* should apply a two-part test: (1) determine whether there is an adequate alternative forum; and (2) determine whether private and public interests weigh in favor of retention or dismissal of the matter. *Id.* at 241-42. The determination of whether to dismiss a case pursuant to *forum non conveniens* is "committed to the sound discretion of the trial court." *Piper Aircraft Co.*, 454 U.S. at 257.

### 1. The Czech Republic Is an Adequate Alternative Forum

In this case, the courts of the Czech Republic provide an adequate alternative forum for the claim that Diag Human asserts in this action. It is clear—and Diag Human cannot dispute—that the courts of the Czech Republic will have jurisdiction over the Czech Republic and the authority to hear any enforcement action that Diag Human may bring once the agreed-upon review process is complete and a final and binding award is issued. (Horacek Aff., ¶ 48.) There

are judicial proceedings presently on-going in the Czech Republic between the parties relating to the appointment of arbitrators to review the Arbitration Award pursuant to the parties' Arbitration Agreement. However, as detailed above, on March 27, 2013, the arbitration review panel was effectively reconvened for purposes of conducting the review proceedings. Although Diag Human has filed a request for appellate review with the Czech Supreme Court, the appeal does not have suspensory effect. Therefore, the Czech Republic is not only an adequate forum, but it is a more appropriate forum to hear this matter.

While the U.S. Court of Appeals for the D.C. Circuit held in *TMR Energy Ltd. v. State Property Fund of Ukraine*, 411 F.3d 296 (D.C. Cir. 2005) that the District of Columbia may be the only adequate forum for an arbitration enforcement proceeding because only a U.S. court may attach assets of a foreign nation in the United States, the *TMR Energy Ltd.* decision is clearly distinguishable from this case. In *TMR Energy Ltd* there was no dispute that the arbitration award was final, while in this case, the Arbitration Award is clearly not final under the parties' Arbitration Agreement, and further arbitration review proceedings are necessary in the Czech Republic before any award is final. Thus, the Czech Republic is not only an adequate forum for completion of those proceedings—it is a more appropriate forum.

Instead, this case is much more similar to the Second Circuit's decision in *In re Arbitration between Monegasque de Reassurances S.A.M. (Monde Re) v. NAK Naftogaz of Ukraine*, 311 F.3d 488 (2d Cir. 2002) in which the Second Circuit affirmed a dismissal based on the doctrine of *forum non conveniens* where the case could not be resolved simply on a summary disposition and evidence and witnesses were located outside the United States. *Monde Re*, 311 F.3d at 500-01. (*See* Horacek Aff., ¶ 49.) The *Monde Re* court expressly affirmed the applicability of the doctrine of *forum non conveniens* in the context of a petition to enforce a

foreign arbitration award under the New York Convention and the dismissal of such a proceeding where the United States' sole connection to the matter was that it signed the New York Convention. *Id.* at 495-97, 500.

Similar to *Monde Re*, this proceeding is not subject to a simple summary disposition in favor of Diag Human. In this regard, and for all the reasons set forth above, the Complaint is time-barred by the statute of limitations, or, in the alternative, the Arbitration Award is not yet final and binding. However, should the Court not dismiss this proceeding on either of these bases, there will remain, at a minimum, a question of fact as to whether the Arbitration Award is final and may be enforced. Resolving that question of fact will require presentation of testimony and evidence that is located almost exclusively in the Czech Republic. (*See* Horacek Aff., ¶ 49.) Thus, it is appropriate to analyze this case under the doctrine of *forum non conveniens*, and the Czech Republic is an adequate alternative forum under that analysis.

### 2. The Private and Public Interests Support Dismissal

The second step in the analysis is to weigh the private and public interests affected by the forum in which the action is filed. Although a plaintiff's choice of forum is usually given deference, that deference "carries much less weight when the plaintiff is also a stranger to the forum." *BPA Int'l, Inc. v. Kingdom of Sweden*, 281 F. Supp. 2d 73, 85 (D.D.C. 2003). The private interests considered by a court are: the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses and the cost of obtaining attendance of willing witnesses; and other factors that would make trial quicker and less expensive. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). The public interests weighed by a court are: the practicalities of handling litigation in its home forum versus the administrative difficulties that may result for courts when dockets become congested; the local

interest in deciding localized disputes and imposing jury duty only where the people of the community have some connection to the litigation; the appropriateness of having a court apply its own law rather than the law of a foreign state. *Id.* at 508-09.

The private interest factors weigh strongly in favor of dismissal of this case. To the extent that the Court does not dismiss this proceeding as barred by the applicable statute of limitations or, alternatively, because the Arbitration Award is not yet final and binding on the parties, the Czech Republic submits that the witnesses and evidence necessary to decide the issues, including the parties' respective counsel in the arbitration proceedings and the arbitrators, are located almost exclusively in the Czech Republic and/or Europe. (Horacek Aff., ¶ 49.) None of the witnesses or evidence are located in the United States. (Horacek Aff., ¶ 49.) None of the witnesses will be subject to compulsory process issued by this Court, and the cost of and time needed for attendance at any hearings in this forum will be substantial compared to a proceeding in the Czech Republic. Moreover, relevant documentary evidence will almost exclusively be in the Czech language and will require translation for use in this forum. Therefore, the proceeding will be easier, quicker and less expensive if held in the Czech Republic and not this forum. *See, e.g.*, *Monde Re*, 311 F.3d at 500; *Termorio S.A. E.S.P. v. Electrificadora Del Atlantico S.A. E.S.P.*, 421 F. Supp. 2d 87, 104 (D.D.C. 2006), *aff'd on other grounds*, 487 F.3d 928 (D.C. Cir. 2007) (dismissing complaint under the New York Convention on *forum non conveniens* grounds where witnesses and evidence were predominantly in Colombia).

The public interest factors also support dismissal. This matter simply has no connection to the United States or, more specifically, the District of Columbia, other than the fact that the United States is a signatory to the New York Convention. Diag Human is a corporation organized under the laws of the Principality of Liechtenstein, while its predecessor, Conneco a.s.

(later renamed to Diag Human a.s.), was a corporation organized under the law of the Czech Republic. The Czech Republic is a foreign, sovereign state. The Arbitration Award was rendered by Czech arbitrators following ad hoc arbitration proceedings organized under Czech law. The Arbitration Award is now subject to arbitral review proceedings pursuant to the parties' agreement and Czech law, and judicial proceedings in the Czech courts concerned with the appointment of review arbitrators. To the extent there are questions of law regarding the Arbitration Agreement, the Arbitration Award or the review proceedings, those questions are governed by Czech law. Therefore, the public interest factors indicate that this matter should be dismissed. *See Monde Re*, 311 F.3d at 500-01; *Termorio S.A. E.S.P.*, 421 F. Supp. 2d at 104.

Because the Czech Republic is an adequate alternative forum, and because the private and public interest factors indicate that the Czech Republic has a strong and overwhelming connection to this matter and the United States has none, the Court should dismiss the Complaint pursuant to the doctrine of *forum non conveniens*.

## IV.     CONCLUSION

For all of the foregoing reasons, the Czech Republic respectfully requests that the Court grant its Motion to Dismiss, dismiss the Complaint of Diag Human, and otherwise adjourn these enforcement proceedings under the New York Convention.

Respectfully submitted,

BABST, CALLAND,
CLEMENTS & ZOMNIR, P.C.

Date: August 30, 2013

By /s/ Dean A. Calland
　　　Dean A. Calland
　　　PA I.D. No. 33627
　　　D.C. I.D. No. 289207
　　　dcalland@babstcalland.com

By /s/ Leonard Fornella
　　　Leonard Fornella
　　　PA I.D. No. 27921
　　　lfornella@babstcalland.com

By /s/ Alana E. Fortna
　　　Alana E. Fortna
　　　PA I.D. No. 309691
　　　afortna@babstcalland.com

Two Gateway Center, 6th Floor
Pittsburgh, Pennsylvania 15222
Telephone: 412-394-5400

Attorneys for Defendant,
The Czech Republic-
Ministry of Health

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DIAG HUMAN S.E.,     :
Langstrasse 33, 4940 Vaduz, Principality : Civil Action No. 1:13-cv-0355 (ABJ)
of Liechenstein,      :
           :
   Plaintiff,     :
           :
  v.        :
           :
THE CZECH REPUBLIC-MINISTRY :
OF HEALTH,      :
Palackeno namesti, 4, Prague 2, 128, 01, :
Czech Republic,     :
           :
   Defendant.    :

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing Memorandum of Law in Support of Defendant's

Motion to Dismiss Complaint was served this 30th day of August, 2013, via the Court's ECF

system upon the following:

James R. Schiffer
Hyman L. Schaffer
ALLEGAERT BERGER & VOGEL LLP
111 Broadway, 20th Floor
New York, New York 10006

BABST, CALLAND,
CLEMENTS & ZOMNIR, P.C.

By /s/ Alana E. Fortna