IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DIAG HUMAN S.E., | : | |
| Langstrasse 33, 4940 Vaduz, Principality | : | Civil Action No. 1:13-cv-0355 (ABJ) |
| of Liechenstein, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| THE CZECH REPUBLIC-MINISTRY | : | |
| OF HEALTH, | : | |
| Palackeno namesti, 4, Prague 2, 128, 01, | : | |
| Czech Republic, | : | |
| | : | |
| Defendant. | : | |

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COMPLAINT**

{B1370426.1}

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................... i

I.      PRELIMINARY STATEMENT ..................................................................... 1

II.     BACKGROUND ............................................................................................ 1

III.    ARGUMENT ................................................................................................. 2

    A.  Diag Human's Complaint to Enforce the Arbitration Award is Barred by the
        Applicable Statute of Limitations ......................................................... 3

    B.  Alternatively, the Arbitration Award Is Not Yet Final and Binding ................................. 11

    C.  Alternatively, the Court Should, at a Minimum, Adjourn Enforcement of the
        Arbitration Award ................................................................................. 17

    D.  Enforcement of the Arbitration Award At This Juncture Would Contradict
        the Arbitration Agreement .................................................................... 18

    E.  Enforcement of the Arbitration Award Is Contrary to U.S. Public Policy ....................... 19

    F.  The Arbitration Award Did Not Arise Out of a Commercial Legal Relationship............ 20

    G.  The SPEECH Act Applies to and Bars Enforcement of the Arbitration Award .............. 20

    H.  The Doctrine of *Forum Non Conveniens* Supports Dismissal of this Action................... 21

IV.     CONCLUSION ............................................................................................. 25

{B1370426.1}

## <u>TABLE OF AUTHORITIES</u>

Cases

Alto Mar Girassol v. Lumbermens Mutual Casualty Co.,
  2005 WL 947126 (N.D.Ill. 2005) .......................................................................... 17

BPA Int'l, Inc. v. Kingdom of Sweden,
  281 F.Supp.2d 73, 85 (D.D.C. 2003) .................................................................... 23

Commissions Import Export S.A. v. Republic of Congo,
  916 F.Supp.2d 48, 54 (D.D.C. 2013) ...................................................................... 9

EDR Int'l S.A. v. YPF S.A.,
  676 F.Supp.2d 317, 319-20 (D.Del. 2009) ............................................................. 4

Flatow v. Islamic Republic of Iran,
  76 F.Supp.2d 28, 29 (D.D.C. 1999) ...................................................................... 11

Howsam v. Dean Witter Reynolds, Inc.,
  537 U.S. 79, 83-84 (2002) .................................................................................... 15

Ministry of Defense & Support for the Armed Forces of the Islamic Republic of Iran v.
Cubic Defense Systems, Inc.,
  665 F.3d 1091, 1100 (9th Cir. 2011) ................................................................... 14

Scherk v. Alberto-Culver Co.,
  417 U.S. 506 ........................................................................................................ 17

Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co. v.
Navimpex Centrala Navala,
  989 F.2d 572, 581 (2d Cir. 1993) ................................................................ 7, 8, 9, 10

U.S. ex rel. Miller v. Bill Harbert Intern. Const., 505 F.Supp.2d 1, 6 (D.D.C. 2007) ............... 5, 6

Statutes

9 U.S.C. § 207 ................................................................................. 3, 4, 5, 7, 8, 10, 11

## I.      PRELIMINARY STATEMENT

Defendant, The Czech Republic – Ministry of Health (the "Czech Republic"), respectfully submits this Reply Memorandum of Law ("Reply Brief") in support of its Motion to Dismiss Complaint of Plaintiff, Diag Human S.E. ("Diag Human") (Doc. No. 16).   For the reasons set forth herein, and in its Memorandum of Points and Authorities in Support of Motion to Dismiss Complaint (Doc. No. 17), the Czech Republic respectfully requests that the Court grant its Motion to Dismiss and dismiss Diag Human's Complaint to enforce the arbitration award.

## II.      BACKGROUND

In response to the Czech Republic's Motion to Dismiss, Diag Human focuses its efforts in tirelessly arguing that the Czech Republic has allegedly done everything nefarious in its power to prevent the Arbitration Award from being enforced in the Czech Republic.  To that end, Diag Human levels various accusations, both implicit and explicit, against the Czech Republic and raises a host of arguments and issues that are unsupported, scandalous, riddled with hearsay and wholly irrelevant or only tangentially related to the issues set forth in the Czech Republic's Motion to Dismiss.

In support of its Memorandum of Points and Authorities in Opposition (the "Opposition Brief") (Doc. No. 20), Diag Human submits the Declaration of Jan Kalvoda, Diag Human's legal counsel in the Czech Republic, and the Declaration of Jan Urban, a professor and author of a book regarding Diag Human's arbitration with the Czech Republic.  Through these declarations, Diag Human accuses the Czech Republic of engaging in high-level government corruption to undercut and avoid the arbitration process and intimidating Diag Human, its representatives and the arbitrators through the misuse of police services and criminal proceedings, among other

things.  However, these declarations, and Diag Human's briefing to the extent it draws from these declarations, are comprised of speculation, hearsay and arguments of little relevance to the chief issues involved in this enforcement action.  AS a consequence, and contemporaneously with the filing of this Reply Brief, the Czech Republic has moved to strike the Kalvoda and Urban Declarations.  Moreover, given the severity and significance of many of the accusations set forth therein, the Czech Republic is compelled to respond to these Declarations and does so in the Second Affidavit of Petr Horacek, which it submits as Exhibit Z.

As set forth in this Reply Brief and the Second Affidavit of Petr Horacek, Diag Human is absolutely wrong about whether its enforcement action is barred by the applicable statute of limitations and, alternatively, whether the arbitration award is final and binding on the parties. Accordingly, the Czech Republic respectfully submits that Diag Human's Complaint to enforce the arbitration award should be dismissed, along with its impermissible, unsubstantiated, irrelevant and scandalous accusations.

## III.    ARGUMENT

This Court should grant the Czech Republic's Motion to Dismiss and dismiss Diag Human's Complaint because, as set forth in detail in the Czech Republic's Memorandum of Points and Authorities in Support of Motion to Dismiss Complaint (Doc. No. 17), there are multiple grounds for declining or deferring enforcement of the Arbitration Award in this jurisdiction.  Primary among those grounds is the fact that Diag Human filed its Complaint outside of the three-year statute of limitations for seeking enforcement of arbitration awards under the New York Convention.  Alternatively, if this Court ultimately determines that the Complaint is not time-barred, then the Arbitration Award is not yet final and binding on the parties pursuant to the terms of the Arbitration Agreement.  Diag Human attempts to avoid the

validity of these arguments by trying to distinguish the case law interpreting the statute of limitations and by arguing that the Arbitration Award is not subject to review because, in Diag Human's view, it withdrew its application for review and the Czech Republic's application for review should be ignored under a legal argument pursuant to Czech law.   However, Diag Human's arguments are completely meritless and contrary to both Czech and U.S. law.

### A.   Diag Human's Complaint to Enforce the Arbitration Award is Barred by the Applicable Statute of Limitations

In response to the argument that the Complaint is barred by the three-year statute of limitations set forth in Section 207 of the New York Convention, Diag Human attacks the alleged "flawed logic" of this argument and also stresses the fact that the Czech Republic has always insisted that the Arbitration Award is not final and binding.  Diag Human's arguments are meritless.  At the outset, it is not the *Czech Republic's* "logic" that Diag Human is attacking with respect to the statute of limitations argument.  Rather, Diag Human is attempting to challenge the logic of *federal courts*, including *this very Court*, which have interpreted and applied Section 207 of the New York Convention.   Additionally, it is important to note that the position taken by Diag Human in its Opposition Brief is in direct contravention to the position taken by Diag Human on this issue in its opposition brief filed in the first enforcement action in 2011 (Civil Action No. 1:11-cv-01360), which is submitted as Czech Republic Exhibit Y.  In this regard, on page 29 of its opposition brief from 2011, Diag Human argued and admitted as follows:

> The Court should note that, while the Czech Republic seeks dismissal under Article VI, a grant of that request would be improper here under any circumstances.  ***The FAA requires that a proceeding to confirm an award be commenced within three years after the award is "made" (9 U.S.C. § 207), which has been held to mean rendered.  See EDR Int'l S.A. v. YPF S.A., 676 F.Supp.2d 317, 319-20 (D.Del. 2009).  Thus, were Diag finally able to dispose of proceedings in the Czech Republic, it might well be precluded from enforcing the Award on limitations grounds.  Id. at 320.***

(*See* Exhibit Y, at p. 29, n. 9 (emphasis added).)   It is difficult to understand why the Czech Republic's position on the statute of limitations is "obviously flawed" when Diag Human itself took and admitted the same position in a previously-filed brief to this Court.

Accordingly, Diag Human's entire argument on this issue should be disregarded.   Diag Human clearly agreed with the reasoning of the Czech Republic back in 2011.   Its present argument to the contrary is disingenuous.   Diag Human has simply changed its position out of necessity because its newly-filed enforcement action herein is now time-barred.   Diag Human should not be heard to complain about the statute of limitations when it was well aware of the limitations issue before it chose to voluntarily dismiss that same action it filed in 2011.

Next, while it is true that the Czech Republic has consistently argued that the Arbitration Award is not final and binding, that does not make its statute of limitations argument improper or contradictory.   Parties are free to plead and assert arguments *in the alternative*, which is what the Czech Republic has done in its Motion to Dismiss and Brief in Support.   Furthermore, the Czech Republic is only now raising the statute of limitations argument because the defense is only now applicable and ripe for assertion.   The Czech Republic did not raise the statute of limitations defense in the action previously filed by Diag Human because that action was timely when filed originally in July 2011.

Moving to the main thrust of the statute argument, the Czech Republic asserts that the plain language of Section 207 and the case law interpreting and applying that section clearly required Diag Human to file an action to enforce the Arbitration Award within three years of when it was rendered.   Even if an arbitration award is not yet final and binding on the parties because appeal proceedings continue in the forum, a party seeking to enforce the award in the United States <u>must</u> file an enforcement action within three years to preserve its rights.   Despite

Diag Human's pleas that this reasoning is "odd" and "obviously flawed," this is not an obscure concept, and is clearly the undisputed law with respect to Section 207.  Just like any other action subject to a statute of limitations, a party wishing to raise the claim must file that action within the statutorily designated timeframe or forever lose its right to bring the claim.  If enforcement actions were not subject to a statute of limitations, then defendants would be subjected to enforcement actions in signatory countries many years after the award was originally rendered.  This situation would defeat the underlying purpose of statutes of limitation.

In this regard, "statutes of limitations 'represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that "the right to be free of stale claims in time comes to prevail over the right to prosecute them." *U.S. ex rel. Miller v. Bill Harbert Intern. Const.*, 505 F.Supp.2d 1, 6 (D.D.C. 2007) (citations omitted).  "Statutes of limitations are designed to 'afford[] plaintiffs what the legislature deems a reasonable time to present their claims [while simultaneously] protecting defendants and the courts from having to deal with cases in which the search for the truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise.'" *Id.* (citations omitted).  "Accordingly, courts 'are not free to construe [a statute of limitations] so as to defeat its obvious purpose, *which is to encourage the prompt presentation of claims*.'" *Id.* (citation omitted) (emphasis in original).

Section 207 reads: "***Within three years after an arbitral award*** falling under the Convention ***is made***, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration."  9 U.S.C. § 207 (emphasis added).  Diag Human attempts to import its own meaning to the term "made" in Section 207 of the New York Convention, despite judicial decisions to the contrary.

In this regard, Diag Human argues that the term "made" as used in that section "could only mean when the award becomes 'binding' under the Convention, otherwise the absurd result urged by the Czech Republic would be reached." (Doc. No. 20, at p. 22.)  Diag Human offers no case law supporting its interpretation of Section 207.  Furthermore, as discussed more fully below and in the Czech Republic's Brief in Support of its Motion to Dismiss, Diag Human's interpretation is belied by the case law, including the law of this Court, and the underlying purpose of a statute of limitations.

Diag Human's interpretation of the word "made," cuts against the underlying purpose of a statute of limitations, and goes directly against this Court's directive that "courts 'are not free to construe [a statute of limitations] so as to defeat its obvious purpose, *which is to encourage the prompt presentation of claims.*'"  *U.S. ex rel. Miller*, 505 F.Supp.2d at 6 (emphasis in original). Despite Diag Human's unsupported attacks on the "logic" of the statute of limitations argument, the notion of an action being time-barred is not a novel concept.

Moreover, Diag Human completely ignores the fact that it could have prevented its current predicament by having sought from this Court a stay of its prior action filed in July 2011, pending the outcome of the arbitration review proceedings in the Czech Republic and once the Arbitration Award actually became final and binding.   Instead, however, Diag Human voluntarily dismissed its July 2011 action outright.  Diag Human now wants a second bite at the apple, despite the fact that the statute of limitations has run.

Lastly, Diag Human's attempts at distinguishing the case law cited by the Czech Republic are unavailing.  First and foremost, with respect to the *Seetransport* case, Diag Human tries to limit the Court's holding by arguing that the Second Circuit only intended its conclusion to be applied in cases where the arbitration award was not subject to any further *arbitral* review

proceedings.  However, a review of the opinion does not lend any credence to Diag Human's limited interpretation.  Notably, the arbitration award at issue in *Seetransport* was subject to further review proceedings in the Court of Appeals of Paris—review proceedings "that could have vacated the award."  *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co. v. Navimpex Centrala Navala*, 989 F.2d 572, 581 (2d Cir. 1993).  Despite the posture of the pending arbitration proceedings in the foreign jurisdiction, the Second Circuit nevertheless held that the plaintiff was required to file suit in the United States District Court within three years from when the award was originally decided by the arbitrators.  *Id.*  Similar to Diag Human's position in this action, the *Seetransport* plaintiff challenged the logic of filing an action before the award becomes final and binding:

> Seetransport asserted that under Navimpex's interpretation, Seetransport would have been put to the task of filing suit in the United States district court to enforce the arbitral award, even though an appeal was pending in the Court of Appeals of Paris that could have vacated the award, and even though Navimpex probably would have moved in the district court for a stay of the judgment pending the determination of the French judicial proceedings.

*Id.*

Importantly, the Second Circuit responded to the plaintiff's argument as follows:  "***Nevertheless, it does appear that, by the very terms of the Convention, the course of action described by Seetransport was precisely the one envisioned by the Contracting States***."  *Id.* (emphasis added).  Clearly, in an effort to abide by the underlying purpose of the statute of limitations and legislative intent, the Second Circuit concluded:  "Thus, were we to follow the route suggested by *Seetransport*, and hold that the statute of limitations commences to run when an arbitral award becomes final according to the law that governs the contract that is the subject of the arbitration proceedings, we would be rewriting § 207 to read: '[w]ithin three years after an

arbitral award falling under the Convention is made *or becomes final*.'   Such a revision would make § 207's deferral provision superfluous." *Id.* (emphasis in original).

Accordingly, Diag Human's attempt to distinguish *Seetransport* fails miserably because the Second Circuit unequivocally held that the finality or binding nature of the arbitration award has no impact on when the statute of limitations starts to run.   In fact, that is the entire point of the Second Circuit's opinion in *Seetransport*—to clarify and answer whether the purported finality or binding nature of the arbitration award has any bearing on the statute of limitations set forth in Section 207.   The answer is clearly no.

Diag Human's attempt to distinguish the other cases cited by the Czech Republic on this issue are likewise misplaced.   In trying to distinguish this Court's holding in *Commissions Import*, Diag Human places great emphasis on the fact that the opinion does not indicate whether the plaintiff sought further arbitral review after the award was made in 2000.   (*See* Doc. No. 20, at p. 24.)   That, however, is irrelevant, as *Seetransport* unequivocally established that the final and binding nature of the arbitration award has no effect on the running of the statute of limitations.   In *Commissions Import*, this Court recognized that Congress chose to impose a three-year statute of limitations in the interest of promoting finality of foreign arbitration claims. *Commissions Import Export S.A. v. Republic of Congo*, 916 F.Supp.2d 48, 54 (D.D.C. 2013). Interestingly, this Court noted that "the three-year period Congress settled on is far shorter than that imposed by many other contracting states, some of which have no limitation period whatsoever." *Id.*   Therefore, although Diag Human is time-barred from bringing its enforcement action in the United States, dismissal of its Complaint will not forever foreclose Diag Human from enforcing the Arbitration Award.   Quite the contrary, Diag Human can timely file its

enforcement action in other signatory states (which it has already done) where the statute of limitations for enforcement actions is longer or even non-existent.

With respect to the *EDF Int'l S.A. v. YPF S.A.*, 676 F.Supp.2d 317 (D.Del. 2009), cited by the Czech Republic, Diag Human tries to distinguish this case by asserting that *EDF Int'l* is different because it involved a "binding arbitral award" not subject to further arbitral review. (Doc. No. 20, at p. 24.)  Despite Diag Human's summary dismissal of this decision, however, *EDF Int'l* is directly on point and actually adopts the holding and rationale set forth in *Seetransport*.  Furthermore, and more importantly, Diag Human downplays the fact that the situation presented in *EDF Int'l* is strikingly similar to the situation presented in the instant action.

In *EDF Int'l*, the plaintiff filed a timely action to enforce an arbitration award, but appellate proceedings in the foreign jurisdiction were pending.  The Court initially decided to exercise its discretion under Article V(1)(e) of the New York Convention to refuse to confirm the award, and it dismissed the action.  *Id.* at 319.  Upon hearing a motion for reconsideration and relying on *Seetransport*, the Court ultimately concluded that a stay of the action was appropriate.  *Id.* at 320.  When it moved for reconsideration, the plaintiff argued that "the Court's decision to dismiss this action outright may, if the Argentinian appeals process takes longer than three years, preclude it from enforcing the arbitration award."  *Id.* at 319.  "The Court agree[d] that the Second Circuit decision in *Seetransport* strongly suggests that [the plaintiff] may be barred from enforcing the arbitration award if the Argentinean appeals process takes longer than three years."  *Id.* at 320.  The Court also noted that the defendant had suggested that, as an alternative to dismissing the action outright, the Court could stay confirmation of the arbitral award pending resolution of the Argentinean appeals proceedings.  *Id.*

The *EDF Int'l* decision is of great importance to the instant action, and should be given particular consideration by this Court when making its determination on the pending Motion to Dismiss.  As indicated above, if Diag Human had simply continued with its prior timely-filed action, then either of the parties could have sought a stay from this Court, as noted in *EDF Int'l*, *Seetransport* and Article V of the New York Convention.  A stay would have allowed the pending review proceedings in the Czech Republic to come to a resolution and the Arbitration Award to become final.  A request for a stay would also have prevented the statute of limitations issue encountered by Diag Human presently.  Unfortunately for Diag Human, however, it voluntarily dismissed that action, despite knowing about the statute of limitations and despite knowing that its voluntary dismissal would bar a subsequent action filed outside the three year statute.[1].

Lastly, Diag Human's arguments to distinguish *Flatow* likewise fall flat.  Again, Diag Human stresses the fact that the Court's opinion in *Flatow* does not indicate whether the arbitration award was subject to further arbitral review or was otherwise not final and binding on the parties.  (Docket No. 20, at p. 25.)  As set forth above, it is clear that the purported finality and binding nature of an arbitration award has no bearing on the running of the statute of limitations—the statute commences when the arbitrators issue their award.  By focusing on the finality aspect of the arbitration award, Diag Human ignores the unequivocal language of *Flatow*: "**Notably, the Arbitration Act requires parties to confirm arbitration awards within three years of their <u>issuance</u>**."  *Flatow v. Islamic Republic of Iran*, 76 F.Supp.2d 28, 29 (D.D.C. 1999) (emphasis added).

---

[1] Additionally, Diag Human's attempts at distinguishing the *EDF Int'l* case should be quickly and easily dismissed by this Court.  As discussed in detail above, <u>Diag Human itself</u> cited to *EDF Int'l* in an opposition brief filed in the first enforcement action.  In citing to *EDF Int'l*, Diag Human argued that Section 207 requires a party to commence an enforcement action within three years after the award has been rendered.  (*See* Exhibit Y, p. 29, n. 9.)

In sum, the position regarding when the statute of limitations begins to run on an enforcement action under the New York Convention is not simply "the Czech Republic's view" on the issue—it is the view of *this Court* and other federal courts that have interpreted and applied Section 207.  Therefore, regardless of the fact that Diag Human thinks this position is "odd" or "flawed" or "absurd," the fact remains that this is the position taken by federal courts and the position that is supported by the plain and unequivocal language of Section 207. Accordingly, Diag Human's instant enforcement action is time-barred and should be dismissed.

**B.      Alternatively, the Arbitration Award Is Not Yet Final and Binding**

In support of its assertion that the Arbitration Award is not yet final or binding on the parties, the Czech Republic directed this Court's attention to the fact that the arbitration review proceedings in the Czech Republic are still ongoing, as the Arbitration Award has been appealed by both parties and an arbitration review panel has been constituted to hear the appeal.  Diag Human argues that the Czech Republic is wrong because "even if the award is not yet enforceable in the Czech Republic, that is irrelevant to whether the award may be confirmed and enforced in this Court under the Convention."  (Doc. No. 20, at p. 27.)  Diag Human further argues that the New York Convention "requires only that an arbitral award be 'binding' in order for the award to be enforceable."  (*Id.*)

Similar to its argument in opposition to the statute of limitations defense, Diag Human tries to circumvent the obvious—namely, that the Czech Republic submitted a timely request for review of the Arbitration Award—and instead showers this Court with lengthy arguments that avoid, but do not address, the central issue.  Notably, Diag Human does not and, in fact, cannot dispute the fact that an arbitration review panel has been constituted in the Czech Republic in order to hear the appeals from the issuance of the Arbitration Award.  In light of this fact alone,

it is confounding that Diag Human still vehemently argues that the arbitration proceedings have concluded and the Arbitration Award is final.

Moreover, the decisions cited by Diag Human are inapposite because they stand only for the proposition that a party does not have to first enforce the award in the country where the arbitration panel sits before bringing an action in a different signatory country.  However, the Arbitration Award at issue herein is not final or binding because it is still subject to further arbitral review, not because Diag Human failed to enforce it in the Czech Republic or seek leave there to enforce the Arbitration Award in the United States.  In this regard, the plain language of the Arbitration Award establishes that it is not yet final and binding under the terms of the Arbitration Agreement, Czech Law and the New York Convention.  More specifically, the Arbitration Award contains the following language on page 2:

> **The Arbitral Award is final and binding**, both parties shall take note that the final effect as of a judicial decision and in accordance with § 28 para 2 of Act No. 216/1994 Coll. on arbitration and the enforcement of arbitral awards, as amended, and article III of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of 10 May 1958 will be judicially enforceable, **subject to the possibility of implementation of the arbitration clause contained in the arbitration agreement of 18 September 1996, such that the award will be reviewed by arbitration under § 27 of the law**.  A request for reconsideration of the arbitral award may be submitted to the other party within 30 days from the date on which the requesting party receives the arbitral award.

*See* Complaint, Exhibit A (emphasis added).

As set forth in detail in the Affidavit of Petr Horacek, submitted in further support of the Czech Republic's Motion to Dismiss, and as Diag Human admits, both parties submitted applications for review, triggering the review proceedings contemplated in the Arbitration Agreement. (Horacek Aff., Doc. No. 16-1.)

Pursuant to the unequivocal language of the Arbitration Award itself, because the Czech Republic exercised its right under the Arbitration Agreement to have the Arbitration Award

reviewed, the Arbitration Award is <u>not</u> "final and binding."  The finality and/or binding nature of the Arbitration Award was expressly subject to any requests for review.  Simply because Diag Human believes that the requests for review are ineffective, does not alter the reality that the requests for review were timely submitted, that an arbitration review panel has since been formed, and that the requests for review will be heard in due course.

Therefore, it is difficult to understand how the Czech Republic continues to argue that the Arbitration Award is binding, especially when the case law cited by Diag Human in its Opposition Brief does not support its argument.  In this regard, the case law holds that "an arbitration award becomes binding *when 'no further recourse may be had to another arbitral tribunal (that is, an appeals tribunal).'"  Ministry of Defense & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Defense Systems, Inc.*, 665 F.3d 1091, 1100 (9th Cir. 2011) (citation omitted) (emphasis added).  Here, the Arbitration Award specifically calls for further recourse to an arbitration appeals tribunal and, as can be gleaned from the current state of affairs in the Czech Republic, the parties' resort to the arbitration review panel is about to come to fruition.

In an implicit acknowledgement that the Arbitration Award, by its terms, is not yet final and binding, Diag Human presents its belief that the applications for review submitted by the parties should be ignored and the Arbitration Award deemed final.  All of its arguments in support of enforcement set forth in its Opposition Brief flow from Diag Human's claim that the applications for review are not applicable or effective.  *No arbitrator or Czech court has yet addressed these arguments, let alone resolved them in favor of Diag Human*.

Moreover, the proper forum for resolution of these disputed issues is the arbitration review proceeding.  This is confirmed by the expert legal opinion of Prof. JUDr. Ales Gerloch,

CSc., which was submitted as Exhibit Q in support of the Czech Republic's Motion to Dismiss. Professor Gerloch, Dean of the law faculty of Charles University and Head of the Constitutional Law and Theory of Law and Legal Doctrines departments, states in his opinion that issues regarding the effectiveness of the applications for review submitted by the parties should be decided by the arbitration review panel.  (*See* Opinion of Prof. JUDr. Ales Gerloch, CSc., Doc. No. 16-17, pp. 8-10.)  This is the law of the United States as well.  *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002) ("Procedural questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator to decide.  So, too, the presumption is that the arbitrator should decide allegation[s] of waiver, delay, or a like defense to arbitrability.") (citations and internal quotations omitted).  Diag Human should not be permitted to unilaterally prevent the arbitration review panel from deciding these issues by preemptively initiating enforcement proceedings in a country with no connection to the ongoing arbitration.  Such fundamental questions should and must be heard and decided in the forum that has more familiarity and experience with Czech law and that to which the parties agreed — the arbitration review panel sitting in the Czech Republic.

Although it is not necessary or proper for the Court to address the actual merits of Diag Human's arguments in regard to the validity or effectiveness of the requests for review, the Czech Republic submits that Diag Human is wrong on those arguments as well.  In support of its argument that the Czech Republic's application for review is not effective and that Diag Human can unilaterally withdraw its request for review, Diag Human relies on the Declaration of Jan Kalvoda, its counsel in proceedings in the Czech Republic.  In essence, Diag Human's position is that, despite the acknowledged triggering of the agreed-upon review procedure, the Arbitration Award is nevertheless final under the law as interpreted unilaterally by Diag Human.

As set forth in the Second Affidavit of Petr Horacek[2] and in the supplemental opinion of Prof. JUDr. Ales Gerloch, CSc.[3], submitted as Exhibits Z and II, respectively, the Czech Republic's application for review was effective and triggered review of the Arbitration Award. (Second Horacek Aff., ¶ 47; Second Gerloch Opinion, ¶¶ 44-59.)  Even assuming, *arguendo*, that there was some defect with the application for review, Mr. Horacek and Professor Gerloch point out that it would be a procedural one that can be corrected by the arbitration review panel. (Horacek Aff., ¶¶ 75-82; Second Gerloch Opinion, ¶¶ 58-59.)  Professor Gerloch also details why Diag Human's position on its purported withdrawal of its request for review is incorrect and why the arbitration review panel should be permitted to consider and, if appropriate, accept the withdrawal.  (Second Gerloch Opinion, ¶¶ 35-42.)  The Czech Republic respectfully refers the Court to each of these supporting documents on the issue of the validity and effect of the parties' applications for review.

Diag Human also seeks to trivialize the ongoing proceedings in the Czech Republic by mischaracterizing them as an attempt to "stack the deck" in favor of the Czech Republic.  (Doc. No. 20, at p. 31.)  This suggestion is not supported by the record.  As set forth in Paragraph 47 of the Second Affidavit of Petr Horacek, the Czech Republic has not submitted its application for review for purposes of obstruction, but instead to obtain review of its legitimate complaints regarding the Arbitration Award, and it is entitled to do so under the Arbitration Agreement. (Second Horacek Aff., ¶ 47.)  Moreover, Diag Human's general suggestions throughout its Opposition Brief—that the Czech Republic is attempting to skirt any obligations and ensure that Diag Human never recovers any money—ring hollow in light of the history of these proceedings.

---

[2] The Second Affidavit of Petr Horacek, Exhibit Z to the Czech Republic's Motion to Dismiss, will be cited as "Second Horacek Aff.."
[3] The supplemental opinion of Prof. Gerloch, Exhibit II to the Czech Republic's Motion to Dismiss, will be cited as "Second Gerloch Opinion."

In this regard, and as set forth in the Second Affidavit of Petr Horacek, when the Partial Award in favor of Diag Human was issued in 2002 and thereafter became final and binding following the arbitration review procedure under the Arbitration Agreement, the Czech Republic paid the amount of the award to Diag Human.  (Second Horacek Aff., ¶¶ 94-95.)  It is patently absurd for Diag Human to argue that the Czech Republic is now suddenly attempting to circumvent its obligations, when Czech Republic has in fact fully complied with them throughout the prior course of this arbitration proceeding, including the issuance of the interim awards and reviews.

Diag Human also invokes the "liberalize[d] procedures for enforcing foreign arbitral awards" under the New York Convention, but there is simply no indication of any intent in the New York Convention to undercut arbitration procedures that the parties themselves agreed upon.  To the contrary, the New York Convention's purpose was to "encourage the recognition and enforcement of commercial arbitration agreements."  *See TermoRio S.A. E.S.P.*, 487 F.3d at 933 (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, n. 15 (1974)).  Diag Human now seeks to avoid the very terms of the Arbitration Agreement calling for review proceedings because it finds the agreed-upon procedures not to its liking.   Nothing in the New York Convention supports this position.

Perhaps recognizing the lack of any authority to support its position, Diag Human then contends that district courts should simply enforce foreign arbitral awards without regard to whether the award is capable of enforcement in the rendering jurisdiction.  (Doc. No. 20, at pp. 32-33.)  In support of this position, Diag Human relies upon an unpublished decision in *Alto Mar Girassol v. Lumbermens Mutual Casualty Co.*, 2005 WL 947126 (N.D.Ill. 2005).  However, *Alto Mar* is distinguishable in several critical ways.  In that case, the arbitration panel indicated that the arbitration award was "immediately enforceable," while in this case, the enforceability of the

Arbitration Award is expressly subject to further review proceedings if requested by either party. *Alto Mar*, 2005 WL at *1. In *Alto Mar*, Lumbermens, the party against whom the arbitration award was issued, requested that a French court set aside the arbitration award, whereas, here, the Czech Republic and Diag Human both requested review of the Arbitration Award pursuant to a review procedure that is permitted by the Arbitration Agreement itself. *Id.* at *2-3. Finally, it is noteworthy that, even in *Alto Mar*, the Court stayed the enforcement proceedings pending the outcome of the French court proceedings in the interest of international comity and to avoid inconsistent results and unnecessary litigation. *Id.* at *4.

### C.     Alternatively, the Court Should, at a Minimum, Adjourn Enforcement of the Arbitration Award

Although Diag Human's enforcement action is time-barred and should be dismissed, and, alternatively, although the Arbitration Award is not yet final or binding on the parties by its terms, and should be dismissed, the Court should alternatively adjourn this enforcement action. The Czech Republic has adequately addressed the factors relevant to a determination as to whether adjournment of the enforcement proceedings is appropriate in its Memorandum of Points and Authorities in Support of Motion to Dismiss Complaint. As such, the Czech Republic responds only to certain arguments raised by Diag Human relating to this analysis.

Relying upon hearsay evidence offered in the Declaration of Jan Kalvoda, Diag Human contends that the arbitration review proceedings are stalled solely because of the Czech Republic. (Doc. No. 20, at pp. 34-35.) This assertion is unfounded. The Czech Republic has actually sought to advance the arbitration review proceedings through the appointment of arbitrators pursuant to Czech law, but it has been Diag Human that has fought and appealed issues relating to the appointment proceedings at every turn. (Second Horacek Aff., ¶¶ 38-47.) Diag Human focuses on the time to complete the appeals proceedings, but ignores the fact that

an appeal was also filed by Diag Human.  Furthermore, although Diag Human argues that the Czech Republic has "hindered, interfered with, and attempted to undermine the process," the Czech Republic has proceeded in accordance with the Arbitration Agreement and Czech law in seeking to form the arbitration review panel.  (Second Horacek Aff., ¶¶ 38-47.)

With respect to the balance of hardships, Diag Human contends that the Court should enforce the Arbitration Award because it is its only asset.  However, this point simply emphasizes why enforcement should be adjourned.  If the Court enforces the Arbitration Award and Diag Human executes on Czech assets in the United States, then the Czech Republic will have little hope of ever recovering those assets from the shell company of Diag Human if the Arbitration Award is ultimately reversed or modified in the arbitration review proceedings.  Thus, enforcement now would raise issues of international comity due to competing proceedings, and it would effectively deny the Czech Republic the benefit of the review procedure to which the parties originally agreed.

These factors counsel in favor of allowing the proceedings in the Czech Republic to conclude prior to any enforcement proceedings.  Accordingly, in the event that the Court decides not to dismiss this action for the other reasons discussed above, then the Court should, at a minimum, adjourn enforcement of the Arbitration Award.

### D.       Enforcement of the Arbitration Award At This <u>Time Would Contravene the Arbitration Agreement</u>

The Czech Republic also seeks dismissal of Diag Human's Complaint on the basis that enforcement of the Arbitration Agreement now would be inconsistent with the agreement of the parties.  Diag Human responds that the Arbitration Agreement does not state that review is required, but rather states that the award will be reviewed if an application for review has been submitted.  The Czech Republic did not misread the Arbitration Agreement.  In the instant case,

arbitral review *is* required.  The procedure advocated by the Czech Republic—and, in fact, the one that to which the parties agreed—is straight forward.  <u>Both</u> parties submitted applications for review, thereby triggering the review process.  Diag Human contends that it withdrew its request and that the Czech Republic's request is not effective.  However, it is clear that the arbitration review panel, which has now been formed, must be allowed to decide these issues, as Czech and U.S. law indicate is appropriate.  If the review panel ultimately decides in favor of Diag Human, then the Arbitration Award will be final at that time.  If the review panel decides in favor of the Czech Republic on these issues, then it will proceed to review the Arbitration Award and issue a determination.  The fact remains that the requests for review were submitted and the review arbitrators have been empaneled.  Therefore, the Czech Republic has sufficiently met its burden of establishing why the Arbitration Award is not yet final and binding.

###### E.   <u>Enforcement of the Arbitration Award Is Contrary to U.S. Public Policy</u>

Diag Human offers no real argument as to how enforcement of the Arbitration Award is not contrary to the public policy of the United States.  In fact, Diag Human concedes that the United States has a strong public policy in favor of arbitration.  Despite this concession, Diag Human is attempting through this action to usurp from the Czech arbitration review panel issues that should be appropriately decided by that body, and to avoid the arbitration review process to which the parties agreed.  Diag Human's position is, therefore, contrary to the important U.S. public policy of enforcing arbitration agreements.  The Court should decline to enforce the Arbitration Award and dismiss Diag Human's Complaint on this basis.

**F.    The Arbitration Award Did Not Arise**
      **Out of a Commercial Legal Relationship**

While Diag Human argues that the Czech Republic focuses on how the case *could have been analyzed* rather than how it *was analyzed*, Diag Human's focus is misplaced. As set forth in the Czech Republic's Memorandum of Points and Authorities in Support of Motion to Dismiss Complaint, the issue of whether an arbitration award arises out of a commercial legal relationship, such that it may be enforced in the United States under the New York Convention, is to be analyzed under U.S. law. However, in its response, Diag Human does nothing to establish that the Arbitration Award arose out of a commercial legal relationship *under U.S. law*. Diag Human cites no U.S. law and instead simply argues how the Arbitration Award was analyzed under Czech law. This is insufficient to defeat dismissal.

**G.    The SPEECH Act Applies to and Bars**
      **Enforcement of the Arbitration Award**

Diag Human first asserts that the Czech Republic's SPEECH Act argument fails because it is a misguided attempt to recast Diag Human's claims into defamation claims. This conclusory assertion fails for the same reasons that Diag Human's assertion regarding the requisite commercial legal relationship fails, and those reasons will not be unnecessarily repeated here.

Diag Human further argues that the SPEECH Act is inapplicable to this "private foreign arbitral award." Diag Human concedes that the definition of a "foreign court" under the SPEECH Act would include an arbitration tribunal. However, Diag Human then argues that the arbitration panel is not covered by the definition because it is not "of a foreign country" since the panel members did not act in any "official Czech governmental capacity." Diag Human cites no case law in support of its interpretation of the definition of a "foreign court." Therefore, the Czech Republic respectfully submits that this Court should give this statutory definition its plain

and ordinary meaning.  The plain and ordinary meaning of "a court, administrative body, or other tribunal *of a foreign country*" is a court, administrative body, or tribunal sitting in or located in a foreign country.  As Diag Human notes, the arbitration panel was composed of Czech citizens, sat in the Czech Republic, and undertook to arbitrate a dispute pursuant to an agreement made in the Czech Republic under Czech law.  Applying the plain and ordinary meaning of the statutory definition of a "foreign court," the SPEECH Act would apply in this case.  Because Diag Human failed to comply with the requirements of the SPEECH Act, this Court should dismiss its Complaint on this basis.

### H.      The Doctrine of *Forum Non Conveniens* Supports Dismissal of this Action

Contrary to Diag Human's contentions, the Czech Republic is a more appropriate forum for resolution of the issues relating to review and finality of the Arbitration Award and, if Diag Human proves successful on those issues, the ultimate enforcement of the Arbitration Award.

First, Diag Human's claim that there is no evidence of forum shopping in the instant case is contrary to the facts.  In reality, Diag Human's strategy appears to be one of finding a jurisdiction that is willing to enforce the Arbitration Award—despite its non-final and non-binding nature—before it is ever subjected to review in accordance with the Arbitration Agreement.  As admitted in Diag Human's Opposition Brief, it has commenced proceedings in Austria, France, Luxembourg, Switzerland, the United Kingdom and the United States.  (Doc. No. 20, at p. 19.)  <u>Notably, Austria, France and Switzerland have already declined to enforce the Arbitration Award, determining that it is not yet binding under the laws of their jurisdictions and/or under the New York Convention.</u>  (*Id.*)  Although no jurisdiction has yet enforced the Arbitration Award, these facts clearly indicate forum shopping on Diag Human's part.  Because Diag Human is continuously shopping for a forum to enforce its non-final Arbitration Award,

Diag Human's choice of forum should not be entitled to any deference.  *See BPA Int'l, Inc. v. Kingdom of Sweden*, 281 F.Supp.2d 73, 85 (D.D.C. 2003).

Diag Human further contends that because this enforcement action is a "summary proceeding that merely makes what is already a final arbitration award a judgment of the court," the notion of forum shopping is practically nonexistent.  (Docket No. 20, at p. 42.)  This assertion is contradictory to Diag Human's argument regarding the finality of the Arbitration Award.  In this regard, Diag Human argues that this Court is tasked with assessing matters such as the validity of the Czech Republic's request for review, the effect of Diag Human's withdrawal of its request for review, and the final and binding nature of the Arbitration Award itself.  If the Court does not decide to dismiss this action on limitations grounds, then these questions surely will require the presentation of witness testimony and other evidence.  In that instance, the proceedings can hardly be considered "summary" in nature.

Second, in arguing that there is no adequate alternate forum, Diag Human asserts that it is trying to execute on Czech Republic assets located in the United States.  Diag Human does not identify the Czech Republic assets or provide any evidence that these assets exist.  Furthermore, this fact alone does not establish that there is no other adequate forum in which to bring its enforcement action.   Clearly, this is not the case considering that Diag Human has filed enforcement actions in five other countries.  Diag Human also argues that no viable alternate forum exists for the reasons set forth in the Declarations of Jan Kalvoda and Jan Urban.  However, these Declarations, which are comprised almost entirely of hearsay and speculative allegations, are woefully insufficient to constitute legitimate and admissible evidence, and they are also the subject of a motion to strike by the Czech Republic.  Moreover, the allegations

contained in these Declarations do not establish why there is no other adequate forum for the Czech Republic's action.

Third, Diag Human argues that the private and public interest factors do not weigh in favor of dismissal on *forum non conveniens* grounds.  With respect to the private interest factors, Diag Human again emphasizes its point that this is a "summary proceeding," so the private interest factors do not come into play here.  (Doc. No. 20, at p. 43.)  Again, Diag Human ignores the fact that the Arbitration Award is not yet final and binding on the parties.  To the extent this Court does not dismiss this action, there will exist, at a minimum, questions relating to the finality of the Arbitration Award that will need to be resolved.  Moreover, Diag Human claims that the Czech Republic has purportedly "manipulated" and "influenced" the arbitration process in connection with its application for review of the Arbitration Award.  (Doc. No. 20, at pp. 1, 14-18, and 43.)  While the Czech Republic vehemently denies these allegations, they are indicative of the thicket of factual and legal issues that would need to be resolved surrounding Diag Human's position that the Arbitration Award is final despite the parties' applications for review.  With these allegations in mind, it is apparent that private interest factors such as ease of access to proof, availability of compulsory process, and the convenience of the litigants are present in the instant action.

Lastly, with respect to the public interest factors, Diag Human argues that these factors are similarly minimal in enforcement proceedings.  (Doc. No. 20, at p. 43.)  Therefore, according to Diag Human, considerations such as court congestion, local interest in resolving disputes, and problems implicated by the application of foreign law do not come into play here.  Contrary to Diag Human's contentions, these factors are most certainly implicated by this enforcement proceeding.  Because of the issues surrounding the finality of the Arbitration Award, this case

will demand much more of the Court's time than Diag Human cares to admit.  Therefore, court congestion is undoubtedly a factor for this Court to consider when determining whether this Court is the most appropriate forum.  Moreover, the dispute underlying the arbitration, in its entirety, is local to the Czech Republic.  Other than being filed here, this matter has no connection to the District of Columbia or the United States in general.

Lastly, Diag Human has specifically called for this Court's application of foreign law in its Opposition Brief.  For example, Diag Human asks this Court to apply Czech legal provisions to determine whether the Czech Republic's application for review is legally effective.  Therefore, the issues raised in this enforcement proceeding are best resolved in the arbitral proceedings that are continuing in the Czech Republic.

Accordingly, the Czech Republic respectfully requests that this Court dismiss Diag Human's Complaint under the doctrine of *forum non conveniens*.

## IV.    <u>CONCLUSION</u>

For all of the foregoing reasons, and the reasons set forth in its Memorandum of Points and Authorities in Support of Motion to Dismiss Complaint, the Czech Republic respectfully requests that this Honorable Court grant its Motion to Dismiss, or otherwise adjourn these enforcement proceedings.

Respectfully submitted,

BABST, CALLAND,
CLEMENTS & ZOMNIR, P.C.

Date: December 20, 2013                By /s/ Dean A. Calland
                                                      Dean A. Calland
                                                      PA I.D. No. 33627
                                                      D.C. I.D. No. 289207
                                                      dcalland@babstcalland.com

By /s/ Leonard Fornella
        Leonard Fornella
        PA I.D. No. 27921
        lfornella@babstcalland.com

By /s/ Alana E. Fortna
        Alana E. Fortna
        PA I.D. No. 309691
        afortna@babstcalland.com

Two Gateway Center, 6th Floor
Pittsburgh, Pennsylvania 15222
Telephone: 412-394-5400

Attorneys for Defendant,
The Czech Republic-
Ministry of Health

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DIAG HUMAN S.E., | : | |
| Langstrasse 33, 4940 Vaduz, Principality | : | Civil Action No. 1:13-cv-0355 (ABJ) |
| of Liechenstein, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| THE CZECH REPUBLIC-MINISTRY | : | |
| OF HEALTH, | : | |
| Palackeno namesti, 4, Prague 2, 128, 01, | : | |
| Czech Republic, | : | |
| | : | |
| Defendant. | : | |

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing Reply Brief in Support of Defendant's Motion to Dismiss Complaint was served this 20th day of December, 2013, via the Court's ECF system upon the following:

James R. Schiffer
Hyman L. Schaffer
ALLEGAERT BERGER & VOGEL LLP
111 Broadway, 20th Floor
New York, New York 10006

BABST, CALLAND,
CLEMENTS & ZOMNIR, P.C.

By /s/ Alana E. Fortna

{B1370426.1}