UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
DIAG HUMAN S.E.,                    )
                                    )
            Plaintiff,              )
                                    )
    v.                              )   Civil Action No. 13-0355 (ABJ)
                                    )
CZECH REPUBLIC-MINISTRY             )
OF HEALTH,                          )
                                    )
            Defendant.              )
_____ )

## MEMORANDUM OPINION

Plaintiff Diag Human filed this case against the Czech Republic Ministry of Health, seeking to enforce an August 4, 2008 arbitration award related to the Ministry's alleged interference into a business relationship between plaintiff and a third party. Compl. ¶ 9 [Dkt. # 1]. Plaintiff seeks to confirm the award pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201–08 (2012), which codifies the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention"), June 10, 1958, 21 U.S.T. 2518, 330 U.N.T.S. 38. Compl. ¶ 1.

Defendant moved to dismiss the complaint on numerous grounds, including failure to state a claim under the New York Convention, the SPEECH Act of 2010, and *forum non conveniens*. *See* Def.'s Mot. to Dismiss Compl. [Dkt. # 16] at 2–3; Mem. of P. & A. in Supp. of Def.'s Mot. to Dismiss Compl. ("Def.'s Mem.") [Dkt. # 17] at 11–37. But the Court cannot address these grounds for dismissal because it has no subject matter jurisdiction in this case. Plaintiff cites the New York Convention and two exceptions to the Foreign Sovereign

1

Immunities Act ("FSIA") as its predicates for jurisdiction, Compl. ¶ 2, but after review, the Court finds that these provisions do not apply. Accordingly, the Court will dismiss this case *sua sponte* pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction.[1]

## BACKGROUND

Plaintiff Diag Human is a corporation organized under the laws of the Principality of Liechtenstein. Compl. ¶ 6. The Czech Republic is a foreign state, and the Ministry of Health for the Czech Republic is an agency of the Czech Republic. *Id.* ¶ 7; Def.'s Mem. at 2. In the 1980s, Diag Human developed a business model that allowed "currency-deficient Eastern Bloc states to acquire modern blood plasma technology." Pl.'s Mem. of P. & A. in Opp. to Def.'s Mot. to Dismiss Compl. ("Pl.'s Opp.") [Dkt. # 20] at 5. By 1989, it was one of the world's largest blood plasma suppliers with fourteen branches across Europe and in Canada and Singapore. *Id.* at 6. After the fall of the Berlin wall, plaintiff sought to enter the Eastern European market and began to develop its business in Czechoslovakia. Pl.'s Opp. at 6; Def.'s Mem. at 2.

One of plaintiff's principal commercial relationships was with the Danish company Novo Nordisk. Pl.'s Opp. at 6. Diag Human alleges that the Minister of Health for the Czech Republic sent a letter to Novo Nordisk regarding a public bidding tender for blood plasma products intended "to dissuade Novo Nordisk from continuing to do business with Diag." Pl.'s Opp. at 7; Def.'s Mem. at 29. It contends that the letter contained statements expressing concerns about Diag Human's business ethics and credibility, and that this letter caused Novo Nordisk to discontinue its business relationship with Diag Human. Pl.'s Opp. at 7; Def.'s Mem. at 29.

---

1   Defendant raised the inapplicability of the New York Convention in its motion to dismiss but predicated its motion on Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, rather than on Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Def.'s Mem. at 11.

Plaintiff asserts that the collapse of its business in the Czech Republic was a direct result of the termination of its relationship with Novo Nordisk.  Compl. ¶ 9; Pl.'s Opp. at 8; Def.'s Mem. at 2.

In 1996, Diag Human commenced an action against defendant in the Prague Commercial Court, claiming defamation and unfair competition, seeking damages including lost profits.  Pl.'s Opp. at 8, 38.  The parties agreed to arbitrate their dispute, and on September 18, 1996, they entered into a written arbitration agreement ("Arbitration Agreement").  Def.'s Mem. at 2; Pl.'s Opp. at 8; Arbitration Agreement, Ex. B to Compl. [Dkt. # 1-2] at 2–3.  The Arbitration Agreement sets forth procedures for the arbitration process, covering such matters as the selection and payment of the arbitrators and the location of the proceedings.  Arbitration Agreement at 2–3.

On August 4, 2008, the arbitration panel decided in favor of plaintiff, finding that the Czech Republic had caused commercial loss to Diag Human.  Pl.'s Opp. at 10; Def.'s Mem. at 3.  The final award ("Arbitration Award") directed defendant to pay Diag Human approximately $650 million in damages and interest.  Pl.'s Opp. at 10.  On August 22, 2008, defendant requested review of the award pursuant to Article V of the Arbitration Agreement.  Def.'s Mem. at 4; Pl.'s Opp. at 13.  A dispute concerning the composition of the arbitration review panel lasted for more than two years, but in 2013, it was finally resolved, and a review panel was convened.  Def.'s Mem. at 4–7; Pl.'s Opp. at 13–16.

While the dispute regarding the appointment of the arbitration review panel was pending in the Czech courts, plaintiff applied to this Court and to the courts of Austria, France, the United Kingdom, Luxembourg, and Switzerland for orders to enforce the Arbitration Award under the

New York Convention. Def.'s Mem. at 7; Pl.'s Opp. at 18–19. To date, it appears that no court has ordered enforcement of the award.[2]

## STANDARD OF REVIEW

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). In addition, "'[i]t is axiomatic that subject matter jurisdiction may not be waived, and that courts may raise the issue *sua sponte*.'" *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008), quoting *Athens Cmty. Hosp., Inc. v. Schweiker*, 686 F.2d 989, 992 (D.C. Cir. 1982). Indeed, a federal court must raise the issue because it is "forbidden – as a court of limited jurisdiction – from acting beyond [its] authority." *Id.*, citing *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003).

A district court must dismiss a complaint *sua sponte* when it is evident that the court lacks subject matter jurisdiction. Fed. R. Civ. Pro. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("when a federal court concludes that it lacks subject-matter

---

2      On October 29, 2012, the Court of Appeal in Vienna dismissed the claim filed in Austria because the Arbitration Award had not yet become final or enforceable under the New York Convention. Def.'s Mem. at 17. The Austria Supreme Court affirmed this decision on April 16, 2013. *Id.*; *see also* Ex. W to Def.'s Mot. [Dkt. # 16-23]. The Court of Appeal of the French Republic in Paris dismissed the claim to enforce the arbitration award because it found that the intent of the Arbitration Agreement was to deprive the parties of a final award if an application for review was made in the agreed upon timeframe. Def.'s Mem. at 17; *see also* Ex. V to Def.'s Mot. [Dkt. # 16-22]. On March 5, 2014, the French Supreme Court dismissed Diag Human's complaint. Def.'s Second Suppl. to Mot. to Dismiss Compl. [Dkt. # 34]. On June 24, 2013, the Tribunal of First Instance in Geneva, Switzerland declared the Arbitration Award unenforceable in Switzerland. *Id.*; *see also* Ex. X to Def.'s Mot. [Dkt. # 16-24].

jurisdiction, the court must dismiss the complaint in its entirety"); *see also Evans v. Suter*, No. 09-5242, 2010 WL 1632902, at *1 (D.C. Cir. Apr. 2, 2010); *Scholastic Entm't, Inc. v. Fox Entm't Grp., Inc.*, 336 F.3d 982, 985 (9th Cir. 2003); *Zernial v. United States*, 714 F.2d 431, 433–34 (5th Cir. 1983).

In evaluating whether a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) is appropriate, the Court treats the complaint's factual allegations as true and must grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004). Nevertheless, the Court need not accept factual inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006).

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002). Because "subject-matter jurisdiction is an 'Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

When considering dismissal for lack of jurisdiction, the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Rather, a court "may consider such materials outside the pleadings as it deems appropriate to resolve the question of whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C.

2000), citing *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## ANALYSIS

In determining whether a district court has subject matter jurisdiction in an action seeking to enforce a foreign arbitral award against a foreign sovereign, the D.C. Circuit has stated that two requirements must be satisfied. "First, there must be a basis upon which a court in the United States may enforce a foreign arbitral award; and second, [the foreign state] must not enjoy sovereign immunity from such an enforcement action." *Creighton Ltd. v. Gov't of State of Qatar*, 181 F.3d 118, 121 (D.C. Cir. 1999).

### I.    The New York Convention

Diag Human asserts that the arbitral award may be enforced under U.S. law pursuant to the New York Convention. Compl. ¶ 2. The New York Convention is a multilateral treaty providing for "the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought." New York Convention, art. I.1, June 10, 1958, 21 U.S.T. 2517. The Federal Arbitration Act, 9 U.S.C. §§ 201–08, which codifies the New York Convention into U.S. law, declares that "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." 9 U.S.C. § 203.

Section 202 of the FAA specifies the type of arbitration agreements and arbitral awards that are covered by the Convention:

> An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention.

9 U.S.C. § 202.  The Second Circuit utilizes a four-part test for when the Convention and FAA will apply:

> (1) there is a written agreement; (2) the writing provides for arbitration in the territory of a signatory of the convention; (3) the subject matter is commercial; and (4) the subject matter is not entirely domestic in scope.

*U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 146 (2d Cir. 2001); *see also Nanosolutions, LLC v. Prajza*, 793 F. Supp. 2d 46, 53 (D.D.C. 2011).  If each requirement is satisfied, then the agreement properly falls under the New York Convention.  *See Ledee v. Ceramiche Ragno*, 684 F.2d 184, 186–87 (1st Cir. 1982).

With respect to the third requirement – the commercial nature of the matter – courts have explained that the "subject matter of the *relationship between the parties* must be commercial." *JSC Surgutneftegaz v. President & Fellows of Harvard Coll.*, No. 04 Civ. 6069 (RCC), 2005 WL 1863676, at *2 (S.D.N.Y. Aug. 3, 2005) (emphasis added); *see also Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 339 (5th Cir. 2004); *Prograph Int'l Inc. v. Barhydt*, 928 F. Supp. 983, 988-89 (N.D. Cal. 1996).  The Fifth Circuit has interpreted a "commercial legal relationship" to mean "'a transaction, contract, or agreement described in section 2 of [Title 9]' – that is, either a maritime transaction or a contract involving commerce."  *Freudensprung*, 379 F.3d at 339.  Further, the FAA provides that:

> "commerce", as herein defined, means commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation . . . .

9 U.S.C. § 1.

Here, the first, second, and fourth requirements of the Second Circuit's test have been satisfied:  there is a written arbitration agreement, the arbitration occurred in a territory of a

signatory to the Convention, and the dispute is not entirely domestic in scope. *See* Arbitration Agreement, Ex. B to Compl. at 2–3. But the Czech Republic argued that the third requirement has not been met, and the claims undergoing arbitration were "traditional tort-based claims," not commercial ones. Def.'s Mem. at 28–31. Plaintiff argues that because the award relates to a "commercial dispute," and damages were awarded based on the claim of unfair economic competition, the award properly falls under the New York Convention. Pl.'s Opp. at 38–39.

The Court finds that a plain reading of the text of the treaty shows that the Convention does not apply: the arbitration and award did not "aris[e] out of a legal relationship . . . which is considered as commercial." 9 U.S.C. § 202. While the arbitration concerned defendant's alleged interference in plaintiff's commercial activities, and it sought compensation for economic harm, "the subject matter of the relationship between the parties" is not commercial, *JSC Surgutneftegaz*, 2005 WL 1863676, at *2, and the arbitration did not arise out of a commercial legal relationship. Before entering into the Arbitration Agreement, plaintiff and defendant did not have any legal relationship, let alone a commercial one. While Diag Human endeavored to extend its business into the Czech Republic, it did not have any contract, agreement, or transaction with the Czech Republic that could be considered to be commercial. Def.'s Mem. at 2.; Pl.'s Opp. at 6. Plaintiff's issue with the state arose when the Minister of Health allegedly interfered with plaintiff's business relationship with a private party – Novo Nordisk – by sending the letter that plaintiff claims was defamatory. Def.'s Mem. at 2; Pl.'s Opp. at 7. But there were no commercial dealings between plaintiff and the Czech Republic itself. Although this alleged interference had commercial consequences for the company, and the arbitration panel ultimately awarded damages to address commercial losses, there was no pre-existing legal relationship of commercial subject matter between Diag Human and the Czech Republic.

Plaintiff argues that because the award was rendered under numerous provisions of the Czech Commercial Code that the dispute itself is commercial in nature. Pl.'s Opp. at 38. But it is the nature of the relationship between the parties, not the nature of their dispute, that determines whether the third requirement is satisfied. *See, e.g., Freudensprung*, 379 F.3d at 339 (finding a commercial legal relationship where the plaintiff had a "Consultant's Agreement" with the defendant to provide professional services); *Bautista v. Star Cruises*, 396 F.3d 1289, 1300 (11th Cir. 2005) (finding that the arbitration provisions in a cruise ship crewmembers' employment contracts constitutes a "commercial legal relationship[] within the meaning of the Convention Act"). The fact that Diag Human initially brought the dispute before a commercial court in Prague or that the arbitration was predicated upon commercial laws of the Czech Republic does not transform the subject matter of the legal relationship between the parties. Because the subject matter of the relationship between Diag Human and the Czech Republic is not commercial, this action falls outside the scope of the New York Convention.

## II.   The Foreign Sovereign Immunities Act

The second requirement for establishing subject matter jurisdiction against an instrumentality of a foreign government is that the foreign state must not enjoy sovereign immunity. *See Creighton*, 181 F.3d at 121. "In the United States, there is only one way for a court to obtain jurisdiction over a foreign state and it is not a particularly generous one – the FSIA." *Peterson v. Royal Kingdom of Saudi Arabia*, 416 F.3d 83, 86 (D.C. Cir. 2005).

Under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602–11 (2012), "a foreign state is presumptively immune from the jurisdiction of United States courts," and "unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993); *see also* 28 U.S.C.

§§ 1604–05. The FSIA provides "the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *Nelson*, 507 U.S. at 355, quoting *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989) (internal quotation marks omitted). Because "subject matter jurisdiction in any such action depends on the existence of one of the specified exceptions . . . [a]t the threshold of every action in a District Court against a foreign state . . . the court must satisfy itself that one of the exceptions applies." *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493–94 (1983). In other words, U.S. courts have no power to hear a case brought against a foreign sovereign *unless* one of the exceptions applies.

A "foreign state" includes "a political subdivision of a foreign state or an agency or instrumentality of a foreign state." 28 U.S.C. § 1603(a). An "agency or instrumentality of a foreign state" is, in part, defined as "an organ of a foreign state or political subdivision thereof." *Id.* § 1603(b)(2). Here, the Ministry of Health is an agency of the foreign state of the Czech Republic, and therefore properly falls within the purview of the FSIA.

Plaintiff asserts that the Court has subject matter jurisdiction in this case, in part, pursuant to sections 1605(a)(1) and (6) of the FSIA. Compl. ¶ 2. Section 1605(a)(1) provides that a foreign state shall not be immune in any case in which the foreign state has explicitly or implicitly waived its immunity. *Id.* § 1605(a)(1). Section 1605(a)(6) provides an exception to foreign sovereign immunity for actions to confirm certain arbitration awards. *See id.* § 1605(a)(6). Although defendant does not challenge plaintiffs' stated basis for subject matter jurisdiction, the Court must satisfy itself that one of the exceptions to sovereign immunity applies, *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. at 493–94, and it finds that neither exception applies in this case.

### A. Section 1605(a)(1) Does Not Apply Because Defendant Has Not Explicitly or Implicitly Waived its Sovereign Immunity.

Under 28 U.S.C. § 1605(a)(1), "a state is not immune from suit in any case 'in which the foreign state has waived its immunity either explicitly or by implication.'" *World Wide Minerals, Ltd. v. Republic of Kaz.*, 296 F.3d 1154, 1161 (D.C. Cir. 2002). The U.S. Court of Appeals for the D.C. Circuit has found implied waivers in three circumstances: when "(1) a foreign state has agreed to arbitration in another country; (2) a foreign state has agreed that the law of a particular country governs a contract; or (3) a foreign state has filed a responsive pleading in an action without raising the defense of sovereign immunity."[3] *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 444 (D.C. Cir. 1990), citing S. Rep. No. 94-1310, at 18 (1976); H.R. Rep. No. 94-1487, at 18 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6617. These three examples demonstrate that the theory of implied waiver contains an intent requirement, and that a finding of "an implied waiver depends upon the foreign government's having at some point indicated its amenability to suit." *Princz v. Fed. Republic of Ger.*, 26 F.3d 1166, 1174 (D.C. Cir. 1994); *see also Frolova v. Union of Soviet Socialist Republics*, 761 F.2d 370, 377 (7th Cir. 1985) (noting that courts "rarely find that a nation has waived its sovereign immunity . . . without strong evidence that this is what the foreign state intended"). Further, "'[s]ince the FSIA became law, courts have been reluctant to stray beyond these [three]

---

[3] The D.C. Circuit has suggested that when the New York Convention is a basis for a claim, that a foreign state has implicitly waived its immunity if it is a signatory to the New York Convention. *See Creighton*, 181 F.3d at 123, quoting *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 578 (2d Cir. 1993) ("'[W]hen a country becomes a signatory to the Convention, by the very provisions of the Convention, the signatory state must have contemplated enforcement actions in other signatory states.'"). As discussed above, the New York Convention does not apply to this case and, accordingly, is not a basis for plaintiff's claims, so defendant's sovereign immunity defense is not implicitly waived on the ground that it is a signatory to the New York Convention.

11

examples when considering claims that a nation has implicitly waived its defense of sovereign immunity.'" *Princz*, 26 F.3d at 1174 (first edit in original), quoting *Frolova*, 761 F.2d at 377.

None of the bases to find an implied waiver exist in this case. First, defendant did not agree to arbitrate in another country; the Arbitration Agreement specified that arbitration would take place in a location determined by the arbitrators, which was the Czech Republic. Arbitration Agreement, Ex. B to Compl. at 2–3. Second, plaintiff and defendant did not have a contract that contained an arbitration clause or choice of law clause within it. *See* Pl.'s Opp. at 5–8; Def.'s Mem. at 1–2. Rather, a dispute arose between the parties, which they agreed to arbitrate. Pl.'s Opp. at 5–8; Def.'s Mem. at 1–2. Third, the Czech Republic has not filed the sort of "responsive pleading" that acts as a waiver by filing to contest jurisdiction on immunity grounds. *Ashraf-Hassan v. Embassy of Fr. in the U.S.*, No. 11-805 (JEB), 2014 WL 1493210, at *4 (D.D.C. Apr. 17, 2014); s*ee also Foremost–McKesson*, 905 F.2d at 443.

Although the Czech Republic has filed a motion to dismiss that does not address sovereign immunity, under the law of this Circuit, that filing does not waive sovereign immunity. The D.C. Circuit has held that implied waiver requires "a conscious decision [by the sovereign] to take part in the litigation and a failure to raise sovereign immunity despite the opportunity to do so." *Foremost-McKesson,* 905 F.2d at 444 (internal quotations omitted). Because a motion to dismiss is not a responsive pleading, "a motion to dismiss that omits mention of immunity will not provide sufficient proof of such a conscious decision." *Ashraf-Hassan*, 2014 WL 1493210, at *4; *see also Gutch v. Fed. Republic of Germany,* 444 F. Supp. 2d 1, 9 (D.D.C. 2006) (overruled on other grounds) ("A motion to dismiss, however, is not a responsive pleading for the purpose of this exception."); *Canadian Overseas Ores Ltd. v. Compania de Acero del Pacifico S.A.,* 727 F.2d 274, 277 (2d Cir. 1984) (stating that because the Federal Rules of Civil

---

Procedure explicitly distinguish between pleadings and motions, "[the court] refuse[s] to hold that the filing of a variety of motions, including a motion to dismiss, automatically waives the defense [of sovereign immunity]").

A recent case, *Ashraf-Hassan v. Embassy of France in the U.S.*, 2014 WL 1493210 (D.D.C. Apr. 17, 2014), illustrates the type of activity a foreign sovereign must undertake to implicitly waive sovereign immunity. There, the court held that the FSIA's implied waiver exception applied because the defendant had filed a motion to dismiss that specifically conceded the immunity question,[4] it had filed an answer and a motion for summary judgment, and it participated in the case through the end of discovery. *Id.* at *4–5. The court denied the motion to dismiss that the defendant filed on the eve of trial on immunity grounds, in part, because of the defendant's initial concession regarding immunity and its continued participation in the case. *Id.* at *5.

Here, the Czech Republic has filed a motion to dismiss that does not specifically disclaim immunity, and it has not filed a responsive pleading, such as an answer. Further, there have been no proceedings beyond briefs and other motions relating to defendant's motion to dismiss. Thus, the Court finds that defendant has not made a "conscious decision to take part in the litigation," *Foremost-McKesson,* 905 F.2d at 444, and defendant's mere failure to address immunity in its motion to dismiss does not suffice as a "conscious decision" to waive sovereign immunity. *See Ashraf-Hassan*, 2014 WL 1493210, at *4. For these reasons, the Court finds that defendant has not implicitly waived sovereign immunity, and the exception found in section 1605(a)(1) does not apply.

---

4    The defendant's first motion to dismiss stated "it is conceded that [the Embassy's] immunity does not apply in this case." *Ashraf-Hassan*, 2014 WL 1493210, at *3 (quoting motion to dismiss).

### B. Section 1605(a)(6) Does Not Apply Because the Arbitration Award Does Not Fall Under the New York Convention.

In the absence of a waiver, the Court cannot exercise jurisdiction over a foreign state unless that exercise falls within one of the exceptions set forth in the FSIA. Section 1605(a)(6) of FSIA states that foreign sovereigns are not immune from suits,

> in which the action is brought, either to enforce an agreement made by the foreign state with or for the benefit of a private party to . . . confirm an award made pursuant to such an agreement to arbitrate, if (A) the arbitration takes place or is intended to take place in the United States, (B) the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards, (C) the underlying claim, save for the agreement to arbitrate, could have been brought in a United States court under this section or section 1607, or (D) paragraph (1) of this subsection is otherwise applicable.

28 U.S.C. § 1605(a)(6).

Subsection (a)(6)(A) does not apply here because the parties' arbitration took place in the Czech Republic. *Id.* §1605(a)(6)(A); *see* Arbitration Agreement, Ex. B to Compl. at 2. Subsection (a)(6)(C) does not apply because the underlying claim could not have been brought in a U.S. court under section 1605 or 1607 of FSIA,[5] and plaintiff does not assert that any other sections apply. 28 U.S.C. §§ 1605, 1607; *see* Compl. ¶ 2. Section 1605(a)(6)(D) does not apply because paragraph 1 of section 1605(a) sets forth the waiver exception; and, as discussed above, defendant has not implicitly or explicitly waived sovereign immunity.

---

5   Section 1605(a) states a number of other exceptions to foreign state immunity, including: where the action is based upon a commercial activity or arose in connection to a commercial activity carried on in the United States by a foreign state, where the claim arose from property located in the United States, and where money damages are sought for personal injury, death, or damage to property occurring in the United States. 28 U.S.C. § 1605(a). There are also exceptions for maritime and terrorism cases. *See id.* §§ 1605(b), 1605A. Section 1607 is irrelevant, because it applies only when a foreign state brings an action in a U.S. court and the opposing party counter-claims. 28 U.S.C. § 1607.

Plaintiff did not specifically invoke the exception in subsection (a)(6)(B), which provides that immunity does not attach where the arbitration agreement or award is governed by an international agreement. But plaintiff relies on the New York Convention as a source of jurisdiction in this case. Compl. ¶ 2. Since, as explained above, this case does not fall within the scope of the New York Convention because the parties did not have a commercial relationship, none of the exceptions listed in 1605(a)(6) apply, and the Court does not have subject matter jurisdiction over this case.

## CONCLUSION

For the reasons set forth above, the Court will dismiss this case *sua sponte* pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction. Defendant's motion to dismiss [Dkt. # 16] and motion to strike [Dkt. # 26], and plaintiff's motion for leave to file supplement to opposition to motion to dismiss [Dkt. # 35] will be denied as moot. A separate order will issue.

/s/ Amy B Jackson
_____
AMY BERMAN JACKSON
United States District Judge

DATE: August 14, 2014