## IN THE UNITED STATES DISTRICT
## COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DIAG HUMAN S.E., | : | |
| Langstrasse 33,4940 Vaduz, Principality of | : | |
| Liechtenstein, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| -against- | : | Civil Action No. 1:13-cv-00355 (ABJ) |
| | : | |
| THE CZECH REPUBLIC MINISTRY OF | : | |
| HEALTH, | : | |
| Palackeno namesti, 4, Prague, 2,128,01, | : | |
| Czech Republic, | : | |
| | : | |
| Defendant. | : | |

## MOTION TO ALTER AND AMEND JUDGMENT UNDER
## FEDERAL RULE OF CIVIL PROCEDURE 59(E)

AND NOW COMES Plaintiff, Diag Human S.E. ("Diag"), and hereby

respectfully moves this Court to alter and amend, under Federal Rule of Civil Procedure 59(e),

its order and judgment dismissing Diag's action for lack of subject matter jurisdiction [Dkt. 40].

Specifically, Diag asks the Court to vacate the judgment of dismissal for lack of subject matter

jurisdiction, and to restore the matter and all pending motions that were denied as moot to the

Court's active docket for further proceedings.

1.      Diag moves to alter and amend the judgment because on August 14, 2014,

this Court, *sua sponte*, issued an order and memorandum opinion dismissing Diag's complaint

for lack of subject matter jurisdiction. The Court's Memorandum Opinion ("Mem. Op.") found

that the underlying arbitral award which Diag is seeking to enforce did not fall under the

Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §§ 201,

*et seq.* (the "New York Convention"), because, in the Court's view, the "subject matter of" the

relationship between Diag and the Defendant, Czech Republic Ministry of Health ("Czech

Republic" or "MoH"), was not commercial and the arbitration "did not arise out of" a

commercial relationship. Mem. Op. at 8.  The key finding underlying the Court's conclusion was

in its statement that

> Before entering into the Arbitration Agreement, plaintiff and defendant
> did not have any legal relationship, let alone a commercial one. While
> Diag Human endeavored to extend its business into the Czech Republic, it
> did not have any contract, agreement or transaction with the Czech
> Republic that could be considered to be commercial.

(Mem. Op. at p. 8)

2.     In so finding, the Court simply overlooked or misapprehended record

evidence showing that that finding is wrong.  Moreover, the Court made its decision here

without affording Diag any notice or opportunity to direct the Court to matters in the record

and to additional facts that would have given it the background for this dispute and its

commercial nature.

3.     As argued in the accompanying Plaintiff's Memorandum of Points and

Authorities and as shown in the Declaration of Josef Stava, the dispute that resulted in the final

arbitral award in Diag's favor in 2008 arose from a commercial relationship that Diag had with

Czechoslovakia, and later the Czech Republic, that began in the late 1980's.  As is plain from

the numerous arbitration awards rendered in this case and even from an opinion of the Supreme

Court of the Czech Republic, all of which were exhibits to the affirmation of Jan Kalvoda

submitted by Diag in opposition to the motion of the Defendant, the Czech Republic, to

dismiss, the relationship between Diag and the Czech Republic was a commercial one that

dates from 1989 *at latest*, years before the execution of the Arbitration Agreement in 1996 that

the Court believed represented the first relationship of any sort, commercial or not, between the parties.

    4.    In support of this Motion, Diag relies upon the following accompanying documents, which are incorporated herein:

    a.    Plaintiff's Memorandum of Points and Authorities in Support of Motion to Alter and Amend Judgment Under Federal Rule of Civil Procedure 59(e); and

    b.    Declaration of Josef Stava dated September 11, 2014.

    5.    Diag respectfully requests oral argument of this motion.  Diag submits that, given the breadth of the record, argument could facilitate the resolution of any lingering factual concerns.

    WHEREFORE, Diag respectfully asks that this Court vacate the judgment of dismissal for lack of subject matter jurisdiction, and restore the matter and all pending motions heretofore denied as moot to its active docket for further proceedings.

September 11, 2014

                         Respectfully submitted,

                         ALLEGAERT BERGER & VOGEL LLP

                          /s/ Hyman L. Schaffer
                         Hyman L. Schaffer (admitted *pro hac vice*)
                         hschaffer@abv.com
                         James R. Schiffer
                         jschiffer@abv.com
                         111 Broadway, 20th Floor
                         New York, New York 10006
                         Tel:  (212) 571-0550

                         Attorneys for Diag Human S.E.

<u>CERITIFICATE OF SERVICE</u>

I hereby certify that on this 11th day of September, 2014, I caused the foregoing Motion to Alter and Amend Judgment Under Federal Rule of Civil Procedure 59(e), the Plaintiff's Memorandum of Points and Authorities in Support of Motion to Alter and Amend Judgment Under Federal Rule of Civil Procedure 59(e), and the Declaration of Josef Stava dated September 11, 2014 to be electronically filed with the Clerk of Court using the Court's ECF system, which automatically sent notification of such filing to the following:

> Dean A. Calland
> Leonard Fornella
> Alana E. Fortna
> Babst, Calland, Clements & Zomnir, P.C.
> Two Gateway Center, 6th Floor
> Pittsburgh, Pennsylvania 15222
> Tel:  412-394-5400

>            /s/  Collins Burgess-Jackman
>            Collins Burgess-Jackman

**IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF COLUMBIA**

DIAG HUMAN S.E.,                                    :
Langstrasse 33,4940 Vaduz, Principality of          :
Liechtenstein,                                      :
                                                    :
                          Plaintiff,                :
                                                    :
        -against-                                   :     Civil Action No. 1:13-cv-00355 (ABJ)
                                                    :
THE CZECH REPUBLIC MINISTRY OF                      :
HEALTH,                                             :
Palackeno namesti, 4, Prague, 2,128,01,             :
Czech Republic,                                     :
                                                    :
                          Defendant.                :

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO ALTER AND AMEND
<u>JUDGMENT UNDER FEDERAL RULE OF CIVIL PROCEDURE 59(e)</u>**

ALLEGAERT BERGER & VOGEL LLP
Hyman L. Schaffer (admitted *pro hac vice*)
hschaffer@abv.com
James R. Schiffer
jschiffer@abv.com
111 Broadway, 20th Floor
New York, New York 10006
Tel:  (212) 571-0550

*Attorneys for Diag Human S.E.*

September 11, 2014

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ................................................................................................2

ARGUMENT .....................................................................................................................4

I.       THE JUDGMENT SHOULD BE VACATED. ....................................................4

         A.       Legal Standard to Be Applied ..................................................................4

         B.       The Arbitration Arose from a Commercial Legal Relationship ..............6

CONCLUSION .................................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

Cases

*Allied-Bruce Terminix Cos. v. Dobson*,
513 U.S. 265 (1995) ........................................................................................................ 10

*Bautista v. Star Cruises*,
396 F.3d 1289 (11th Cir. 2005) ................................................................................. 12, 14

*Berge v. United States*,
949 F. Supp. 2d 36 (D.D.C. 2013) ................................................................................... 5

*BG Group PLC v. Republic of Argentina*,
__ U.S. __, 134 S. Ct. 1198, 188 L. Ed. 2d 220 (2014) ................................................. 13

*City of Dover v. United States Envtl. Prot. Agency*,
No. 12-1994, 2013 WL 6157926 (D.D.C. Nov. 15, 2013) .............................................. 5

*Crawford v. West Jersey Health Sys. (Vorhees Div.)*,
847 F. Supp. 1232 (D.N.J. 1994) ................................................................................... 10

*Defenders of Wildlife v. Salazar*,
842 F. Supp. 2d 181 (D.D.C. 2012) ................................................................................. 5

*Exxon Shipping Co. v. Baker*,
554 U.S. 471, 485 (2008) ................................................................................................. 5

*Firestone v. Firestone*,
76 F.3d 1205 (D.C. Cir. 1996) ......................................................................................... 5

*Foster v. Turley*,
808 F.2d 38 (10th Cir. 1986) ......................................................................................... 10

*Francisco v. Stolt Achievement MT*,
293 F.3d 270 (5th Cir. 2002) .................................................................................. *passim*

*Freudensprung v. Offshore Technical Servs., Inc.*,
379 F.3d 327 (5th Cir. 2004) .................................................................................... 7, 8, 9

*Henry v. Murphy*,
2002 WL 24307 (S.D.N.Y. Jan. 8, 2002) ....................................................................... 12

*In re Motion of Burlodge Ltd. for Reconsideration of the Court's April 28, 2009
Memorandum Opinion*, No. 08-525, 2009 WL 2868756 (D.D.C. Sept. 3, 2009) .......... 5

*Island Territory of Curacao v. Solitron Devices Inc.*,
356 F. Supp. 1 (S.D.N.Y. 1973) ..................................................................................... 12

Page(s)

*JSC Surgutneftegaz v. President & Fellows of Harvard Coll.*,
No. 04-6069, 2005 WL 1863676 (S.D.N.Y. Aug. 3, 2005), *aff'd*, 167 Fed. Appx.
266 (2d Cir. 2006) ............................................................................................................ 7

*Ledee v. Ceramiche Ragno*,
684 F.2d 184 (1st Cir. 1982) ............................................................................................ 7

*Matter of Arbitration Between Trans Chem. Ltd. & China Nat'l Mach. Imp. &
Exp. Corp.*, 978 F. Supp. 266 (S.D. Tex. 1997) ............................................................ 10

*Maxus, Inc. v. Sciacca*,
598 So.2d 1376 (Ala. 1992) ............................................................................................ 10

*Nat'l Ctr. for Mfg. Scis. v. Dep't of Defense*,
199 F.3d 507 (D.C. Cir. 2000) .......................................................................................... 5

*Prograph Int'l Inc. v. Barhydt*,
928 F. Supp. 983 (N.D. Cal. 1996) ................................................................................. 10

*Ramsey v. United States*,
Nos. 11-1710, 11-2277, 2012 WL 8016450 (D.D.C. Jan. 20, 2012) ................................. 5

*Snyder v. Smith*,
736 F.2d 409 (7th Cir. 1984) .......................................................................................... 10

*Thai-Lao Lignite (Thailand) Co., Ltd. v. Gov't of the Lao People's
Democratic Republic*,
No. 10-5256, 2011 WL 3516154 (S.D.N.Y. Aug. 3, 2011) ..................................... 12, 13

*Uzoukwu v. Metro. Wash. Council of Gov'ts*,
983 F. Supp. 2d 67 (D.D.C. 2013) .................................................................................... 5

*Waynesborough Country Club of Chester County v. Diedrich Niles Bolton
Architects, Inc.*, No. 07-155, 2011 WL 1873094 (E.D. Pa. May 17, 2011) ................... 10

*Wilkins v. District of Columbia*,
879 F. Supp. 2d 35 (D.D.C. 2012) .................................................................................... 5

Page(s)

Other Authorities

11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*
§ 2810.1 (2d ed.1995) ................................................................................................................ 5

9 U.S.C. § 1................................................................................................................................ 9, 13

9 U.S.C. § 2................................................................................................................................ 7, 9

9 U.S.C. § 201 ........................................................................................................................... 1

9 U.S.C. § 202 ........................................................................................................................... 6, 7, 8, 9

9 U.S.C. § 208 ........................................................................................................................... 9

Albert Jan van den Berg, *The New York Convention of 1958: An Overview*,
International Council for Commercial Arbitration at 5 (Apr. 15 2009) ..................... 11, 12, 13, 14

Fed. R. Civ. P. 59(e) ................................................................................................................. 5

Leonard V. Quigley, *Convention on Foreign Arbitral Awards*, 58 A.B.A. J. 821,
823 (1972) ................................................................................................................................. 10

Plaintiff, Diag Human S.E. ("Diag"), respectfully submits this Memorandum of Points and Authorities in Support of Motion to Alter and Amend Judgment Under Federal Rule of Civil Procedure 59(e).  Diag asks the Court to vacate the August 14, 2014 order and judgment dismissing the Complaint for lack of subject matter jurisdiction, and to restore the matter to the Court's docket and determine the matter on the merits.

## PRELIMINARY STATEMENT

On August 14, 2014, this Court, *sua sponte*, issued an order and memorandum opinion dismissing Diag's complaint for lack of subject matter jurisdiction and denying all other pending motions as moot. The Court's Memorandum Opinion ("Mem. Op.") found that the underlying foreign arbitral award which Diag is seeking to enforce did not fall under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §§ 201, *et seq.* (the "New York Convention" or the "Convention"), because, in the Court's view, the "subject matter of" the relationship between Diag and the Defendant, the Czech Republic Ministry of Health ("Czech Republic" or "MoH"), was not commercial and the arbitration "did not arise out of" a commercial relationship.  (Mem. Op. at 8).  The key finding underlying the Court's conclusion was in its statement that

> Before entering into the Arbitration Agreement, plaintiff and defendant did not have any legal relationship, let alone a commercial one. While Diag Human endeavored to extend its business into the Czech Republic, it did not have any contract, agreement or transaction with the Czech Republic that could be considered to be commercial.

(Mem. Op. at p. 8).

Respectfully, the Court simply overlooked or misapprehended record evidence showing that this key premise is wrong.  Moreover, by making its decision here without affording Diag any notice or opportunity to be heard, the Court precluded Diag from directing the Court to such

matters in the record or supplying additional facts and information that would have given it the background for this dispute and the commercial nature of the relationship between the parties.

As Diag demonstrates in the Declaration of Josef Stava submitted with this motion, the dispute that resulted in the final arbitral award in Diag's favor in 2008 arose from a commercial relationship that Diag had with Czechoslovakia, and later the Czech Republic, that began in the late 1980's.  As is plain from the numerous arbitration awards rendered in this case and even from an opinion of the Supreme Court of the Czech Republic (all of which were made of record in opposition to the Czech Republic's motion to dismiss), the relationship between Diag and the Czech Republic was a commercial one that dates from 1989 *at the latest*, years before the execution of the arbitration agreement in 1996 that the Court believed represented the first relationship of any sort, commercial or not, between the parties.

The evidence irrefutably shows that there was a commercial legal relationship between Diag and the Czech Republic, and that the arbitration agreement here arose from that commercial legal relationship.  Under controlling precedent, that relationship would also have been commercial under the laws of the United States.  This Court thus has subject matter jurisdiction over this action to enforce the arbitration award under the New York Convention. The Court's conclusion otherwise is erroneous, and its order of dismissal should be vacated, and the matter heard on the merits.

### STATEMENT OF FACTS

Diag respectfully refers the Court to the Declaration of Josef Stava dated September 11, 2014 (the "Stava Decl.") for a complete statement of facts on which Diag's motion is based.  The Stava Declaration identifies and discusses facts that are already of record about the commercial

2

relationship between Diag and the Czech Republic that formed the subject matter of the arbitration, and provides additional detail about that relationship.

In brief summary, the Stava Declaration shows that a commercial legal relationship between the Czech Republic and Diag dates back to at least 1989 – *i.e.*, about seven years before the parties entered into the arbitration agreement – when Diag and the Czech Republic (through the MoH) entered into discussions that led to the March 1990 Framework Agreement concerning blood plasma processing.[1]  (Stava Decl. ¶ 11).  The Czech health system, and all of its hospitals, were owned and operated by the State, as was typical of Communist countries.  Diag had developed a very successful business model – which Diag initially implemented in the German Democratic Republic – that allowed for the modernization of state-run systems that was financed by Diag, and paid for by the state through future blood plasma deliveries.  This was extraordinarily attractive to Eastern bloc countries, which lacked the hard currency necessary to finance the modernization.  That commercial relationship between the Czech Republic and Diag is further shown by similar agreements concluded between Diag and individual hospitals, referenced by the arbitrators in the Final Award.[2]  (*Id.* ¶ 16).

In addition, before the Court's decision in this action, every tribunal that had reviewed the relationship between Diag and the Czech Republic found that relationship to have been commercial. The arbitration claim of Diag was found to be commercial by (i) the Interim Award; (ii) the Partial Award; (iii) the Final Award, and (iv) the Supreme Court of the Czech Republic in a judgment dated October 14, 2010.  (Stava Decl. ¶ 33).  In fact, the Interim Award dismissed the

---

[1] The Framework Agreement was specifically referenced in Diag's Opposition to the Czech Republic's motion to dismiss.  (Opposition at 6 [Dkt. 20]) ("Beginning in the early 1990's, the MoH sought to cut Diag out of the Czech blood plasma market entirely, despite the fact that Diag had secured a framework for cooperation with the Czech government respecting the supply of blood plasma and in fact had won a tender to do so.").

[2] These commercial agreements are agreements between Diag and the Czech Republic because the hospitals were owned by the Czech Republic and the Czech Republic supervised their management.  (*Id.*).

plea of limitation of time on the ground that the MoH was acting commercially, and thus was subject to a four year statute of limitations for commercial law matters, rather than the shorter statute for certain other civil matters. This finding by the arbitral panel in the Interim Award is particularly pertinent to whether there was a commercial relationship between Diag and the Czech Republic before their entry into the arbitration agreement:

> *First of all, it must be noted that the unfair competition conduct and restriction of economic competition committed by the [MoH] are unambiguously business relations* and that is why the issue of limitation is regulated by the Commercial Code. In this connection, the arbitrators state that this position is also supported by the amendment to the Act on Economic Competition that refutes any potential doubts.[3]

(Stava Decl. ¶ 15).

Contrary to the Court's conclusion, the arbitration agreement was neither the first agreement between Diag and the Czech Republic, nor their first commercial dealings.  Beginning with the discussions leading to the Framework Agreement and continuing for years thereafter, the parties entered into a series of contracts (and other business dealings) which are indisputably commercial.  The subject matter of the arbitration was commercial and the relationship between the parties was commercial.

## ARGUMENT

## I.    THE JUDGMENT SHOULD BE VACATED.

### A.    *Legal Standard to Be Applied*

A motion to alter or amend a judgment – also considered a motion for reconsideration in this Circuit – is "governed by Federal Rule of Civil Procedure 59(e)."  *Ramsey v. United States*, Nos. 11-1710, 11-2277, 2012 WL 8016450, at *1 (D.D.C. Jan. 20, 2012).  "It is well established

---

[3] This finding by the interim arbitral panel shows that Diag's claims were not merely "predicated upon commercial laws of the Czech Republic" (Mem. Op. at 9), but that the relationship itself between Diag and the Czech Republic concerned "unambiguously business relations."

that the justifications for granting a motion for reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"  *Defenders of Wildlife v. Salazar*, 842 F. Supp. 2d 181, 184 (D.D.C. 2012) (quoting *Firestone v. Firestone,* 76 F.3d 1205, 1208 (D.C. Cir. 1996) (internal citations and quotations omitted)); *see also City of Dover v. United States Envtl. Prot. Agency*, No. 12-1994, 2013 WL 6157926 (D.D.C. Nov. 15, 2013); *Wilkins v. District of Columbia*, 879 F. Supp. 2d 35, 39 (D.D.C. 2012).  "Relief under Rule 59(e) is warranted 'when there were facts or legal issues properly presented but overlooked by the court in its decision,' . . . or when the court's decision rests on an incorrect premise."  *Berge v. United States*, 949 F. Supp. 2d 36, 41 (D.D.C. 2013) (quoting *In re Motion of Burlodge Ltd. for Reconsideration of the Court's April 28, 2009 Memorandum Opinion*, No. 08-525, 2009 WL 2868756, at *2 (D.D.C. Sept. 3, 2009) and citing *Defenders of Wildlife*, 842 F.Supp.2d at 184–85).  The resolution of a Rule 59(e) is discretionary, *Uzoukwu v. Metro. Wash. Council of Gov'ts*, 983 F. Supp. 2d 67, 74-75 (D.D.C. 2013), and a court should exercise that discretion in favor of reconsideration where there are errors "which compel the court to change its prior position," *Nat'l Ctr. for Mfg. Scis. v. Dep't of Defense,* 199 F.3d 507, 511 (D.C. Cir. 2000).[4]

Diag respectfully submits that the Court was clearly mistaken in concluding that before "entering into the Arbitration Agreement, plaintiff and defendant did not have any legal relationship, let alone a commercial one."  (Mem. Op. at 8).  It is thus appropriate for the Court

---

[4] Generally, a "litigant may not use Rule 59(e) 'to relitigate old matters, or to raise arguments ... that could have been raised prior to the entry of judgment.'"  *Berge*, 949 F. Supp. 2d at 41 (quoting *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n. 5 (2008) (quoting 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2810.1 (2d ed.1995))).  Since the Court raised the issue of its subject matter jurisdiction *sua sponte*, and without any additional briefing from the parties, this motion necessarily does not "relitigate old matters" or raise arguments that could have been raised previously.

to reconsider and to vacate its dismissal of Diag's complaint for lack of subject matter jurisdiction.

**B.      *The Arbitration Arose from a Commercial Legal Relationship***

The Court's sole ground for finding lack of subject matter jurisdiction here was its finding that the final arbitral award was not subject to the New York Convention as adopted in the United States.  As noted above, this conclusion followed from the Court's mistaken finding that Diag and the Czech Republic did not have any legal relationship between them whatsoever, much less a commercial one, before their entry into an arbitration agreement in 1996.  (Mem. Op. at 8).  Yet, as detailed in the Stava Declaration, the Court overlooked or misapprehended facts demonstrating that there was such a commercial legal relationship, and, as shown below, case law supporting the conclusion that the Diag/Czech Republic relationship was more than sufficiently "commercial" to support jurisdiction under the New York Convention.

Title 9 of the United States Code contains both the Federal Arbitration Act ("FAA") and the United States implementing legislation for the New York Convention.  Section 201 of Chapter 2 of the FAA incorporates the Convention, and Section 202, implementing the reservation permissible under Article 1.3 of the Convention, restricts the scope of the Convention to arbitration agreements or awards arising out of commercial relationships as follows:

> An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention.

9 U.S.C. § 202.

Section 2 of Chapter 1 of the FAA (referenced in Section 202 above) provides that:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing

6

controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

Applying these and other related provisions of the FAA and the Convention, courts have articulated a four-part test to determine whether the Convention applies to a given dispute.  A common formulation, similar to the formulation adopted by the Court here (Mem. Op. at 7), of the test was articulated by the Fifth Circuit in *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327 (5th Cir. 2004):

> (1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen.

*Id.* at 339; *see also Ledee v. Ceramiche Ragno*, 684 F.2d 184, 186-87 (1st Cir. 1982).

This Court correctly noted that the first, second and fourth elements were met here, but erroneously concluded that the third element was not.  In its discussion of the third element, this Court adopted a reformulation of the third element of the *Freudensprung* test set forth in *JSC Surgutneftegaz v. President & Fellows of Harvard Coll.*, No. 04-6069, 2005 WL 1863676, at *2 (S.D.N.Y. Aug. 3, 2005), *aff'd*, 167 Fed. Appx. 266 (2d Cir. 2006): that "the subject matter of the *relationship between the parties* must be commercial . . . ."  *Id.* at *2 (emphasis by this Court); 9 U.S.C. § 202.  (*See* Mem. Op. at 7-8).  The Court's conclusion about the third element is based on the factual error that there was no preexisting relationship between Diag and the Czech Republic before the arbitration agreement that is treated in the Stava Declaration.  Moreover,

7

under *Surgutneftegaz*, it is "the *subject matter* of the relationship between the parties" that must be commercial, which arguably encompasses a broader ambit than the relationship itself.[5]

Diag also respectfully submits that the Court here mistakenly concluded that the Fifth Circuit, in *Freudensprung*, "interpreted a commercial legal relationship *to mean* a transaction, contract, or agreement described in Section 2 of [Title 9] – that is, either a maritime transaction or a contract involving commerce."  (Mem. Op. at 7).  (emphasis added).  The portion of the *Freudensprung* opinion from which the Court quotes is actually a parenthetical reference to an earlier Fifth Circuit opinion in *Francisco v. Stolt Achievement MT*, 293 F.3d 270 (5th Cir. 2002), in which that court, consistent with Section 202 of the FAA, defined a commercial legal relationship as "*including* a transaction, contract, or agreement described in section 2 of this title."  *Id.* at 274.

The *Francisco* case involved a tort action commenced in Louisiana by a Filipino seaman employed under a Philippine standard employment contract containing an arbitration clause. This employer moved to compel arbitration pursuant to the New York Convention, which, notably, applies to enforcement of foreign arbitration clauses as well as recognition and enforcement of foreign arbitral awards.[6]  The seaman resisted the motion by arguing that the provisions of the Federal Arbitration Act contained in Chapter 1 of Title 9 of the United States Code were incorporated into the New York Convention through 9 U.S.C. § 202.  The seaman

---

[5] Thus, in later rejecting the fact that the arbitral award was rendered pursuant to several provisions of the Czech Commercial Code as being sufficient to demonstrate its commercial nature with the statement "it is the nature of the relationship between the parties, not the nature of their dispute" that determines whether a commercial legal relationship is at issue (Mem. Op. at 9), the Court seems to have misapplied the very test it articulated.  Whatever the case, here both the nature of the dispute and the relationship between the parties was commercial.

[6] Thus, the majority of decisions that invoke the *Freudensprung* factors are motions to compel arbitration under the Convention.  The standard applies in enforcement cases if for no other reason than a matter that can be compelled to arbitration under the Convention would seem by definition to meet the standard for enforcing any resulting award.

claimed that his seaman's employment contract was excepted from FAA coverage by 9 U.S.C.

§ 1, which provides exceptions to the definition of commercial contracts set forth in 9 U.S.C. § 2.

      In *Francisco*, the court held that a provision contained in Section 1 of Chapter 1 of the

FAA which expressly excludes "contracts of employment for seamen" from coverage under the

FAA does not likewise exclude such contracts from coverage under the Convention.   This is

because Section 208 of Chapter 2 of the FAA incorporates Chapter 1 into the Convention only

"to the extent that that chapter is not in conflict with this chapter or the Convention as ratified by

the United States."  9 U.S.C. § 208.  The court concluded that the FAA's exclusion of contracts

of employment for seaman was inconsistent with the Convention, which contains no such

exemption.  Thus, the court found that a "commercial" matter under the Convention is actually

broader than under the FAA.[7]

      Neither *Freudensprung* nor *Francisco* hold, as the Court suggests, that commercial legal

relationships under the Convention are limited to those explicitly detailed in Section 2.  To the

contrary, the *Francisco* court expressly recognized that 9 U.S.C. § 2 does *not* limit the types of

relationships that may be considered commercial, but instead merely provides examples of such

relationships.  *See Francisco*, 293 F.3d at 276 ("As discussed above, § 202 of the Convention

Act states that a contract considered commercial *includes* those contracts described in § 2 of the

Arbitration Act . . . and does not state that *only* those contracts described in § 2 of the Arbitration

Act 'fall under' the Convention.") (emphasis in original).

      The *Francisco* court's recognition of the broad definition of "commercial" under the

Convention is consistent with the similarly broad definition of "commerce" under the FAA.  A

---

[7] Notably, the plaintiff's claims in *Francisco* did not arise directly from his contract of employment, but were instead tort claims related to an injury he sustained while working on a maritime vessel.  The fact that the plaintiff's claims did not arise under the law of contracts did not preclude the Convention's application.

number of courts, in applying the provisions of the FAA with respect to the enforcement of domestic arbitration agreements, have concluded that an arbitration contract "need have only the slightest nexus with interstate commerce" to fall within the ambit of the FAA. *Crawford v. West Jersey Health Sys. (Vorhees Div.)*, 847 F. Supp. 1232, 1240 (D.N.J. 1994) (quoting *Maxus, Inc. v. Sciacca*, 598 So.2d 1376 (Ala. 1992); *Snyder v. Smith*, 736 F.2d 409, 417 (7th Cir. 1984) ("involving commerce" requirement "must be construed broadly")).[8]

While these cases involve the interpretation of Section 2 of the FAA in the context of the enforcement of domestic arbitration agreements and awards, there is no reason why Section 2 should be interpreted any less broadly in the context of an enforcement action pursuant to the New York Convention.  Indeed, at least one court interpreting Section 2 in the context of an enforcement action under the Convention has concluded that "Section 2 applies to all contracts that Congress could regulate under the full sweep of its Commerce Clause powers." *Prograph Int'l Inc. v. Barhydt*, 928 F. Supp. 983, 988 (N.D. Cal. 1996) (citing *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265 (1995).   And one commentator addressing this language has observed, "it seems clear that the full scope of 'commerce' and 'foreign commerce,' as those terms have been broadly interpreted, is available for arbitral agreements and awards [under the Convention]."  Leonard V. Quigley, *Convention on Foreign Arbitral Awards*, 58 A.B.A. J. 821, 823 (1972).

---

[8] *See, e.g.*, *Foster v. Turley*, 808 F.2d 38 (10th Cir. 1986) ("The Arbitration Act applies to a written arbitration provision in 'a contract evidencing a transaction involving commerce'. . . . The requirement … is to be broadly construed so as to be coextensive with congressional power to regulate under the Commerce Clause.")); *Waynesborough Country Club of Chester County v. Diedrich Niles Bolton Architects, Inc.*, No. 07-155, 2011 WL 1873094, at *5 (E.D. Pa. May 17, 2011) ("An agreement need only have the slightest nexus with interstate commerce to be subject to the Arbitration Act."); *Matter of Arbitration Between Trans Chem. Ltd. & China Nat'l Mach. Imp. & Exp. Corp.*, 978 F. Supp. 266, 300 (S.D. Tex. 1997) (the contract containing the arbitration provision must evidence "a transaction involving commerce . . . this is not a rigorous inquiry; the contract need only be 'related to' commerce to fall within the FAA.").

One leading scholar of the Convention, commenting on the "commercial" reservation available under Article I(3) of the Convention (and invoked by the United States), has noted the broad interpretation of "commercial" by courts:

> The second reservation of Article I(3) permits a State to reserve the applicability of the Convention "... only to differences arising out of legal relationships, whether contractual or not, which are considered as commercial under the national law of the State making such declaration." This reservation was inserted because at the New York Conference of 1958 it was believed that, without this clause, it would be impossible for certain Civil Law countries, which distinguish between commercial and non-commercial transactions, to adhere to the Convention. As of today approximately one third of the Contracting States has used the commercial reservation.

> In practice, the commercial reservation generally has not caused problems as the courts tend to interpret the coverage of "commercial" broadly. There is also a tendency to rely on the broad description of what constitutes "commercial" as is given in conjunction with the UNCITRAL Model Law on International Commercial Arbitration of 1985.

> The words "whether contractual or not" are intended to cover not only disputes arising out of contract but also tort (see Article II(1) - Arbitration agreement below).'

Albert Jan van den Berg, *The New York Convention of 1958: An Overview*, International Council for Commercial Arbitration at 5 (Apr. 15 2009), *available at* http://www.arbitration-icca.org/media/0/12125884227980/new_york_convention_of_1958_overview.pdf .

Courts, too, recognizing the broad scope of "commercial", have rejected attempts by litigants to limit the application of the Convention to contracts directly involving commerce, finding, for example, that contracts of employment fall within the ambit of the Convention, *see, e.g.*, *Francisco*, 293 F.3d at 273-74, and that a stand-alone agreement to arbitrate between corporate shareholders regarding the proceeds of a stock transaction likewise was subject to enforcement under the Convention, *Henry v. Murphy*, 2002 WL 24307, at *4 (S.D.N.Y. Jan. 8, 2002), because they were commercial, and that is all that is necessary for jurisdiction.

11

Given the broad sweep of the Commerce Clause and its analogous operation in the Convention, and the purpose of the Convention to provide a uniform global standard for enforcement and recognition of foreign arbitral awards, research has revealed no case – other than this one – in which a court that has been called upon to determine the application of the New York Convention has found that the underlying arbitration was not sufficiently "commercial" for the Convention to apply.  Indeed it appears that every court that has considered a challenge to the Convention's application on this basis – and it seems that such challenges are exceedingly rare – has rejected that challenge.  *See, e.g.*, *Bautista v. Star Cruises*, 396 F.3d 1289, 1298 (11th Cir. 2005) (rejecting claim that Convention's "commercial" limitation is defined by FAA Section 2 because "otherwise the expansive term 'including' would be superfluous"); *Francisco*, 293 F.3d at 273-74; *Henry*, 2002 WL 24307, at *4; *Island Territory of Curacao v. Solitron Devices Inc.*, 356 F. Supp. 1 (S.D.N.Y. 1973).  In fact, in *Island Territory of Curacao* the court considered the purpose of the commercial limitation in the Convention and stated, "[w]e may logically speculate that it was to exclude matrimonial and other domestic relations awards, political awards, and the like."  356 F. Supp. at 13.

*Thai-Lao Lignite (Thailand) Co., Ltd. v. Gov't of the Lao People's Democratic Republic*, No. 10-5256, 2011 WL 3516154 (S.D.N.Y. Aug. 3, 2011), with closely analogous facts, confirms that the type of dispute underlying the arbitration here is commercial for purposes of Convention jurisdiction.  In *Thai-Lao Lignite*, the petitioners were a private Thai limited liability company and its partly-owned subsidiary, and the respondent was the government of Laos.  *Id.* at *1.  Like the Framework Agreement here to develop the Czech blood fractionation industry, the parties had entered into a Project Development Agreement for petitioners "to implement a project to locate and mine lignite coal reserves in the Hongsa region of Laos, and to operate

12

lignite-fired electricity generation plants to the mines, for the sale of electricity to Thailand (the 'Hongsa Project')." *Id.*  After a dispute arose, the parties arbitrated the matter in Malaysia pursuant to their written arbitration agreement. *Id.* at 5-7.  Upon securing an award in their favor, the petitioners began an action to enforce the award in the New York state courts, which the Government of Laos removed to the Southern District. *Id.* at 7.  In denying its motion to dismiss on the grounds of lack of personal jurisdiction, *forum non conveniens* and that the arbitrators exceeded their jurisdiction, the court found the Government of Laos to have been a "foreign commercial" entity when it engaged in the underlying activity, and ruled that because the petitioner "seeks to confirm an arbitration award rendered in a foreign state, under an agreement between foreign commercial entities, the action is governed by the framework set forth in the" New York Convention. *Id.* at 13; *see also BG Group PLC v. Republic of Argentina*, __ U.S. __, 134 S. Ct. 1198, 188 L. Ed. 2d 220 (2014) (finding the New York Convention applicable to enforcement of an arbitration award between a citizen of the United Kingdom and the Republic of Argentina where, although there was a bilateral treaty between the United Kingdom and Argentina, there was not preexisting arbitration contract between the citizen and Argentina).

None of the cases cited by this Court in its Memorandum Opinion suggest that a different result should obtain here, given a proper recognition of the commercial subject matter of the arbitration and of the relationship between Diag and the Czech Republic giving rise to it.  Only one of these cited cases, *Bautista*, even involved a challenge to the application of the Convention on the basis of the nature of the relationship between the parties, and the court in *Bautista* rejected that challenge. *Bautista*, 396 F.3d at 1298.  The remaining cases simply state general

principles of law relating to the application of the Convention.  None involve facts that are analogous to those of the present case.[9]

In short, Diag and the Czech Republic had a commercial legal relationship since at least as early as their 1989 discussions leading to entry into the Framework Agreement in 1990.  That relationship was abundantly sufficient to satisfy the jurisdictional requirements of the New York Convention under the pertinent case law.  The Court's decision otherwise was clear error, and should be reconsidered and vacated.[10]

## CONCLUSION

For the foregoing reasons, Diag respectfully asks that this Court vacate the judgment dismissing this action for lack of subject matter jurisdiction, restore the case to the active docket for further proceedings, and grant such additional relief as the Court deems just and proper.

Dated:  September 11, 2014

Respectfully submitted,

ALLEGAERT BERGER & VOGEL LLP

 _/s/ Hyman L. Schaffer_____
Hyman L. Schaffer (admitted *pro hac vice*)
hschaffer@abv.com
James R. Schiffer
jschiffer@abv.com
111 Broadway, 20th Floor
New York, New York 10006
Tel:  (212) 571-0550

*Attorneys for Plaintiff Diag Human S.E.*

---

[9] The fact that the award was premised on a commercial tort is irrelevant to Convention coverage.  The Convention itself applies to a legal relationship "whether contractual or not" that is considered commercial.  The *Francisco* court rejected a claim that the seaman's tort claim did not arise out of his contract of employment which was covered by the Convention.  *Francisco*, 293 F.3d at 278.  In this case, the commercial nature of the tort claim simply underscores that the relationship between the parties was commercial.

[10] There have been developments in the Czech Republic since the parties' last submissions to the Court which will likely be at issue should the judgment be vacated.  Given the Court's current view of the lack of subject matter jurisdiction, it is not appropriate to develop those issues until the jurisdictional issue is resolved.