**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| DIAG HUMAN S.E., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 13-0355 (ABJ) |
| ) | |
| CZECH REPUBLIC-MINISTRY ) | |
| OF HEALTH, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**MEMORANDUM OPINION AND ORDER**

On March 19, 2013, plaintiff Diag Human S.E. brought this suit against the Czech Republic Ministry of Health ("the Ministry"), seeking to enforce an August 4, 2008 arbitration award related to the Ministry's alleged interference with a business relationship between plaintiff and a third party.  Compl. ¶¶ 1, 9 [Dkt. # 1].  The complaint alleges that the arbitral award relates to "acts undertaken by [the Ministry] between 1991 and 1992 that . . . disrupted cooperation between Diag Human and a second company, Novo Nordisk, . . . causing [Diag Human] eventually to shut down."  Compl. ¶ 9.

On August 14, 2014, the Court dismissed the case *sua sponte* for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(h)(3) on the grounds that the arbitral award plaintiff sought to enforce did not fall under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention"), June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38, and that defendant was entitled to immunity under the Foreign Sovereign Immunity Act.  Order (Aug. 14, 2014) [Dkt. # 40]; Mem. Op. [Dkt. # 41]; *see also*

*Diag Human S.E. v. Czech Republic-Ministry of Health*, No. 13-0355 (ABJ), 2014 WL 3956747, at *1 (D.D.C. Aug. 14, 2014).

On September 11, 2014, Diag Human filed a Federal Rule of Civil Procedure 59(e) motion asking the Court to alter or amend its judgment because, by ruling *sua sponte*, the Court did not give Diag Human the opportunity to argue and present facts on the issue of subject matter jurisdiction.  Pl.'s Mot. to Alter or Amend J. [Dkt. # 42]; Pl.'s Mem. of P & A in Supp. [Dkt. # 42] ("Pl.'s Mem.") at 1–2.  While the Court is entitled to address the question of its own jurisdiction *sua sponte*, under the circumstances, the Court has taken the events set forth in plaintiff's motion into account.  But the Court will deny the motion because, even in light of Diag Human's argument and additional evidence, the Court finds that the arbitral award does not fall under the New York Convention.  While the additional evidence does suggest that a commercial relationship between Diag Human and the Ministry did exist at one time, the arbitral award Diag Human seeks to enforce did not arise out of that commercial relationship.

## STANDARD OF REVIEW

"Motions under Fed.R.Civ.P. 59(e) are disfavored and relief from judgment is granted only when the moving party establishes extraordinary circumstances."  *Niedermeier v. Office of Max S. Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001), citing *Anyanwutaku v. Moore*, 151 F.3d 1053, 1057 (D.C. Cir. 1998).  Specifically, "'[a] Rule 59(e) motion is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"  *Ciralsky v. CIA*, 355 F.3d 661, 671 (D.C. Cir. 2004), quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996).

"Rule 59(e) . . . 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008), quoting 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2810.1 (2d ed. 1995); *see also Estate of Gaither ex rel. Gaither v. District of Columbia*, 771 F. Supp. 2d 5, 10 (D.D.C. 2011) ("In this Circuit, it is well-established that motions for reconsideration, whatever their procedural basis, cannot be used as an opportunity to reargue facts and theories upon which a court has already ruled, nor as a vehicle for presenting theories or arguments that could have been advanced earlier.") (internal quotation marks and citations omitted).

## ANALYSIS

### I.      The Court will consider Diag Human's additional evidence.

Diag Human alleges that, by dismissing this case *sua sponte*, "the Court precluded Diag from directing the Court to such matters in the record or supplying additional facts and information that would have given it the background for . . . the commercial nature of the relationship between the parties." Pl.'s Mem. at 1–2. Diag Human argues that consequently, the Court's "key premise is wrong," and it points to the following sentence in the Memorandum Opinion:

> Before entering into the Arbitration Agreement, plaintiff and defendant did not have any legal relationship, let alone a commercial one. While Diag Human endeavored to extend its business into the Czech Republic, it did not have any contract, agreement or transaction with the Czech Republic that could be considered to be commercial.

Pl.'s Mem. at 1, quoting Mem. Op. at 8.

To refute this statement, Diag Human submits a declaration from its founder, Josef Stava, and multiple exhibits. The declaration explains in great detail how "Diag and [the Ministry] entered into a purely commercial relationship to modernize the Czech blood plasma collection

3

system to be paid for with blood plasma deliveries." Decl. of Josef Stava in Supp. of Pl.'s Mem. [Dkt. # 42-1] ("Stava Decl.") ¶ 11. This relationship began in 1989 through a cooperation program and Framework Agreement between the Ministry and Diag Human. *Id.*; Ex. A to Stava Decl. [Dkt. # 42-2] (the cooperation agreement); Ex. B to Stava Decl. [Dkt. # 42-3] (the Framework Agreement). *See also* Pl.'s Reply to Def.'s Mem. in Opp. to Pl.'s Mot. to Alter & Amend J. [Dkt. # 47] ("Pl.'s Reply") at 5–7 (collecting references to the Ministry's involvement in the cooperation program).

Because the Court raised the issue of subject matter jurisdiction *sua sponte*, and it did not hear from Diag Human, it will consider plaintiff's additional argument and facts. The Ministry argues that the Court should not do so because Diag Human had actual notice of the jurisdiction issue, and it points to its argument that the parties did not have a commercial relationship in the Ministry's motion to dismiss for failure to state a claim. Def.'s Mem. in Opp. to Pl.'s Mot. to Alter J. [Dkt. # 45] ("Def.'s Opp.") at 3–4, citing Dkt. ## 16, 17. But Diag Human's response was made in the context of defendant's Rule 12(b)(6) motion, not in the context of the Court's subject matter jurisdiction, and it argued only that the award it seeks to enforce was awarded under provisions of the Czech Commercial Code. *See* Pl.'s Mem. of P. & A. in Opp. to Def.'s Mot. to Dismiss Compl. [Dkt. # 20] ("Pl.'s Opp. to Mot. to Dismiss") at 38–39. Defendant also maintains that the evidence is not new and therefore it should not be considered under Rule 59(e). Def.'s Opp. at 4–5. But since Diag Human had no opportunity to address specifically the issue of subject matter jurisdiction before the Court dismissed the case, the Court cannot fault plaintiff for failing to make the arguments and present the facts that it offers now. So the motion for reconsideration will not be denied on the grounds that the facts presented are not newly discovered.

In light of the additional evidence, it does appear that *at one time* there was a commercial relationship between Diag Human and the Ministry.  Therefore, the Court's observation that "plaintiff and defendant did not have any legal relationship, let alone a commercial one," Mem. Op. at 8, was overbroad and inaccurate.  However, the facts presented by Diag Human also show that the parties' commercial relationship changed over time, from a relationship between it and the Ministry into separate relationships between Diag Human and individual hospitals, after the Ministry "lost its direct control over hospitals" as a result of a "change in Czech law in June 1990" and "the State decentralization process."  Stava Decl. ¶¶ 19, 20; *see also id.* ¶ 21 ("[O]ver 30 hospitals ultimately ignored [the Ministry]'s directive [to deal only with two other companies] and signed cooperation agreements with Diag.").  This indicates that the commercial relationship between the parties ended before the dispute at issue in this case arose in 1992.  And in any event, whether there was ever a commercial relationship is not the test.

## II.     The arbitral award Diag Human seeks to enforce did not arise out of the parties' commercial relationship.

The New York Convention, which governs whether this Court has subject matter jurisdiction over this case, requires more than the mere existence of a commercial legal relationship.  The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 202–08, which codifies the Convention into U.S. law, limits the scope of matters covered by the Convention as follows:

> An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention.

9 U.S.C. § 202.  Section 2 of Title 9 further describes the commercial relationships from which a dispute can arise:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy

thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

The Second Circuit utilizes a four-part test to determine when the Convention and FAA will apply:

(1) there is a written agreement; (2) the writing provides for arbitration in the territory of a signatory of the convention; (3) the subject matter is commercial; and (4) the subject matter is not entirely domestic in scope.

*U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 146 (2d Cir. 2001); *see also Nanosolutions, LLC v. Prajza*, 793 F. Supp. 2d 46, 53 (D.D.C. 2011) (same).  The Fifth Circuit applies the following test:

(1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen.

Pl.'s Mem. at 7, quoting *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 339 (5th Cir. 2004).  Here, there is no dispute that the arbitral award meets the first, second, and fourth requirements of the test.  *See* Mem. Op. at 7–8; Pl.'s Mem. at 7; *see generally* Def.'s Opp. (arguing the third requirement has not been met, but failing to mention the first, second, or fourth requirements).

But plaintiff contends that the Court made both errors of fact and law in finding that the dispute does not meet the third requirement.  *See* Pl.'s Mem. at 7–8.  First, plaintiff argues that this Court should have interpreted the term "commercial" found in the FAA more broadly.  *Id.* The Court cited both the Second and Fifth Circuit tests in dismissing Diag Human's suit, Mem.

6

Op. at 7, but Diag Human asserts that the Second Circuit's focus on the *subject matter* of the relationship "encompasses a broader ambit than the relationship itself." Pl.'s Mem. at 8. It is true that the Second Circuit and Fifth Circuit use different language in setting forth the standard to be applied. *Compare U.S. Titan*, 241 F.3d at 146 (listing the third requirement as "the subject matter is commercial") *with Freudensprung*, 379 F.3d at 339 (listing the third requirement as "the agreement arises out of a commercial legal relationship") (internal quotation marks and citations omitted). But the Court's jurisdiction is governed by the statute, not these judicial glosses on the statute, and it does not hinge simply upon the nature of the relationship between the parties; the statute also requires that the "arbitration agreement or arbitral award aris[e] out of" that relationship. 9 U.S.C. § 202.

"When faced with a question of statutory interpretation, a court first must look to the language of the act itself." *Higgins v. Marshall*, 584 F.2d 1035, 1037 (D.C. Cir. 1978), citing *Caminetti v. United States*, 242 U.S. 470, 485 (1917); *see also id.*, citing *Banks v. Chicago Grain Trimmers Ass'n*, 390 U.S. 459 (1968) ("In the absence of persuasive reasons to the contrary, we must give the words of an enactment their ordinary meaning."). Thus, even if the Court elects to take a broad view of what might constitute a "commercial" relationship between the parties, it cannot ignore the requirement that the arbitral award that plaintiff seeks to enforce must arise out of that legal commercial relationship. *See* 9 U.S.C. § 202.

In light of Diag Human's additional evidence, the Court acknowledges that there was, at some point, a commercial relationship between Diag Human and the Ministry. But Josef Stava's declaration does not change the Court's conclusion that the arbitral award does not fall under the New York Convention because the arbitration and award did not "aris[e] out of" that relationship.

First, the declaration makes clear that while the parties had a legal commercial relationship that was memorialized in the Framework Agreement at one time, plaintiff's own evidence indicates that the relationship was no longer intact when the parties' dispute and subsequent arbitration agreement and award arose. As Josef Stava explained, after the fall of communism in Czechoslovakia, the government decentralized control of the hospitals, and that authority was transferred from the Ministry of Health to various regional entities. Stava Decl. ¶ 19. The Ministry lost direct control over the hospitals as a result of a change in Czech law, and by 1991, the hospitals had entered into their own agreements with Diag Human despite the Ministry's directive that they not deal with Diag Human. *Id.* ¶¶ 19–21. Indeed, the Stava declaration makes it clear that by 1991, the Ministry specifically disavowed the Framework Agreement with Diag Human – the very agreement which forms the basis of the claimed legal commercial relationship. *See id.* Furthermore, Diag Human later sought unsuccessfully to establish a new commercial relationship with the Ministry. *Id.* ¶ 22 (explaining that in 1991, the Ministry sought bids from various entities for the fractioning of blood plasma and Diag Human submitted proposals in response).[1] Thus, the Court finds that although the parties may have had a legal commercial relationship at one point, there was no such relationship when their dispute arose in 1992 or when they entered into the arbitration agreement in 1996.

Second, even if the parties had a commercial relationship when the Ministry wrote the letter to NovoNordisk that prompted the arbitration and this lawsuit, the arbitration agreement and arbitral award did not arise out of that relationship. Plaintiff acknowledges that "[the

---

[1]     Blood plasma fractionating "is the process by which blood plasma is separated, by use of centrifuges, into its constituent parts." Stava Decl. ¶ 8; *see also In re Plasma-Derivative Protein Therapies Antitrust Litig.*, 764 F. Supp. 2d 991, 995 (N.D. Ill. 2011) (explaining that the parts of fractionated blood plasma are used in plasma therapies to treat a variety of diseases and to expand blood volume and prime heart valves in surgical and trauma settings).

Ministry]'s letter to Novo Nordisk in March 1992 . . . was the predicate for the arbitral award here." *Id.* ¶ 30. The letter in question directly disrupted Diag Human's commercial relationship with NovoNordisk, leading Diag Human to bring "claims for both defamation and for unfair economic competition" against the Ministry. Pl.'s Opp. to Mot. to Dismiss at 38. In return for Diag Human's withdrawing these claims from the Prague Commercial Court, the parties entered into a written arbitration agreement in 1996 to resolve their dispute over the Ministry's letter. Stava Decl. ¶ 29. So while the previous "commercial relationship between the Czech Republic and Diag for the modernization of the Czech plasma collection system," *id.* ¶ 30, may be the historical context for the later dispute between the Ministry and Diag Human over the letter the Ministry sent to NovoNordisk, the arbitral award Diag Human seeks to enforce did not "arise out" of the parties' legal commercial relationship. 9 U.S.C. § 202. It arose out of actions later taken by the Ministry that affected Diag Human's commercial relationship with NovoNordisk.

The cases Diag Human cites confirm that the FAA requires the Court to consider not only whether the parties' relationship is commercial but also whether the arbitration or arbitral award arose out of that relationship. Plaintiff points to what it describes as "closely analogous facts" in *Thai-Lao Lignite (Thai.) Co. v. Gov't of the Lao People's Democratic Republic*, No. 10-5256 (KMW), 2011 WL 3516154 (S.D.N.Y. Aug. 3, 2011), Pl.'s Mem. at 12, but that case is distinguishable. In the *Thai-Lao Lignite* case, the parties had an existing agreement similar to the Framework Agreement between Diag Human and the Czech Republic in which Thai-Lao Lignite and the Government of Laos agreed to develop mining operations in Laos to mine lignite and build power plants to sell electrical power to the Electricity Generating Authority of Thailand. *Thai-Lao Lignite*, 2011 WL 3516154, at *1–2. The agreement contained an arbitration clause, and when Thai-Lao Lignite claimed that the defendant breached the

agreement, the parties arbitrated their dispute pursuant to the arbitration clause contained in the agreement.  *Id.* at *3–5.  After Thai-Lao Lignite prevailed in the arbitration, it sought to enforce the arbitral award in a U.S. court.  *Id.* at *7.  The court exercised jurisdiction over the case and granted the petition to confirm the award.  *Id.* at *13–21.  But the arbitrated dispute here does not involve allegations that a party violated the Framework Agreement or any other commercial agreement that existed at the time the dispute arose.  And the arbitration was not initiated pursuant to an arbitration clause contained in the Framework Agreement or any other commercial agreement between the parties – because no such clause existed.  Rather, the arbitration agreement and arbitral award arose out Diag Human's objection to the Ministry's letter to NovoNordisk, which disrupted Diag Human's commercial relationship with the Danish company.

Plaintiff asserts that "every court that has considered a challenge to the Convention's application on [the basis of an insufficient relationship] has rejected that challenge."  Pl.'s Mem. at 12.  But the cited cases confirm that the arbitral award must arise out of a commercial relationship.  In each case, the court exercised jurisdiction under the New York Convention because the arbitration at issue had sprung from the parties' existing legal commercial relationship.  *See id.* (citing *Bautista v. Star Cruises*, 396 F.3d 1289, 1298 (11th Cir. 2005) (holding that the plaintiffs' employment contracts constituted commercial legal relationships within the meaning of the New York Convention, and so their workplace injury claims arose out of those commercial relationships within the meaning of the Convention); *Francisco v. Stolt Achievement MT*, 293 F.3d 270, 273 (5th Cir. 2002) (same); *Henry v. Murphy*, No. M-82, 2002 WL 24307, at *4 (finding the parties' dispute arose out of "a conflict between corporate shareholders regarding the proceeds of a stock transaction," which was a commercial

relationship within the meaning of the Convention); *Island Territory of Curacao v. Solitron Devices Inc.*, 356 F. Supp. 1, 13 (S.D.N.Y. 1973) (finding that the contract between a U.S. manufacturer and a foreign government through which the foreign government was to construct certain buildings and the manufacturer was to lease the buildings for manufacturing operations and employ local residents was "commercial" within the meaning of the Convention and the arbitration arose from an alleged breach of that contract)).

In sum, it is not enough that a legal commercial relationship existed at one time. Although the parties here *had* a commercial relationship as set forth in the Framework Agreement, in the wake of the unique historical events surrounding the collapse of Communism in eastern Europe, this agreement no longer linked the parties in commerce when the dispute arose, and the arbitral award Diag Human seeks to enforce did not arise out of any commercial relationship between the parties.  Accordingly, the Court holds that it does not have subject matter jurisdiction over this case.

For these reasons, the Court DENIES Diag Human's motion to alter or amend judgment [Dkt. # 42] pursuant to Federal Rule of Civil Procedure 59(e).

**SO ORDERED.**

AMY BERMAN JACKSON
United States District Judge

DATE:  December 24, 2014