UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DIAG HUMAN, S.E., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 13-0355 (ABJ) |
| CZECH REPUBLIC-MINISTRY OF HEALTH, | ) ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

Plaintiff Diag Human has filed a lawsuit in this Court seeking to enforce a 2008 arbitration award it claims it obtained against the defendant, the Czech Republic Ministry of Health. Defendant has filed a motion to dismiss the case on multiple grounds. The Court will grant defendant's motion and dismiss the case because the 2008 arbitration decision is not a final arbitration award that is enforceable under the New York Convention.

### BACKGROUND[1]

Plaintiff Diag Human is a corporation organized under the laws of the Principality of Liechtenstein. First Am. Compl. [Dkt. # 59] ("Am. Compl.") ¶ 7. The Czech Republic is a foreign state, and the Ministry of Health for the Czech Republic is an agency of the Czech Republic. *Id.*

---

1  The Court has set forth the factual background of this case in its previous opinion, and will only repeat here the facts relevant to this ruling. *See Diag Human S.E. v. Czech-Ministry of Health*, 64 F. Supp. 3d 22, 25–26 (D.D.C. 2014), *rev'd*, 824 F.3d 131 (D.C. Cir. 2016).

¶ 8; Mem. P. & A. in Supp. of Def.'s Mot. to Dismiss Am. Compl. [Dkt. # 61] ("Def.'s Mem.") at 2.

In 1991 and 1992, the parties were involved in a dispute over Diag Human's allegations that defendant took actions to destroy plaintiff's business of trading in blood plasma and derivatives. Am. Compl. ¶ 10. They agreed that the dispute would be resolved through arbitration, and they entered into a contract setting out the procedure to be followed. Ex. B. to Am. Compl. [Dkt. # 59-2] ("Arb. Agreement"). The Arbitration Agreement specified the number of arbitrators and the manner by which they would be appointed. It also provided "that an arbitral award could be subject to review by a second tribunal of arbitrators . . . selected in the same manner as the first, and subject to the same rules of procedure" if a party submitted an application for review within 30 days of its receipt of the award to be reviewed. Am. Compl. ¶ 13, citing Arb. Agreement ¶ V. "If no application for review had been submitted within that deadline, then the award would take effect," and the parties would implement the award. Am. Compl. ¶ 13.

A tribunal of arbitrators (the "Arbitration Tribunal") was established to arbitrate the dispute, and on March 19, 1997, it issued what it called an interim award (the "Interim Award"). Am. Compl. ¶ 14. The Interim Award found defendant liable for the complained-of actions. Am. Compl. ¶ 14. Defendant filed an application to review the Interim Award, and on May 27, 1998, a review tribunal (the "First Review Tribunal") confirmed the Interim Award. Am. Compl. ¶ 15.

The Arbitration Tribunal then turned to the issue of damages and, on June 25, 2002, it issued what it called a partial award, which required defendant to pay plaintiff its "lost profit" – calculated by the Arbitration Tribunal to be 326,608,334.00 Czech Crowns ("CZK") or about

$10 million in 2002. Am. Compl. ¶ 17, citing Ex. C to Am. Compl. [Dkt. # 59-3] ("2002 Partial Award") (referring to this amount "as the minimal damage").

The 2002 Partial Award was reviewed by another review tribunal (the "Second Review Tribunal"), and on December 16, 2002, the Second Review Tribunal confirmed the Partial Award. Am. Compl. ¶ 18. Defendant paid plaintiff the amount awarded in the 2002 Partial Award. Am. Compl. ¶ 18.

"In 2005, the Parties were invited by the Arbitrat[ion] Tribunal to agree upon an expert that the Tribunal would appoint to calculate the amount of lost profits, if any, Diag had been deprived of over and above the minimum agreed-upon amount awarded in the confirmed Partial Award." Am. Compl. ¶ 19. The Arbitration Tribunal received the expert's report in August 2007, held a hearing and examination on the report, and received the parties' final presentations on March 6, 2008. Am. Compl. ¶¶ 20–21. On August 4, 2008, the Arbitration Tribunal issued what it called a final award, awarding Diag Human "in excess of CZK 8.3 Billion, including interest from July 1, 1992 through June 30, 2007," with daily interest of approximately CZK 1.2 million per day until it was paid. Am. Compl. ¶ 22; Ex. A. to Am. Compl. [Dkt. # 59-1] ("2008 Final Award").

Both parties filed requests for review of the 2008 Final Award, but Diag Human withdrew its request on March 29, 2010. Pl.'s Mem. P. & A. in Opp. to Def.'s Mot. to Dismiss Am. Compl. [Dkt. # 63] ("Pl.'s Opp.") at 6–7. The appointment of arbitrators to serve on the tribunal that would review the 2008 Final Award (the "Third Review Tribunal") took a number of years, and ultimately the parties took the matter to the Czech courts to resolve.[2] Pl.'s Opp. at 7–8. After these lengthy

---

2      The Arbitration Agreement specified that a court would appoint the third arbitrator if the party-appointed arbitrators could not agree on a third arbitrator within the deadline set in the Agreement. Arb. Agreement ¶ II.

court proceedings concluded, the Third Review Tribunal was ultimately established. Pl.'s Opp. at 7–8.

On July 23, 2014, the Third Review Tribunal issued a Resolution. Am. Compl. ¶ 26, citing Ex. E to Am. Compl. [Dkt. # 59-5] ("Resolution" or "Arb. Res."). The document was comprised of two parts: the "Resolution" and the "Reasoning." Arb. Res. at 1. The Resolution portion of the document was a single paragraph that identified the dispute, the parties, and the review arbitrators, and announced that the matter had been "decided as follows":

> I. The proceedings are discontinued.
> II. Neither party shall be entitled to compensation of the costs of the proceedings.

Arb. Res. at 1.[3] The Reasoning portion of the document that followed consisted of fifteen pages of single-spaced analysis that addressed a number of issues: the underlying arbitral proceedings and awards; the Third Review Tribunal's jurisdiction to review the 2008 Final Award; the issues related to the appointment of the Third Review Tribunal; the parties' arguments concerning the 2008 Final Award; and the Third Review Tribunal's findings. *See* Arb. Res. at 1–15. The Third Review Tribunal concluded that it "had no other choice than to discontinue the arbitration," and it stated that "each party shall bear its own costs." Arb. Res. at 15.

On August 4, 2015, the administrative arbitrator of the Arbitration Tribunal, which had issued the Interim Award, the 2002 Partial Award, and the 2008 Final Award, attached a "clause of legal force" to the 2008 Final Award. Am. Compl. ¶ 31; Ex. F. to Am. Compl. [Dkt. # 59-6].

---

3   The parties submitted two translations of the document to the Court. The translations vary slightly, but the differences between them do not affect its substance. *Compare* Arb. Res. *with* Ex. M to Def.'s Mot. [Dkt. # 60-14] ("Def.'s Transl."). The Court quotes primarily from the translation that plaintiff submitted, and provides parallel translations from defendant's translation where they are helpful.

**PROCEDURAL HISTORY**

On March 19, 2013, Diag Human filed suit in this Court to enforce the 2008 Final Award. Compl. [Dkt. # 1]. The Czech Republic moved to dismiss the complaint on numerous grounds, Def.'s Mot. to Dismiss Compl. [Dkt. # 16], and the Court dismissed the case for lack of subject matter jurisdiction. *Diag Human S.E. v. Czech-Ministry of Health*, 64 F. Supp. 3d 22 (D.D.C. 2014). A divided panel of the Court of Appeals for the D.C. Circuit reversed, remanding the case for further proceedings. *Diag Human S.E. v. Czech-Ministry of Health*, 824 F.3d 131 (D.C. Cir. 2016).

After the case was remanded, plaintiffs filed an amended complaint, and defendant moved to dismiss. Defendant's motion is fully briefed. *See* Def.'s Mot. to Dismiss Am. Compl. [Dkt. # 60]; Def.'s Mem.; Pl.'s Opp.; Def.'s Reply Mem. to Pl.'s Opp. [Dkt. # 65] ("Def.'s Reply").[4]

**LEGAL STANDARD**

U.S. courts have jurisdiction to enforce foreign arbitration awards pursuant to the New York Convention. The Convention is a multilateral treaty that provides for "the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought." Convention on the Recognition and Enforcement of Foreign Arbitral Awards, art. I.1, June 10, 1958, 21 U.S.T. 2517 ("N.Y. Convention").

The Federal Arbitration Act, 9 U.S.C. §§ 201–08 (2012), codifies the New York Convention into U.S. law and provides that "[a]n action or proceeding falling under the

---

4   The parties also filed two supplemental submissions with the Court. Suppl. [Dkt. # 68]; Resp. to Pl.'s Suppl. [Dkt. # 70].

Convention shall be deemed to arise under the laws and treaties of the United States. The district courts . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." *Id.* § 203. The Act further provides that a court "shall confirm [a foreign] award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." *Id.* § 207.

The New York Convention provides a number of grounds for courts to refuse or defer recognition of a foreign arbitral award, including if the party challenging enforcement shows that "[t]he award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made." N.Y. Convention, art. V.1(e).

The scope of a court's review of arbitral awards is "extremely limited." *Kurke v. Oscar Gruss & Son, Inc.*, 454 F.3d 350, 354 (D.C. Cir. 2006), quoting *Teamsters Local Union No. 61 v. United Parcel Serv., Inc.*, 272 F.3d 600, 604 (D.C. Cir. 2001) (holding that courts "do not sit to hear claims of factual or legal error by an arbitrator as [we would] in reviewing decisions of lower courts") (alteration in original). Indeed, courts "are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987).

## ANALYSIS

The Czech Republic moved to dismiss plaintiff's amended complaint on a number of grounds: that the Resolution issued by the Third Review Tribunal nullified the 2008 Final Award and so there is nothing for the Court to enforce, Def.'s Mem. at 9–17, that plaintiff's claims are

barred by the doctrine of *res judicata*, or alternatively, by the applicable statute of limitations, Def.'s Mem. at 17–23, and that the SPEECH Act of 2010 prohibits the Court from recognizing the award. Def.'s Mem. at 23–25.[5] The Court need not address all of these arguments because the merits of this case rise and fall on the parties' own Arbitration Agreement and the Resolution, and based on those documents, there is no award to enforce.

The parties' Arbitration Agreement sets forth the procedures that the parties agreed to follow to resolve their dispute. Relevant here, they agreed to implement a two-step arbitration process and specified when an arbitration award would become effective.

Paragraph V of the Agreement states in its entirety:

> The parties have also agreed that the arbitral award will be submitted to a review by other arbitrators whom the parties appoint in the same manner if an application for review has been submitted by the other party within 30 days from the date on which the applicant party received the arbitral award. Articles II–IV of this agreement apply similarly to the review of the arbitral award. If the review application of the other party has not been submitted within the deadline, the award will enter into effect and the parties voluntarily undertake to implement it within the deadline to be determined by the arbitrators, in default of which it may be implemented by the competent court.

Arb. Agreement ¶ V.

Thus, the parties expressly agreed to a two-level proceeding – an initial arbitration of their dispute and, if requested, a review of the award by other arbitrators. Importantly here, they also expressly agreed when the arbitral award would take effect: "[i]f the review application of the

---

5   Defendant also argued that the award did not arise out of a commercial legal relationship, noting that it was challenging the ruling in *Diag Human*, 824 F.3d at 136, to the contrary. Def.'s Mem. at 25–28, 26 n.8. But on February 21, 2017, the Supreme Court denied defendant's petition for writ of certiorari, making this argument moot since this Court is bound by the D.C. Circuit's ruling. *See Czech-Ministry of Health v. Diag Human S.E.*, 137 S. Ct. 1068 (2017).

other party has not been submitted within the deadline, the award will enter into effect." *Id.* The consequence of this provision is that the award does *not* enter into effect if a review application *has* been submitted within the deadline.

Here, both parties submitted applications to review the 2008 Final Award. Am. Compl. ¶ 24. In March 2010, plaintiff withdrew its application, Pl.'s Opp. at 7, leaving the Third Review Tribunal to conduct a review based on defendant's request.

As part of the review, plaintiff first raised procedural challenges to defendant's application for review and delivery of the application to the Third Review Tribunal. Arb. Res. at 5–8. The tribunal rejected plaintiff's procedural challenges.[6] Arb. Res. at 5–8.

The Third Review Tribunal then turned to the merits of defendant's challenge to the 2008 Final Award: that the 2002 Partial Award constituted the entire award for Diag Human in the arbitration because "the decision was made on the entire claim." Arb. Res. at 11 (describing defendant's argument). In response to this contention, the Third Review Tribunal stated first that

---

6 Plaintiff presents these same issues concerning defendant's review application in its pleadings to this Court. *See* Am. Compl. ¶ 24; Pl.'s Opp. at 6–7. But it is not this Court's role to review the underlying arbitration. *See, e.g.*, *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2070–71 (2013) ("It is the arbitrator's construction [of the arbitration contract] which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his. The arbitrator's construction holds, however good, bad, or ugly.") (citations and quotation marks omitted); *see also Teamsters*, 272 F.3d at 604 (holding that courts do not "hear claims of factual or legal error by an arbitrator" and "[j]udicial deference to an arbitrator is broader still if the arbitrator's decision is a procedural one") (citations and quotation marks omitted). Moreover, given the Court's finding that there was no final award to enforce and the applications for review were filed, these disputes have no bearing on the outcome of this lawsuit.

Czech law[7] has long held that a partial decision may only be rendered in matters involving multiple separate claims or multiple separate defendants: "the part of the matter being heard, on which a decision may be made by way of a partial decision, may only be one out of more separate claims or, as the case may be, a claim against only one out of more defendants." Arb. Res. at 11; Def.'s Transl. at 12 ("[A] partial decision may only be issued on one of otherwise separate claims or on a claim against only one of several defendants.").

Further, the Third Review Tribunal stated when a decision has already been made in a case, Czech law provides that "the matter cannot be heard again and that subsequent decisions, if any, whereby a decision is made on the issues already decided on, lack any legal effects." Arb. Res. at 11; Def.'s Transl. at 12 ("[W]here a matter has already been resolved, the matter cannot be heard again and any subsequent decisions on the same matter that has already been resolved lack any legal effects.").

The Third Review Tribunal noted that these legal principles apply under Czech law even if a court issues a partial decision in a case involving only a single claim against a single party. Arb. Res. at 12 ("The fact that the court did not decide on the entire asserted claim does not make it a partial decision . . . regardless of its name."). And the principles apply even if a court issues a partial decision erroneously. Arb. Res. at 12 ("[A] decision [ ] must be considered from an objective point of view in terms of its contents . . . and the accuracy of the final and conclusive decision can no longer be reviewed or attributed other legal effects, even if it is not correct.").

---

7   The parties do not dispute that the law of the Czech Republic applies to their dispute. *See* Pl.'s Opp. at 14–26 (discussing the Resolution's effect under Czech law); Def.'s Reply at 17 (stating the arbitration concerns a dispute pursuant to an agreement made in the Czech Republic under Czech law).

9

The Third Review Tribunal then analyzed the 2002 Partial Award and found that it "[did] not specify in any manner what part of the asserted claim is concerned." Arb. Res. at 12. That is, the 2002 Partial Award, despite being designated "partial," did not purport to resolve one out of a number of separate claims. Given that Czech law only allows for partial awards in the case of separate claims, the tribunal agreed with defendant that the Partial Award constituted the entire award to Diag Human: the "objections of the Defendant that the decision formally titled as partial is not actually such a partial decision must be agreed to." Arb. Res. at 12; Def.'s Transl. at 13 ("Consequently, the Defendant's arguments that the decision, formally designated as partial, in fact is not a partial decision must be upheld."). The tribunal concluded that it "had no other choice than to discontinue the arbitration." Arb. Res. at 15; Def.'s Transl. at 16.

Not surprisingly, the parties present the Court with conflicting positions on how the discontinuation of the review affects the 2008 Final Award. Defendant argues that the Third Review Tribunal issued the Resolution discontinuing the review proceedings based on its legal conclusion that the 2008 Final Award was a nullity, and that based on that finding, there is no award for this Court to enforce. Def.'s Mem. at 9–16. Plaintiff argues that the Resolution had no effect on the Final Award because it was wholly procedural: the tribunal's discontinuation of its review of the 2008 Final Award left that award intact and enforceable. Pl.'s Opp. at 14–26 (arguing that under Czech law only the "decretal paragraphs" of the Resolution, which discontinued the proceedings and required each party to bear its own costs but did not expressly cancel the 2008 Final Award, have any legal effect). In other words, defendant maintains that one cannot read the Third Review Tribunal's Resolution without considering its reasoning, while plaintiff maintains that under Czech law, the "Resolution" portion of the document stands alone.

10

The Court need not decide the meaning and import of Czech law, however, because pursuant to the terms of the parties' own Arbitration Agreement, the 2008 Final Award never took effect. Paragraph V of the agreement provides that an arbitral award "will enter into effect" and the parties will implement the award "*[i]f* the review application of the other party has not been submitted within the deadline." Arb. Agreement ¶ V (emphasis added). Here, defendant submitted a valid review application,[8] initiating a review of the 2008 Final Award and preventing the award from taking effect. The discontinuation of the review – which appears in the portion of the Resolution that even plaintiff finds to be binding – ended the arbitration, Arb. Res. at 1, so the 2008 Final Award never took effect.[9]

"Although its purpose is to encourage the recognition and enforcement of commercial arbitration agreements in international contracts, the New York Convention enumerates specific grounds upon which a court may refuse recognition and enforcement of an arbitration award." *Termorio v. Electranta S.P.*, 487 F.3d 928, 934 (D.C. Cir. 2007). Among them, a court may refuse to enforce an award that "has not yet become binding on the parties, or has been set aside

---

8     Plaintiff also submitted a review application but subsequently withdrew it in March 2010. Pl.'s Opp. at 6–7.

9     It is for this reason that it was not necessary for the Resolution to specify as a formal finding that the 2008 Final Award was invalid; it had never gone into effect. But even if one could conclude, notwithstanding the clear terms of the Arbitration Agreement, that an award with legal effect went forward to the Third Review Tribunal, the tribunal ruled clearly and unequivocally that the purported "Final Award" lacked legal validity and effect, and it was for that reason, and no other reason, that the Third Review Tribunal declared the proceedings to be discontinued. So either way, there is nothing to enforce: either the August 2008 decision of the Arbitration Tribunal never matured into an enforceable award, or it failed to survive the review proceedings that the parties agreed to be bound by in their own Arbitration Agreement.

or suspended by a competent authority of the country in which, or under the law of which, that award was made." N.Y. Convention, art. V.1(e).

Pursuant to Article V.1(e) of the New York Convention, the Court declines to enforce the 2008 Final Award because, by operation of the parties' own Arbitration Agreement, the Final Award never took effect and so never became binding on the parties.[10] The Court appreciates plaintiff's view that it is entitled to further damages, but notes that defendant has paid the lost profit amount plaintiff won in the Partial Award and that the Court is neither authorized to second guess the Third Review Tribunal's Resolution nor ignore the terms of the Arbitration Agreement.

## CONCLUSION

For the reasons set forth above, the Court will GRANT defendant's motion to dismiss [Dkt. # 60] and dismiss this case pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A separate order will issue.

/s/ Amy B Jackson

AMY BERMAN JACKSON
United States District Judge

Date: September 27, 2017

---

10  The Court is not relying upon other nation's decisions in its ruling in this case, but it notes that courts in three other countries applying the New York Convention have also declined to enforce the 2008 Final Award. *See* Ex. P to Def.'s Mot. [Dkt. # 60-17] (November 12, 2015 decision of a court in Amsterdam); Ex. Q to Def.'s Mot. [Dkt. # 60-18] (June 6, 2016 decision of a court in Brussels); Ex. R to Def.'s Mot. [Dkt. # 60-19] (November 4, 2016 decision of a court in Liechtenstein).